IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ABEL REVILL OCHOA, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | No. 3:09-cv-02277 |
| | § | DEATH PENALTY CASE |
| RICK THALER, | § | |
| Director, Texas Department of | § | |
| Criminal Justice, Correctional | § | |
| Institutions Division, | § | |
| Respondent. | § | |

## RESPONDENT THALER'S ANSWER WITH BRIEF IN SUPPORT

Petitioner Abel Revill Ochoa[1] (Ochoa) was convicted and sentenced to death for slaughtering five members of his family—his wife, his sister-in-law, his father-in-law, his seven-year-old daughter, and his eighteen-month-old daughter. Having spent several years pursuing his claims in state court, Ochoa now challenges the validity of his conviction and sentence in this Court pursuant to 28 U.S.C. § 2254. But Ochoa fails to demonstrate that he is entitled to relief. He does not show that the state courts unreasonably applied clearly established federal law in rejecting his claims; nor does he overcome the state courts' factual findings with clear and convincing evidence. For these reasons, Ochoa's bid for federal habeas relief should be denied.[2]

---

[1]     Respondent Rick Thaler will be referred to as "the Director."

[2]     The Director denies all allegations of fact made by Ochoa except those supported by the record and those specifically admitted herein.

# OCHOA'S ALLEGATIONS

The Director understands Ochoa to allege that:

(1)     he received ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments when his trial attorneys purportedly did not investigate and present significant mitigation evidence at the punishment phase of his capital-murder trial;

(2)     he received ineffective assistance of counsel during voir dire in violation of the Sixth and Fourteenth Amendments, in part because the trial court rendered counsel ineffective with its rulings[3];

(3)     because he was purportedly deprived an adequate voir dire, he was also denied his right to be tried by a fair and impartial jury under the Sixth and Fourteenth Amendments;

(4)     he received ineffective assistance of counsel on appeal because his appellate attorney did not raise the aforementioned voir-dire issues;

(5)     his right to confront and cross-examine witnesses as guaranteed by the Confrontation Clause of the Sixth Amendment was violated when the trial court allowed testimonial evidence before the jury;

(6)     he received ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments when his trial attorney purportedly failed to make proper and timely objections to the State's unconstitutional use of testimonial statements;

(7)     the trial court's exclusion of certain rebuttal evidence denied Ochoa the right to present a fair defense in violation of the Sixth and Fourteenth Amendments;

---

[3]     The Director has merged Ochoa's claims B and C.  Petition for Writ of Habeas Corpus by a Person in State Custody at 47-48, ECF No. 8.

(8)    he received ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments when his trial counsel purportedly failed to make proper and timely objections to the trial court's ruling excluding the aforementioned rebuttal evidence;

(9)    the State's presentation of purportedly unreliable psychiatric testimony by Dr. Richard Coons (Dr. Coons) deprived Ochoa of his right to due process of law under the Fifth, Eighth, and Fourteenth Amendments;

(10)   he received ineffective assistance of counsel under the Sixth and Fourteenth Amendments because his appellate attorney did not raise the trial court's allegedly erroneous admission of Dr. Coons's testimony during direct appeal;

(11)   he was denied due process under the Fourteenth Amendment because he was purportedly shackled during the punishment phase;

(12)   he received ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments because his trial counsel did not object to Ochoa's alleged shackling;

(13)   the evidence is legally insufficient to support the jury's affirmative answer to the first special-issue finding that Ochoa would pose a continuing threat to society;

(14)   he was deprived of rights to due process and a fair trial when the State destroyed evidence that Ochoa claims was material and exculpatory;

(15)   he received ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments when his trial attorneys purportedly failed to preserve evidence in the State's possession or make a timely motion for such preservation;

(16)   he received ineffective assistance of appellate counsel when his appellate attorney chose not to raise Ochoa's claim

regarding the State's destruction of evidence on direct appeal;

(17)   his death sentence should be set aside because the Texas mitigation special issue fails to assign a burden of proof, thereby violating Ochoa's rights to due process under the Fourteenth Amendment and to reliability of the death sentence and freedom from arbitrariness and capriciousness in capital sentencing under the Eighth Amendment;

(18)   his death sentence should be set aside because the Texas mitigation special issue does not adequately define what is meant by mitigation or mitigating evidence and the terms used created a reasonable possibility that the jury would construe mitigating evidence so narrowly that it would not give full consideration and effect to all of Ochoa's mitigating evidence in violation of the Eighth Amendment;

(19)   he received ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments when his trial attorney did not object to the mitigation special issue and when his appellate attorney chose not to raise the Ochoa's objections to the issue on direct appeal; and

(20)   his right under the Sixth Amendment to be tried by a jury selected from a jury panel representing a fair cross-section of the community was violated.

## STATEMENT OF THE CASE

Ochoa was indicted for the murder of his wife and one of his daughters. CR[4] 2. A jury in the 194th Judicial District Court of Dallas County, Texas, convicted and sentenced Ochoa to death. CR 390-93. The Texas Court of Criminal Appeals affirmed Ochoa's conviction and sentence on direct appeal. *Ochoa v. State*, No. AP-74,663 (Tex. Crim. App. Jan. 26, 2005). Ochoa did not file a petition for certiorari with the Supreme Court.

Ochoa sought state habeas review of his conviction, filing his initial habeas application on February 11, 2005. SHCR-02 2-55. Ochoa also filed a pro se supplement on February 21, 2005. *Id.* at 158-62. On March 19, 2007, Ochoa filed a subsequent pro se application. SHCR-01 2-13. With respect to Ochoa's first application, the Court of Criminal Appeals adopted the trial court's findings and conclusions and denied relief. *Ex parte Ochoa,* No. WR-67,495-01, -02, slip op. at 2 (Tex. Crim. App. Aug. 19, 2009) (per curiam) (unpublished). With respect to Ochoa's second application, the Court of Criminal Appeals denied it

---

[4]       The Director has submitted Ochoa's state court records under separate cover. "CR" refers to the Clerk's Record of pleadings and documents filed during Ochoa's trial. "RR" refers to the Reporter's Record of transcribed state trial proceedings. "SHCR-01, -02" refer to the respective Clerk's Records of pleadings and documents filed during Ochoa's state habeas review. (Note: The Court of Criminal Appeals did not label Ochoa's writs chronologically. Thus, Ochoa's initial writ bears the cause number WR-67,495-02, while Ochoa's subsequent writ bears the cause number WR-67,495-01.) All references are preceded by volume number and followed by page number where applicable.

as an abuse of the writ under Texas Code of Criminal Procedure Article 11.071,

Section 5. *Id.*

The instant appeal was timely filed on August 19, 2010. Pet. at 1, ECF No.

8.

## STATEMENT OF FACTS

The Court of Criminal Appeals accurately set forth the facts of the crime

and the evidence relating to punishment in its opinion on direct appeal:

> The evidence shows that on Sunday, August 4, 2002, [Ochoa] shot
> his wife, two of his sisters-in-law, his father-in-law, and his
> 18-month-old daughter. [Ochoa] reloaded his gun and shot his
> seven-year-old daughter. This occurred in the home where [Ochoa]
> lived with his wife, his two daughters, and his father-in-law.
> Everyone was killed except for one of the sisters-in-law (Alma) who
> testified at [Ochoa]'s trial that [Ochoa] looked "[v]ery mean, very
> angry" when the shooting began.

> Q.   [PROSECUTION]:  Are you able to look at his
>      face when he starts shooting?

> A.   [ALMA]:  Yes.

> Q.   What's the expression on his face?

> A.   Very mean, very angry, yes—

>      [THE REPORTER]:  I'm sorry?  Very mean—

> A.   Yes.  Angry, yes.

> Q.   Does he look like he's crazy, or does he look like
>      he's mad?

> A.   He looks like he's mad.

[Ochoa] and his wife [Cecilia] were married in December 1993. Their first daughter (Crystal) was born in November 1994. [Ochoa] bought the murder weapon in December 1995 for home protection. The relationship between [Ochoa] and his wife changed in August 1997 when [Ochoa] found out that his wife had another child (Jonathan) out of wedlock before they met. This caused [Ochoa] and his wife to separate for about six months. The prosecution presented evidence that [Ochoa] threatened to shoot his wife during this separation. Alma testified that [Ochoa] became "more aggressive" and "more mean" to his wife after [Ochoa] found out about Jonathan. [Ochoa] testified at the punishment phase that he had put the Jonathan issue behind him by the time he murdered his family.

About four months before the murders, [Ochoa] walked away from what many would consider a good job that [Ochoa] had kept for about eleven years. [Ochoa] had been addicted to crack cocaine for about two years when this happened. [Ochoa]'s addiction to crack cocaine was causing great stress in his marriage. When the police arrested [Ochoa] in his car very soon after the murders, [Ochoa] told the arresting officer that he "couldn't handle the stress anymore."

Q. [PROSECUTION]: What?

A. [OFFICER COX]: I asked him where was the gun—I said—or where was the gun at.

Q. And why did you ask him that?

A. To make sure it wasn't—he hadn't thrown it out the window, make sure it wasn't like a threat to somebody if it was thrown out of a window, or in the shopping center somewhere.

Q. And did he respond to that question?

A. Yes, he did.

Q. What did he say?

-7-

A.  He said, It's at my house on the table.

Q.  What else did he say?

A.  Right after he said, It's at the house on the table, he said he—I couldn't handle the stress anymore.

Q.  And what did he say about—did he make any comment about his life?

A.  Maybe a minute later he said something like, I got tired of my life.

Soon after his arrest, [Ochoa] gave the police a written statement which was admitted into evidence at [Ochoa]'s trial. [Ochoa] stated:

I live at [address] with my wife and two daughters. My wife's father also lives with us. I have had a drug problem for about two years. About two months ago I spent two months in a drug rehab house. Before I went to the drug rehab house I was using crack cocaine about once every three to four days. When I came out I was using the drug only once every seven to ten days. Today, I went to church with my wife and daughters. We left church at about 2:00 p.m., and I asked my wife if I could have ten dollars to buy a dime bag of crack. At first, she did not want to give it to me, but I talked her into it. I drove my wife and daughters to the dope house, and I went in and bought a dime bag of crack. When we got home, I went into the back yard and smoked the crack. While I was in the back yard, my wife's two sisters, Jackie and Alma came over. They all stayed in the living room and talked. After I smoked the crack I went into my bedroom, and laid down on the bed. I had the television on but I did not pay any attention to it. While I was lying on the bed my body started wanting more crack. I knew if I asked my wife for more money to buy some more crack she wouldn't let me have it. I knew she would argue with me about the money, just like we did in the past. I got up and went

-8-

to my closet and I got my Ruger 9mm gun.  The gun was already loaded and I walked into the living room where my family was.  I started shooting while they were all sitting on the couch.  I don't remember who I shot first, but I ran out of bullets.  I went back into the bedroom, and got another clip and I walked back into the living room.  When I came back into the living room my daughter Crystal saw me with the gun and she started running away.  I chased after her and I shot her.  After I shot Crystal I went back into the bedroom and got my wife's small plastic purse.  I got into my car and I drove over to the Wynnewood Shopping Center. I tried to get some money from an ATM machine, but I didn't have the right code.  I did not know where I was going to go, so I drove out of the shopping center onto Zang and then I drove back into the shopping center where the police stopped me.

[Ochoa] testified at the punishment phase that he has never had any memory (including when he confessed to the police) of shooting his family.

Q.  [THE DEFENSE]:  Abel, this is State's Exhibit either 2A or 2, voluntary statement.  You're familiar with this, aren't you?

A.  [[OCHOA]]:  Yes, sir.

Q.  You've gone over this many times with your attorneys, haven't you?

A.  Yes, sir.

Q.  Do you remember going to the closet and getting the gun?

A.  No, sir.

Q.  You understand, Abel, that in asking that question, you have several sources of information.  The first

source is what you remember at the time.  The second source is what somebody might have told you immediately thereafter.   And the third source, of course, is what you have learned in trial over the last week.  So when I ask you if you remember getting the gun, are you saying that you have no—you did not have a present memory of that when it happened?

A.  No, sir.

Q.  Is that what you're saying?

A.  Yes, sir.

Q.  Do you remember loading that gun?

A.  No, sir.

Q.  Remember cocking the gun, arming it, pulling the slide back?

A.  No, sir.

Q.  Do you remember walking from the bedroom to the living room?

A.  No, sir.

Q.  Do you remember discharging that firearm at [[Ochoa]'s father-in-law]?

A.  No, sir.

Q.  Do you remember discharging that firearm at [Alma]?

A.  No, sir.

Q.  Do you remember discharging the firearm at [the murdered sister-in-law] and your baby Anahi?

A.  No, sir.

Q.  Do you remember discharging that firearm at your wife?

A.  No, sir.

Q.  Do you have any independent recollection of going back and reloading the gun?

A.  Reloading the gun, yes.

Q.  You remember that from the time?

A.  Yes.

Q.  Do you have any idea what you were thinking as you were doing that?

A.  No, sir.

Q.  Do you remember coming back out of the bedroom and seeing Crystal and discharging the firearm at her?

A.  I remember discharging the gun, yes. Walking through there, no.

Q.  Do you have any—did you have any thoughts at that time that you could remember.

A.  No.

[Ochoa]'s testimony on cross-examination suggested that the police provided details known only to [Ochoa] to put in his statement.

Q.  [PROSECUTION]:  So let me get this straight. You're saying that Detective Lusty told you some of the things to put in your own statement?

A.  [[OCHOA]]:  He would tell me stuff.

Q.  Like what?

A.  Like if I was in the 4Runner, if I drove it.  And I would just say, Yeah, yeah, that's—that's what happened.

Q.  What about this statement that you put in there: I knew if I asked my wife for more money to buy some crack, she wouldn't let me have it.  Did he know that?  Did he know your wife?  Would he know that she would say that, or is that coming from you in your statement?

A.  I don't recall saying that.

Q.  You don't recall saying that to [Detective] Lusty?

A.  No, sir.

Q.  Is that something he probably just added in there himself?

A.  I don't know if he added it in there, but I don't recall saying it to him.

Q.  Just like some type of crooked cop, he's making this up and just having you sign it because you don't know what's going on at the time that you're going over this statement?  Is that what you want this jury to believe?

[DEFENSE COUNSEL]:   Objection, Your Honor, argumentative.

[THE COURT]:  Overruled.

Q.  Is that what you want this jury to believe, that [Detective] Lusty made up a bunch of this stuff and just got you to sign this?

A.  I don't believe he's a crooked cop.

[Ochoa] also testified on cross-examination.

> Q.  [PROSECUTION]:  All of a sudden, you give a detailed statement within hours of murdering these people, and now you're coming in to disclaim that you don't remember the details that's in that statement. Somebody must have told you that or made that stuff up and had you sign it.
>
> A. [[OCHOA]]: I remember where I went when I got in the vehicle, stuff like that, but as far as the confession itself, that on paper, that I don't recall.
>
> Q.  So you very well could have told all this to [Detective] Lusty, you just don't remember telling him that?
>
> A.  Yes, that's true.
>
> Q.  Okay. So at the time of this when he takes the statement that evening of August the 4th, you could have remembered all these details?
>
> A.  I don't think so.

[Ochoa] presented other evidence that he had no criminal record and that, before his crack cocaine addiction, he was considered by many to be a responsible, law-abiding citizen.  Family, friends and co-workers of [Ochoa] testified that they were shocked when they heard that [Ochoa] had murdered his family because they did not believe that [Ochoa] was capable of committing such an act.

[Ochoa] also presented expert testimony (Simon) that [Ochoa] suffered "mild" brain damage from the crack cocaine that he ingested over the course of about two years.  [Ochoa] presented the testimony of another expert (Nace) who testified that the shootings were the result of a "cocaine-induced delirium" during which [Ochoa] was not fully aware and not in control of what he was doing.

This expert also testified that he did not think that [Ochoa] would be a continuing threat to society.

> Q.   [THE DEFENSE]:   Doctor, what happened to [[Ochoa]] when he took cocaine back on August 4th of 2002.
>
> A. [NACE]:  He had not used cocaine for 10 days prior to August the 4th, and this was a Sunday.  Went to church with his family, and at some point after church—he had been struggling with the desire for cocaine for days, and asked his wife could he just get $10 worth.  She eventually relented, gave him $10.  She kept all the money because he knew that, and she knew that if he had money, then the temptation to buy cocaine would be there which is common in the case with people caught up in this.  So he didn't keep any of the money.  Anyway, she gave him $10.  He bought the crack cocaine.  And she said, You have to smoke it outside.  Okay?  So he smoked it outside.  I think it was around about 5:30 or so, walked back into the house to the bedroom, then his wife came in the bedroom and said, You didn't [say] hello to my sisters, and said—he said, Well, I don't—I don't want them to see me like this.  And he had described that his—he felt his face was puffy and he felt he looked funny from smoking the cocaine so she left the room and then shortly thereafter—and he doesn't have memory for a good bit of this—got the gun that was in the house, and the shootings took place after that.
>
> And what he recalled was hearing gunshots in his head, and then after he left the house and got in his truck, he felt some—something—knew something had gone wrong and he should return home.  What he could recall, shooting one daughter, couldn't recall whether people were exactly what—how it happened.  And he was in a-cocaine-induced delirium, delirious state produced by the cocaine where there was a serious change in brain functioning.

-14-

Q.   Doctor, a cocaine-induced delirium, is that a medically recognized decease [sic]?

A.  Yes, it is.

Q.  And is it found in the DSM IV?

A.  It is.

Q.  Would you explain to the jury briefly what the DSM IV is?

A.  The DSM IV is a book that catalogues all the different psychiatric disorders, from depression, schizophrenia addictions and so on.  They're all kind of listed there and described and kind of the criteria for each disorder are laid out.

Q.  And that is a medically recognized diagnosis?

A.  Yes, it is.

Q.  All right. Doctor, a delirium is not a rational state, is it, or—

A.  No, a delirium is a very serious mental state provoked by different things, but certainly drugs of abuse can produce a delirium.  Cocaine is well known to do that.   What happens is the person's level of consciousness is—is disrupted.  It's changed.  And they are in a position where they aren't as aware of what they're doing.  They're not as aware of their environment.  They are not able to sometimes shift their attention from what they're doing.  They're—they get irritated, excited, aggressive with certain types of delirium.

Their thinking processes change at the same time.  Typically, they won't have good memory for parts of

-15-

what's going on or what has happened.  They will also have perceptual disturbances.   For example, in his case, he was hearing gunshots for—going off in his head, the noise of the gunshot for days and had some other sort of flashes going through his mind which he couldn't quite understand.  Delirium typically does not last very long, at least not a cocaine delirium.

Q. Did I hear you say that he heard the gunshots in his head for days afterward?

A.  Yes.

Q.  Doctor, as a result of your interviews, of various documents that you have read, as a result of your experience and training in the field of addictive behavior in the general field of psychiatry, have you reached a conclusion as to whether [[Ochoa]] is a danger, a continuing threat to society?

A.  I don't think he is a continuing threat.

Q.  Why is that, sir?

A.  What happened on August 4th was the result of his cocaine addiction and triggering brain events beyond his control.  And he has no history of being a danger to society.  Prior to that he had a good work record for the most part, at least prior to his addiction.  He was not—he didn't have a criminal history.  He wasn't presenting a danger to anybody, and there is no reason to think he would, if he's not addicted to cocaine.

Nace testified on cross-examination that he "would expect bad things could happen to" [Ochoa] if [Ochoa] "got back to a repetitive pattern of cocaine use."

Q. [PROSECUTION]:  And if he were to get ahold of a dime rock of cocaine again and take these two or three hits off of this, we could have another catastrophe on

our hands?

A. [NACE]: We don't know that for sure because he's been off cocaine for eight to nine months now. If he got back to a repetitive pattern of cocaine use, I would expect bad things could happen to him.

The prosecution's expert (Coons) provided testimony from which a jury could infer that [Ochoa] would be a continuing threat to society. Coons also attributed the murders to [Ochoa]'s frustration and anger and not to a "cocaine-induced delirium."

A. [COONS]: —Lusty, and others, these officers who arrested him and so forth—put that all together and you look at the history that he's giving—given, adding it all together, the history that comes from him runs like this: That he smoked the crack cocaine in the backyard. People—he heard people in the house talking. He walked in, walked past them. I believe I said hi. Went straight to the bedroom to lay down on the bed, turned on the TV, looking at the ceiling. His wife came in and said, That was rude. Why didn't you greet them, essentially. Didn't want them to see me this way. While I was lying on the bed, my body started wanting more crack. I knew if I asked my wife for more money to buy crack, she wouldn't let me have it. I knew she would argue with me about the money just like we did in the past.

And all that's in his original statement to Detective Lusty. And what that—what that is, is a person who is—who is thinking it over, deciding what he wants to do, dealing with his problem, which is, I want some more cocaine, and thinking through, Well, I can't get it from my wife. She's not going to give me the money, she's going to get in an argument with me, etcetera, just like we did in the past. And then he talks about how, I got up off the bed and went to my closet. I got my Ruger 9mm gun. The gun was already loaded.

-17-

Within 20 minutes or less, according to him and others—I believe someone else put it at about 15 minutes, he comes out, walks into the living room, Where my family was.  And he said in the original statement to which was given a few hours after this offense, that, I started shooting while they were all sitting on the couch.  And he said that he did not recall who he shot first.  I ran out of bullets.  I went back into the bedroom.  I got another clip.  I walked back in the living room.  My daughter Crystal saw me with my gun.  She started running away.  I chased after her, and I shot her.  Went back in the bedroom.

I got my wife's small plastic purse, got in the car, drove to Wynnewood Shopping Center, tried to get some money from an ATM machine.  I didn't have the right code.  I drove off, and the police stopped me.  They requested his ID.  He said—replied, Sure.  He was read his rights, told them he understood them.  Where is the gun?  This is 6:33 p.m.  This is within a half an hour after this offense, I believe, something on that order—6:33 p.m.—6:10 I guess was the best guess, so that's 23 minutes after the offense.

Where is the gun?  I left it in my house on the table.  That's a reflection that he recalls where he put the gun at the time that this offense was going on.  And he gives as an explanation, I couldn't handle the stress.  And that's his explanation for having done what he did, which is an indication that he did have an understanding of what he did. I got tired of my life is another statement about—he asks at 7:45 about his—his baby, and at 8:15, I can't believe I did that.  This is his—his rendition at different times of what happened there.

All of those things reflect a perception of what happened, a recollection of what happened, and all of those things notate against this being a delirium.  That's why I don't think it's a delirium.  I think it's a

matter of anger.  I think he was extremely frustrated with his situation.  He was married—he had a difficult relationship with his wife, partly because he was continuing to use cocaine and not being a husband and father.  And—partly because of this Jonathan problem that he had never gotten over.

And I think that—if you look at the scene, you know this is—the first thing that comes to your mind is anger.  I mean, this was an angry slaughter of people.  And [[Ochoa]], I don't think, is in—I asked him something about his anger, and I don't think he's in good touch with his—with his angry and frustrated feelings about the situation he was in.  He didn't have a job.  His—he didn't have any money.  He had a cocaine problem. He had made the wrong choice.  He didn't take his father's advice and go into this program and get himself detoxified and off of it.  Chose to stay on it.  And this is a result of it, a frustrated angry man.

During closing jury arguments, the prosecution argued, among other things, that anyone capable of murdering his family "is capable of anything."

Is he going to be dangerous in the future?  I mean, you know, Mr. Miller, [[Ochoa]] is not a violent man.  That is just unbelievable.  These people, these bodies, the holes, his own flesh and blood, willing to do that just because you're mad.  Frustrated, stressful, willing to do this, murder people like that. Anybody capable of doing that is capable of anything, you know.

*Ochoa v. State*, slip op. at 2-12.

## BRIEF IN SUPPORT

This petition is subject to review under the amendments to the federal habeas corpus statutes embodied in AEDPA. *Williams v. Cain*, 125 F.3d 269, 274 (5th Cir. 1997). Under AEDPA, "[t]his Court may not issue a writ of habeas corpus for a defendant convicted under a state judgment unless the adjudication of the claim by the state court '(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.'" *Riddle v. Cockrell*, 288 F.3d 713, 716 (5th Cir. 2002) (quoting 28 U.S.C. § 2254(d)(1)-(2) (West 2002)).

The Supreme Court has explained that a state court decision is "contrary" to established federal law if the state court "applies a rule that contradicts the governing law set forth in [the Court's] cases," or confronts facts that are "materially indistinguishable" from a relevant Supreme Court precedent, yet reaches an opposite result. *(Terry) Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *Hernandez v. Johnson*, 248 F.3d 344, 346 (5th Cir. 2001). Alternatively, a state court "unreasonably applies" clearly established federal law if it correctly identifies the governing precedent from the Supreme Court's precedents but unreasonably applies it to the facts of a particular case. *Williams,* 529 U.S. at

-20-

407-09; *Hernandez*, 248 F.3d at 346.

A federal habeas court's inquiry into unreasonableness should be objective rather than subjective, and a court should not issue the writ simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. *Williams*, 529 U.S. at 409-11; *Tucker v. Johnson*, 242 F.3d 617, 620-21 (5th Cir. 2001). Rather, federal habeas relief is only merited where the state court decision is both incorrect and objectively unreasonable. *Williams*, 529 U.S. at 411; *Martin v. Cain*, 246 F.3d 471, 476 (5th Cir. 2001). In other words, habeas relief is inappropriate when a state court, at a minimum, reaches a "satisfactory conclusion." *Williams,* 529 U.S. at 410-11 (citing *Wright v. West*, 505 U.S. 277, 287 (1992)).

Further, the Fifth Circuit has held that it is the state court's "ultimate decision" that is to be tested for unreasonableness, "not every jot of its reasoning." *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001); *see Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc) (holding that a federal court's "focus on the 'unreasonable application' test under [§] 2254(d) should be on the ultimate legal conclusion that the state court reached and not on whether the state court considered and discussed every angle of the evidence"); *Catalan v. Cockrell*, 315 F.3d 491, 493 (5th Cir. 2002) (applying AEDPA deferential

standard of review where state habeas writ was denied without explanation).

Indeed, state courts are presumed to know and follow the law. *Woodford v.*

*Visciotti*, 537 U.S. 19, 24 (2002).  And, even where the state court fails to cite to

applicable Supreme Court precedent or is unaware of such precedent, the

AEDPA deferential standard of review nevertheless applies "so long as neither

the reasoning nor the result of the state-court decision contradicts [Supreme

Court precedent]." *Early v. Packer*, 537 U.S. 3,  8 (2002).

Moreover, pre-AEDPA precedent forecloses habeas relief if a claim: (1) is

procedurally barred as a consequence of a failure to comply with state procedural

rules, *Coleman v. Thompson*, 501 U.S. 722 (1991); (2) seeks retroactive

application of a new rule of law to a conviction that was final before the rule was

announced, *Teague v. Lane*, 489 U.S. 288 (1989); or (3) asserts trial error that,

although of constitutional magnitude, did not have a "substantial and injurious

effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507

U.S. 619, 637 (1993) (citation omitted).

I.     **Ochoa's Claim That He Received Ineffective Assistance of Counsel at the Punishment Phase of His Trial Is Unexhausted and Procedurally Defaulted.  Alternatively, His Claim Is Without Merit.**

In his first claim for relief, Ochoa argues that he received ineffective

assistance of counsel in violation of the Sixth and Fourteenth Amendments when

his trial attorneys purportedly failed to investigate and to present significant

mitigation evidence at the punishment phase of his capital-murder trial. Pet. at 51-88, ECF No. 8. Specifically, Ochoa alleges that counsel:

- waited too long to appoint Tena Francis as mitigation investigator, leaving her with inadequate time to conduct her investigation (*id.* at 51-55); and

- should have requested a continuance at an earlier date[5] (*id.* at 55-56).

Ochoa further contends that, as a result of these errors:

- Ochoa's father, Abel Ochoa, was inadequately prepared to testify (*id.* at 56-60);

- Ochoa's mother, Belen Ochoa, was not called to testify (*id.* at 60-64);

- Ochoa's brother, Gabriel Ochoa, was inadequately prepared to testify (*id.* at 64-66);

- Ochoa's brother, Javier Ochoa, was inadequately prepared to testify (Pet. at 67-68, ECF No. 8);

- Ochoa's maternal aunt and uncle, Margarito and Anita Revilla, were not contacted or asked to testify (*id.* at 68-70);

- Ochoa's maternal uncle, Juan Revilla, was not contacted or asked to testify (*id.* at 70-71); and

- Ochoa's maternal uncle, Teodora Revilla, was not contacted or asked to testify (*id.* at 71-72).

Ochoa believes that had these witnesses testified (or perhaps testified

---

[5] Counsel did request a continuance, but Ochoa speculates that the trial court refused to grant one because it was too close to trial.

more effectively), there would have been a reasonable probability that he would not have been sentenced to death. *Id.* at 85-88. Thus, he claims that he received ineffective assistance of counsel at punishment. But federal habeas relief is precluded on this claim since Ochoa never presented it to the state court, rendering it unexhausted and procedurally defaulted. Alternatively, this claim is without merit, and relief should be denied on that basis even if the Court finds that it is not procedurally defaulted.

A.      **This claim is unexhausted and procedurally defaulted.**

Ochoa never presented his claim that counsel was ineffective for allegedly failing to investigate and present mitigating evidence to the state court. *See* SHCR-01; SHCR-02; Appellant's Brief. Thus, his claim is unexhausted and procedurally defaulted and, as such, must be denied. The exhaustion doctrine codified in 28 U.S.C. § 2254(b)(1) reflects a policy of comity consistently adhered to by the Supreme Court and the Fifth Circuit. *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 8-10 (1992); *Picard v. Connor*, 404 U.S. 270, 275, 277-78 (1971); *Dowthitt v. Johnson*, 230 F.3d 733, 745-46 (5th Cir. 2000). Thus, before a federal court will entertain the alleged errors, a petitioner must have first provided the state's highest court with a fair opportunity to apply (1) the controlling federal constitutional principles to (2) the same factual allegations. *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995); *Rose v. Lundy*, 455 U.S. 509, 522 (1982); *Anderson*

*v. Harless*, 459 U.S. 4, 6 (1982); *Thomas v. Collins*, 919 F.2d 333, 334 (5th Cir. 1990).  This requirement is designed to give state courts the initial opportunity to pass upon and, if necessary, correct errors of federal law in a state prisoner's conviction.  *Picard*, 404 U.S. at 275-76.

Where a petitioner "advances in federal court an argument based on a legal theory distinct from that relied on in the state court, he fails to satisfy the exhaustion requirement."  *Nobles v. Johnson*, 127 F.3d at 420 (citing *Vela v. Estelle*, 708 F.2d 954, 958 n.5 (5th Cir. 1983)).  Moreover, state court remedies are not exhausted when "material additional evidentiary support [is presented] to the federal court that was not presented to the state court," even if the evidence "came into existence after the state habeas relief had been denied." *Dowthitt*, 230 F.3d at 745-46 (quoting *Graham v. Johnson*, 94 F.3d 958, 968 (5th Cir. 1996), and *Joyner v. King*, 786 F.2d 1317, 1320 (5th Cir. 1986)).

In order to satisfy exhaustion, all of the grounds raised in a federal application for writ of habeas corpus must have been "fairly presented" to the state courts prior to being presented to the federal courts.  *Dowthitt*, 230 F.3d at 745-46; *see also Nobles*, 127 F.3d at 420.  The Supreme Court has reasoned that the purpose of exhaustion "is not to create a procedural hurdle on the path to federal habeas court, but to channel claims into an appropriate forum, where meritorious claims may be vindicated and unfounded litigation obviated before

resort to federal court." *Keeney*, 504 U.S. at 10.  "Comity concerns dictate that the requirement of exhaustion is not satisfied by the mere statement of a federal claim in state court." *Id.*

As Ochoa did not raise his claim either on direct appeal or in state collateral review, he has clearly failed to exhaust state court remedies.  It is well-settled that habeas relief "shall not be granted" under any circumstances unless it appears that "the applicant has exhausted the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(1).  It is equally clear, however, that Ochoa would be barred from raising this claim in a successive state habeas application under Texas Code of Criminal Procedure Article 11.071, Section 5(a).[6]  "Because [the exhaustion] requirement refers only to remedies still available at the time of the federal petition, it is satisfied if it is clear that the habeas petitioner's claims are now procedurally barred under state law." *Gray v. Netherland*, 518 U.S. 152, 161 (1996) (internal citations omitted); *see also Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982); *Castille v. Peoples*, 489 U.S. 346, 351 (1989); 94 F.3d 958, 969 (5th Cir. 1996) ("exhaustion is not required if it would plainly be futile").

---

[6]     Article 11.071, Section 5(a) provides that a state court may not consider the merits of or grant relief on claims presented in a successive state habeas application absent facts giving rise to a statutory exception. Ochoa has made no showing that one of the Article 11.071 exceptions would apply to allow review of his claim in state court.

Nonetheless, such an unexhausted claim is subject to denial in federal court as procedurally defaulted.  Further "[a]lthough AEDPA authorizes a district court to *deny* relief on an unexhausted claim, it does *not* authorize a district court to *grant* relief on an unexhausted claim, 'unless the State, through counsel, expressly waives the requirement'."  *Alexander v. Johnson,* 163 F.3d 906, 908 (5th Cir. 1998) (emphasis added).

Although under *Harris v. Reed*, 489 U.S. 255, 265 (1989), federal review of a habeas claim is procedurally barred only if the last state court to consider the claim expressly and unambiguously based its denial of relief on a state procedural default,

> [t]his rule does not apply if the petitioner failed to exhaust state remedies and the court to which petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.  In such a case there is a procedural default for purposes of federal habeas regardless of the decision of the last state court to which the petitioner actually presented his claims.

*Coleman*, 501 U.S. at 735.  In the instant case, just as in *Gray*, "the procedural bar which gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default," or that the federal court's failure to consider the claim will result in a miscarriage of justice.  *Gray*, 518 U.S. at 162 (barring

claim on basis that claim would be barred in state court if it were presented there); *Coleman*, 501 U.S. at 750; *Nichols v. Scott*, 69 F.3d 1255, 1280 (5th Cir. 1995).

The Fifth Circuit has held that where a petitioner raises claims in federal court that have not previously been presented to the state courts, and Article 11.071, Section 5(a) would foreclose review of those claims if presented in a successive state habeas application, such is an adequate state procedural bar foreclosing federal habeas review of the claims. *Nobles*, 127 F.3d at 422; *Muniz v. Johnson*, 132 F.3d 214, 221 (5th Cir. 1998). Ochoa does not attempt to distinguish his case from *Nobles* and *Muniz*; nor does he attempt to demonstrate cause and prejudice for his failure to raise this claim in state court. Finally, Ochoa does not show that he qualifies for the miscarriage of justice exception.[7] Thus, circuit precedent compels the denial this claim as procedurally defaulted.

---

[7]   A petitioner may come within the "fundamental miscarriage of justice" exception, (1) if, as a consequence of the identified constitutional error in the guilt-innocence phase and in light of new evidence, "it is more likely than not that no reasonable juror would have convicted him," *Schlup v. Delo*, 513 U.S. 298, 329 (1995), or (2) if he establishes "by clear and convincing evidence that, but for the constitutional error at his sentencing hearing, no reasonable juror would have found him eligible for the death penalty" under state law. *Sawyer v. Whitley*, 505 U.S. 333, 350 (1992).

B.   **Alternatively, Ochoa has failed to demonstrate that he received
     ineffective assistance of counsel at punishment.**

1.   **Standard of review**

Ochoa accuses counsel of delay in appointing Francis as mitigating
investigator and failing to request a timely continuance.  He further contends
that this delay and failure to request a timely continuance resulted in various
witnesses not being called or being unprepared to testify.  But even assuming
that this claim was not procedurally defaulted, Ochoa still would not be entitled
to relief since he has failed to demonstrate that he received ineffective assistance
of counsel.  The familiar two-prong standard by which a claim of ineffective
assistance of counsel is weighed is set forth in *Strickland v. Washington*, 466
U.S. 668 (1984).  That is, to establish that counsel performed ineffectively, Ochoa
must show both that his attorney's performance was deficient and the deficient
performance prejudiced his defense. *Strickland*, 466 U.S. at 687.  Furthermore,
because a convicted defendant must satisfy both prongs of the *Strickland* test,
a failure to establish either deficient performance or prejudice makes it
unnecessary to examine the other prong. *Id.* at 697.

In order to establish that counsel's performance was constitutionally
deficient, a convicted defendant must show that trial counsel "made errors so
serious that counsel was not functioning as the 'counsel' guaranteed . . . by the
Sixth Amendment." *Id.* at 687.  In so doing, a convicted defendant must

overcome a strong presumption that trial counsel's conduct fell within a wide range of reasonable professional assistance, and every effort must be made to eliminate the "distorting effect of hindsight." *Id.* at 689. To render effective assistance, the Sixth Amendment requires counsel "to make a reasonable investigation of defendant's case or to make a reasonable decision that a particular investigation is unnecessary." *Ransom v. Johnson*, 126 F.3d 716, 723 (5th Cir. 1997) (citing *Strickland*, 466 U.S. at 691); *see Nealy v. Cabana*, 764 F.2d 1173, 1177 (5th Cir. 1985); *Martin v. Maggio*, 711 F.2d 1273, 1280 (1983). When assessing effectiveness at the sentencing stage of a capital trial, counsel's "investigations into mitigating evidence should comprise efforts to discover all reasonably available mitigating evidence." *Wiggins v. Smith*, 539 U.S. 510, 524 (2003). "[C]ounsel should consider presenting . . . [the defendant's] medical history, educational history, employment and training history, family and social history, prior adult and juvenile correctional experience, and religious and cultural influences." *Id.* That is, "[g]enerally accepted standards of competence require that counsel conduct an investigation regarding the accused's background and character." *Id.* Yet, *Strickland* does not "require defense counsel to present mitigating evidence at sentencing in every case." *Miniel v. Cockrell*, 339 F.3d 331, 344 (5th Cir. 2003).

With respect to counsel's duty to investigate, the Supreme Court has observed:

> [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Strickland*, 466 U.S. at 690-91; *Bell v. Lynaugh*, 828 F.2d 1085, 1088 (5th Cir. 1987); *Lowenfield v. Phelps*, 817 F.2d 285, 290 (5th Cir. 1987). When a petitioner argues that his counsel failed to adequately investigate mitigation evidence, the proper inquiry is "not whether counsel should have presented a mitigation case . . . [but] whether the investigation supporting counsel's decision not to introduce mitigating evidence of [the defendant's] background was itself reasonable." *Wiggins*, 539 U.S. at 523 (emphasis in original).

The reasonableness of an attorney's investigation must be determined by considering not only the evidence already known to counsel, but also whether such evidence would lead a reasonable attorney to investigate further. *Id.* at 527. The reasonableness of an investigation depends in large part on the information supplied by the defendant. *Ransom*, 126 F.3d at 123; *McCoy v.*

*Lynaugh*, 874 F.2d 954, 964 (5th Cir. 1989); *Mattheson v. King,* 751 F.2d 1432, 1440 (5th Cir. 1985) (in denying ineffective-assistance claim based on failure to investigate and pursue insanity defense, court noted defendant's failure to tell counsel that he either was presently insane or so intoxicated at time of offense as to be incapable of forming requisite intent).  At a minimum, counsel should interview potential witnesses and independently investigate the facts and circumstances of the case.  *Bryant v. Scott*, 28 F.3d 1411, 1415 (5th Cir. 1994).

Furthermore, "any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." *Strickland,* 466 U.S. at 692.  In order to establish that he has sustained prejudice, Ochoa "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  *Id.* at 694.  A reasonable probability is a probability sufficient to undermine the confidence in the outcome." *Id.*  A mere allegation of prejudice is not sufficient to satisfy the prejudice prong of *Strickland*; rather, Ochoa must "affirmatively prove" prejudice. *Id.* at 693. Where counsel is alleged to have been ineffective at the punishment phase, the inquiry is whether the "additional mitigating evidence [is] so compelling that there is a reasonable probability at least one juror could have reasonably determined that, because of

-32-

[Petitioner's] reduced moral culpability, death was not an appropriate sentence."
*Neal*, 286 F.3d at 241.

Since Ochoa never presented the instant claim to the state court, any federal review would necessarily be de novo. But—with regard to the claims that Ochoa brings later in his petition—generally when a petitioner seeks a federal writ of habeas corpus based on ineffective assistance of counsel:

> [i]t bears repeating that the test for federal habeas purposes is not whether [petitioner] made that showing. Instead, the test is whether the state court's decision—that [petitioner] did not make the *Strickland* showing—was contrary to, or an unreasonable application of, the standards, provided by the clearly established federal law (*Strickland*), for succeeding on his IAC claim.

*Schaetzle v. Cockrell*, 343 F.3d 440, 444 (5th Cir. 2003). Accordingly, to succeed in this Court on an ineffective-assistance-of-counsel claim, a petitioner must at a minimum show that the state habeas court's decision was contrary to, or an unreasonable application of, the standards provided by the clearly-established federal law (*i.e.*, *Strickland*).

**2. Ochoa has failed to show that counsel's mitigation investigation was deficient.**

As noted above, Ochoa accuses counsel of delay in appointing Francis as mitigating investigator and failing to request a timely continuance. He further contends that this delay and failure to request a timely continuance resulted in various witnesses not being called or being unprepared to testify. But the

Supreme Court has admonished that judicial scrutiny of counsel's performance "must be highly deferential," with every effort made to avoid "the distorting effects of hindsight." *Strickland*, 466 U.S. at 689-90; *Rector v. Johnson,* 120 F.3d 551, 563 (5th Cir. 1997); *Belyeu v. Scott*, 67 F.3d 535, 538, 540 (5th Cir. 1995). In evaluating counsel's investigation, a court must conduct an objective review measured for "reasonableness under prevailing professional norms," which includes a context-dependent consideration of the challenged conduct as seen "from counsel's perspective at the time." *Wiggins*, 539 U.S. at 523 (quoting *Strickland*, 466 U.S. at 688-89). Furthermore, a reviewing court must be also wary of "argument[s] [that] essentially come[] down to a matter of degrees. Did counsel investigate enough? Did counsel present enough mitigating evidence? Those questions are even less susceptible to judicial second-guessing." *Kitchens v. Johnson*, 190 F.3d 698, 703 (5th Cir. 1999). As shown below, Ochoa has failed to demonstrate that counsel's investigation and actions did not meet constitutional standards or that counsel's decisions were not strategic in nature.

### a.   Delay in appointing a mitigation specialist

Ochoa claims that his attorneys waited too long to appoint Tena Francis as mitigation investigator, leaving her with inadequate time to conduct her investigation. Pet. at 51-55, ECF No. 8. But since Ochoa never presented this claim to the state court, there is no affidavit from counsel explaining extent of

the defense's investigation and the reasoning and tactical decisions underlying counsel's presentation of witnesses and evidence. Without this information *any* ineffective-assistance-of-counsel claim is necessarily speculative. It is Ochoa's burden to show that he is entitled to relief, and the Fifth Circuit has consistently held that a petitioner's conclusory, self-serving allegation will not merit habeas relief. *Beazley*, 242 F.3d at 270 (conclusory allegations will not support federal habeas relief); *Fahle v. Cornyn*, 231 F.3d 193, 196-97 (5th Cir. 2000) (self-serving allegations do not merit relief); *McDonald v. Johnson*, 139 F.3d 1056, 1058-60 (5th Cir. 1998) (finding court did not abuse discretion in finding petitioner's claim lacked arguable basis in fact where court "observed the absence of supporting evidence other than the petitioner's own self-serving allegations" that his attorney did not explain his right to appeal); *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990); *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983) (emphasizing that mere conclusory allegations do not raise constitutional issues in habeas proceedings). Moreover, counsel's testimony on this issue is clearly available given that during state habeas review, the State was able to secure an affidavit from one of Ochoa's attorneys to rebut one of Ochoa's other allegations of ineffective assistance. SHCR-02 263 (Miller affidavit).

Nevertheless, the record reflects that Ochoa's attorneys acted reasonably in the time allotted to them. Lead counsel was appointed on August 6, 2002, and

co-counsel was appointed shortly thereafter. CR 14. According to Francis, counsel contacted Francis in November of 2002. Francis Affidavit at 1-2, ECF No. 8-1. This was a mere three months after counsel's appointment. Francis's affidavit indicates that she met with counsel at least twice and received documentation from them regarding the case *before* she was ultimately appointed on February 12, 2003. Francis Affidavit at 2-4, ECF No. 8-1; CR 138, 213. Consequently, it does not appear that the lack of a formal appointment precluded Francis from performing her investigation.

In addition, the punishment trial did not begin until April 16, 2003. 33 RR 1. Thus, Francis had four to five months from when she was initially contacted by Ochoa's attorneys and sixty-three days from when she was formally appointed to complete her investigation. While Francis claims that this was insufficient, it is not an objectively inadequate interval of time.

### b.    Failure to request a continuance at an earlier date

Ochoa also contends that his attorneys should have made an earlier request for a continuance. Pet. at 55-56, ECF No. 8. Again, since Ochoa never presented this claim to the state court, there is no affidavit from counsel explaining the defense's reasoning in this respect. Thus, any allegation of ineffectiveness is necessarily speculative and does not warrant relief. *Koch*, 907 F.2d at 530; *Ross*, 694 F.2d at 1012.

Furthermore, the record reflects that the defense did request a continuance on April 7, 2003. CR 138-50. In fact, as reason for the continuance, the motion lists the need to complete the mitigation investigation and includes an affidavit from Francis. *Id.* Ochoa does not present any evidence that suggests—nor does the record reflect—that this motion was denied because of its timing and/or that an earlier continuance would have been granted.[8] 31 RR 3-5. Counsel is not deficient for failing to make futile motions. *Parr v. Quarterman*, 472 F.3d 245, 256 (5th Cir. 2006) (holding that counsel was not deficient in failing to present a meritless argument); *Smith v. Puckett*, 907 F.2d 581, 585 n.6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim."); *Lavernia v. Lynaugh*, 845 F.2d 493, 499 (5th Cir. 1988) ("Counsel cannot be faulted for failing to pursue meritless motions.") (citations omitted); *Murray v. Maggio*, 736 F.2d 279, 283 (5th Cir. 1984) ("Counsel is not required to engage in the filing of futile motions.").

## c.   Uncalled/unprepared witnesses

Ochoa argues that the failure to provide Francis with adequate time to conduct her investigation resulted in several witnesses either not being called

---

[8]    Ochoa states that this motion was denied because jury selection had concluded at this point. This is pure speculation.

or not being adequately prepared to testify. But "[c]omplaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what a witness would have testified are largely speculative." *Sayre v. Anderson*, 238 F.3d 631, 635-36 (5th Cir. 2001) (quoting *Lockhart v. McCotter*, 782 F.2d 1275, 1282 (5th Cir. 1986)). Allegations that counsel failed to investigate and develop useful evidence are not sufficient to warrant a hearing or relief absent an "affirmative showing of what the missing evidence or testimony would have been" and an explanation "why it would have been likely to make any difference in his trial or sentencing." *Anderson v. Collins*, 18 F.3d 1208, 1220 (5th Cir. 1994). "A prisoner's bald conclusory assertion that supposed . . . witnesses were not called does not serve to 'overcome the strong presumption that his counsel's actions were reasonable.' " *Sayre*, 238 F.3d at 635 (quoting *Marler v. Blackburn*, 777 F.2d 1007, 1010 (5th Cir. 1985)).

In addition, the presentation of witness testimony is essentially strategy and, thus, within trial counsel's domain. *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985). A petitioner must overcome a strong presumption that his counsel's decision in not calling a particular witness was a strategic one. *Murray*, 736 F.2d at 282.

In the case-at-bar, Ochoa alleges that:

Mr. Ochoa's defense counsel presented considerable mitigation evidence of Mr. Ochoa's drug addiction and brain damage, and

-38-

through expert testimony, linked these factors to his behavior to explain what went wrong with an otherwise peaceable and humble man. But what was lacking in the case was the background that may have explained Mr. Ochoa's fateful choice to try cocaine or placed it in the overall context of Mr. Ochoa's life. There was little evidence presented, other than a few lines of testimony from Abel, Sr., Gabriel, and Javier, as well was some testimony from Mr. Ochoa himself, about his father's alcoholism and abuse Mr. Ochoa and the rest of the family endured during his most important formative years. These witnesses, as well as others in the family, could have presented much fuller and more compelling portraits of what life was like growing up in the Ochoa home. This would have included what life was like in Mexico, where Mr. Ochoa was born in a primitive military barracks in the mountains. The jury could have seen harsh conditions and destitution of his beginnings, and how these conditions continued once the family moved to the United States. Added to this was the misery of what Abel, Sr., became to his family for more than 10 years.

Pet. at 87-88, ECF No. 8.

But the record reflects that Ochoa's father testified regarding the family's hardship in Mexico and this country. 35 RR 106-112. Ochoa's father admitted that when he was younger that he had a problem with alcohol and could be violent towards his family. *Id.* at 113-15. He specifically admitted that when he was drunk, he would strike his children. *Id.* at 114. Gabriel Ochoa testified that his family was poor when he and Ochoa were growing up and that his father was an alcoholic who would beat his wife and children. *Id.* at 134. Javier Ochoa likewise testified that his father would get drunk and beat his children and Ochoa's mother. 36 RR 159-160. Javier also testified that the family moved frequently when he was younger. He noted that his father and mother would

both work long hours, and the children would do odd jobs, such pick pecans, collect cans, or mow grass to help make money for the family.  *Id.* at 163-167. Ochoa himself also testified that he spent his early years in Mexico before his family moved to the United States.  38 RR 6.  He acknowledged that he was raised in an abusive home where his alcoholic father would beat his mother.  *Id.* at 8.

Ochoa claims that this testimony was inadequate, but the record clearly shows that the witnesses related all pertinent facts concerning Ochoa's childhood.  Further testimony by Ochoa's father or brothers—or by his uncalled mother, maternal uncles, and aunt—would have been redundant/cumulative. *Murray*, 736 F.2d at 282 (counsel's decision not to present cumulative and redundant testimony does not constitute ineffective assistance) And without an affidavit from counsel explaining the defense's reasoning, Ochoa has not overcome the strong presumption that his counsel's decision in not calling any particular witness was a strategic one.  *Murray*, 736 F.2d at 282; *Alexander*, 775 F.2d at 602.

### 3. But even assuming that counsel's investigation was deficient, Ochoa has not demonstrated that he was prejudiced as a result.

With respect to errors at the sentencing phase of a death penalty trial, the relevant inquiry is "whether there is a reasonable probability that, absent the

errors, the sentencer [] would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." *Strickland*, 466 U.S. at 695; *see also Riley v. Cockrell*, 339 F.3d 308, 315 (5th Cir. 2003) ("If the petitioner brings a claim of ineffective assistance with regard to the sentencing phase, he has the difficult burden of showing a reasonable probability that the jury would not have imposed the death sentence in the absence of errors by counsel." (internal quotation marks omitted)).

Ochoa's alleged mitigating evidence does not compare to the mitigating evidence the Supreme Court has found to be prejudicially omitted in other cases. In *Wiggins*, for example, counsel focused on Wiggins's direct responsibility for the murder, but asked the jury to also consider his "difficult life" during opening statement. But *no* evidence was presented as to Wiggins's life history. 539 U.S. at 526. And as the Court described, "[t]he mitigating evidence counsel failed to discover and present in this case is powerful[:]"

> Wiggins experienced severe privation and abuse in the first six years of his life while in the custody of his alcoholic, absentee mother. He suffered physical torment, sexual molestation, and repeated rape during his subsequent years in foster care. The time Wiggins spent homeless, along with his diminished mental capacities further augment this mitigation case.

*Id.* at 534-35; *see also id.* at 516-17, 525.

In *Rompilla v. Beard*, the case for mitigation was composed of the testimony of five family members who "argued in effect for residual doubt, and

beseeched the jury for mercy, saying that they believed Rompilla was a good

man." 545 U.S. 474, 378 (2005).  But the evidence that was readily available to

trial counsel included "a range of mitigation leads that no other source had

opened up."  *Id.* at 390.  As the Court wrote:

> The prison files pictured Rompilla's childhood and mental health
> very differently from anything defense counsel had seen or heard.
> An evaluation by a corrections counselor states that Rompilla was
> "reared in the slum environment of Allentown, [Pennsylvania].
> vicinity.  He early came to the attention of juvenile authorities, quit
> school at 16, [and] started a series of incarcerations in and out of
> [Pennsylvania], often of assaultive nature and commonly related to
> over-indulgence in alcoholic beverages." . . .   The same file discloses
> test results that the defense's mental health experts would have
> viewed as pointing to schizophrenia and other disorders, and test
> scores showing a third grade level of cognition after nine years of
> schooling. . . The accumulated entries would have destroyed the
> benign conception of Rompilla's upbringing and mental capacity
> defense counsel had formed from talking with Rompilla himself and
> some of his family members, and from the reports of the mental
> health experts.

*Id.* at 390-91 (citations omitted).  Still other evidence established that Rompilla's

mother drank during her pregnancy, that his father had a "vicious temper," that

Rompilla and his siblings "lived in terror," that he and a brother were locked "in

a small wire mesh dog pen that was filthy and excrement filled," that they were

isolated from other children, that their home had no indoor plumbing, and that

they slept in an attic with no heat.  *Id.* at 392.  Ultimately, the Supreme Court

said of the later-discovered evidence, it "adds up to a mitigation case that bears

no relation to the few naked pleas for mercy actually put before the jury[.]" *Id.*
at 393.

Nor can Ochoa say that counsel's actions are called into question by the
Supreme Court's decision in *Williams*.  There, the Supreme Court noted that
trial counsel "failed to conduct an investigation that would have uncovered
extensive records graphically describing Williams' nightmarish childhood, *not
because of any strategic calculation* but because they incorrectly thought that
state law barred access to such records."  529 U.S. at 395.  (emphasis added).
Moreover, counsel failed to offer evidence of Williams' borderline mental
retardation, his commendations for helping uncover a prison drug ring and
returning a guard's wallet and testimony from guards that Williams was
unlikely to behave violently in prison.  *Id.*  The Supreme Court also noted that
counsel's failure to present evidence that was purely favorable with no negative
aspects was not justified by a strategic decision to focus solely on Williams's
voluntary confession.  *Id.*

Furthermore, in assessing the relative weight of the new mitigating
evidence, a reviewing court compares and contrasts the new evidence with that
from the trial.  The Fifth Circuit has indicated that it will look to see if the
petitioner's new evidence will "lessen the impact of the other evidence against
him[,]" *Conner v. Quarterman*, 477 F.3d 287, 294 (5th Cir. 2007), because

"overwhelming aggravating factors" can outweigh unpresented mitigating evidence. *Sonnier v. Quarterman*, 476 F.3d 349, 360 (5th Cir. 2007). For instance, the "brutal and senseless nature of the crime," *Smith v. Quarterman*, 471 F.3d 565, 576 (5th Cir. 2006), or the "cruel manner in which he killed," *Miniel*, 339 F.3d at 347, may weigh heavily against a finding of *Strickland* prejudice. *See also Strickland*, 466 U.S. at 700; *Knight v. Quarterman*, 186 Fed. App'x 518, 535 (5th Cir. 2006); *Ladd v. Cockrell*, 311 F.3d 349, 360 (5th Cir. 2002); *Andrews v. Collins*, 21 F.3d 612, 624 n.23 (5th Cir. 1994); *Russell v. Lynaugh*, 892 F.2d 1205, 1213 (5th Cir. 1989).

In the instant case, the record reflects that Ochoa—likely angry because his wife refused to give him additional money to indulge his crack-cocaine habit—went on a rampage and shot six members of his family, killing five of them. The victims included his wife and his two young daughters—one eighteen-months-old and the other seven-years-old. As noted by Ochoa's trial counsel with regard to another allegation, "I believe that the jury could not get past the fact that five people died in the same criminal transaction. SHCR-02 263 (Miller affidavit).

When the allegedly missing evidence, coupled with the evidence that was actually offered by the defense, is weighed against the aggravating evidence, including the circumstances of the crime, there is simply no reasonable

probability that the outcome of the proceeding would have been any different in this case. For these reasons, even if this Court finds deficient performance, Ochoa is not entitled to relief on this claim. *Ramirez v. Dretke*, 398 F.3d 691, 697 (5th Cir. 2005) (reiterating that both prongs of the *Strickland* test must be satisfied in order to be entitled to relief). Ochoa's ineffective-assistance-of-counsel claim should be denied.

## II.    Ochoa's Claim That He Received Ineffective Assistance of Counsel at Voir Dire Is Unexhausted and Procedurally Defaulted. Alternatively, His Claim Is Without Merit.

In his second claim for relief, Ochoa argues that he received ineffective assistance of counsel during the voir dire of his capital-murder trial. Pet. at 89-103, ECF No. 8. Specifically, Ochoa contends that his attorneys: (1) failed to question individual jurors regarding their ability to fairly and impartially consider mitigating evidence (*id.* at 90-93); (2) were rendered ineffective when the trial court forbade certain lines of questioning (*id.* at 94-97); (3) failed to object properly to the trial court's ruling limiting questioning of the venire; and (4) failed to ask more pointed questions, particularly in comparison with the prosecution (*id.* at 98-99). Ochoa further believes that should he be able to show counsel was deficient at voir dire, prejudice should be presumed. *Id.* at 100-01. But federal habeas relief on this claim is unexhausted and procedurally

defaulted. Alternatively, relief should be denied because Ochoa's allegation lacks merit.

### A.    This claim is unexhausted and procedurally defaulted.

Ochoa did not present this claim in either of his state habeas applications or in his brief on direct appeal. *See* SHCR-01; SHCR-02; Appellant's Brief. Thus, this claim is unexhausted and procedurally defaulted. *See* 28 U.S.C. § 2254(b) (precluding federal habeas corpus relief when applicant has not exhausted state court remedies); *Nobles*, 127 F.3d at 422 (determining that defaulted claims had yet to be presented to the state courts; concluding that the standard for avoiding a state citation for abuse of the writ could not be satisfied; and holding the claims were unexhausted and procedurally defaulted).

### B.    Alternatively, this claim is without merit.[9]

As noted earlier, in evaluating the performance of counsel, a court must indulge a strong presumption said counsel's conduct fell within the wide range of reasonable professional assistance; therefore, the defendant must overcome the presumption that, under the circumstances, the challenged action constituted sound trial strategy. *Strickland*, 466 U.S. at 689. Thus, the burden is on Ochoa to allege specific facts which show his trial counsel's failure to ask

---

[9]     Because Ochoa has defaulted this claim any review would necessarily be de novo.

-46-

the members of his jury venire, who eventually sat on his jury, specific questions during voir dire fell outside the wide range of presumptively reasonable professional performance. *See Amos v. Scott*, 61 F.3d 333, 346 (5th Cir. 1995) (holding the burden is on the petitioner to allege facts which, if proven, entitle him to relief).

Voir dire is constitutionally sufficient if the questions asked are sufficient to expose potential bias and allow defense counsel the ability to make a reasonably knowledgeable exercise of strikes. *See United States v. Greer*, 968 F.2d 433, 443 (5th Cir. 1992). In order to sustain a claim of ineffective assistance of counsel based on inadequacies of voir dire, Ochoa must demonstrate that at least one of the challenged jurors was actually biased against him. *See Miller v. Francis*, 269 F.3d 609, 616 (6th Cir. 2001); *Goeders v. Hundley*, 59 F.3d 73, 75 (8th Cir. 1995) (petitioner must show juror actually biased to maintain claim that he was prejudiced); *Rogers v. McMullen*, 673 F.2d 1185, 1189 (11th Cir. 1982) (Sixth-Amendment right to fair and impartial jury not violated without showing a jury member hearing the case was actually biased). In the absence of such a showing, Ochoa cannot demonstrate that he was denied his Sixth-Amendment right to a fair and impartial jury. *See Smith v. Phillips*, 455 U.S. 209, 215 (1982) (prospective jurors presumed impartial; challenger bears burden of proving actual bias to maintain claim that juror

prejudiced him).

### 1. Ochoa's claim that counsel failed to adequately question individual jurors regarding their ability to fairly and impartially consider mitigating evidence is conclusory.

Ochoa contends that his attorneys failed to question individual jurors regarding their ability to fairly and impartially consider mitigating evidence. Pet. at 90-93, ECF No. 8. But—as with his previous ineffective-assistance-of-counsel claim—Ochoa has failed to present any affidavit or testimony detailing counsel's voir-dire strategy. Moreover, Ochoa has not presented any evidence that a juror was actually biased against him and unwilling to consider his mitigating evidence.[10] As a consequence, any accusation that counsel performed deficiently in this respect is speculative and conclusory. *Koch*, 907 F.2d at 530; *Ross*, 694 F.2d at 1012.

### 2. Ochoa has failed to demonstrate that the trial court rendered counsel ineffective.

Ochoa also claims that the trial court rendered counsel ineffective by allegedly limiteing counsel from informing the venire that the case involved five homicides that happened at the same time. Pet. at 94-97, ECF No. 8.

---

[10]      Ochoa later notes that Lori Polk was struck from the jury, but she was not struck because she could not consider mitigating evidence. Polk was struck because after she was selected for the jury, an acquaintance reminded her of pretrial publicity regarding the case, and she no longer felt that she could be impartial. 27 RR 116-26. In any event, she was struck before trial began.

Fundamental fairness requires that a criminal defendant be guaranteed a jury panel composed of impartial, indifferent jurors. *See Murphy v. Florida*, 421 U.S. 794, 799-800 (1975); *Irvin v. Dowd*, 366 U.S. 717, 722 (1961). The purpose of voir dire is to allow the selection of an impartial jury and to provide assistance to counsel in effectively exercising peremptory challenges. *Mu'Min v. Virginia*, 500 U.S. 415, 431 (1991). But the trial court is granted broad discretion in conducting voir dire, and that discretion is limited by the requirement that the criminal defendant be afforded due process. *Mu'Min*, 500 U.S. at 423, 427; *see also Turner v. Murray*, 476 U.S. 28, 38 n.12 (1986) (scope and conduct of voir dire in discretion of trial court).

Furthermore, clearly established Supreme Court law does not mandate precise voir dire questions, and the latitude of voir dire examination is generally within the court's sound discretion. *Ortiz v. Quarterman*, 504 F.3d 492, 503 (5th Cir. 2007) (*Witt-Witherspoon*[11] context); *Pinkney v. United States*, 380 F.3d 882, 887 (5th Cir. 1967). "Unless some other constitutional right incorporated into the Fourteenth Amendment by the due process clause is abridged, due process is violated only if the court's action denies the defendant a fundamentally fair trial." *Kirkpatrick v. Blackburn*, 777 F.2d 272, 278-79 (5th Cir. 1985).

---

[11]     *Witherspoon v. Illinois*, 391 U. S. 510 (1968); *Wainwright v. Witt*, 469 U.S. 412 (1985).

As noted above, Ochoa has not presented evidence that any juror was biased against him. *See* n.10, *supra*. Moreover, Ochoa has not actually pointed out where in the record that the trial court forbade counsel from inquiring as to the other murders. Consequently, the trial court's exact limitations are not known.

### 3. Ochoa has not demonstrated that counsel failed to preserve trial-court error for review.

Ochoa also claims that his attorneys rendered ineffective assistance by failing to preserve trial court error for review. Pet. at 97-98, ECF No. 8. Specifically, Ochoa argues that counsel inadequately preserved the trial court's alleged ruling prohibiting counsel from telling the venire that the case involved the murder of five people. *Id.* To preserve a complaint for appeal, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection or motion. Tex. R. App. P. 33.1(a)(1); *Mosley v. State*, 983 S.W.2d 249, 25 (Tex. Crim. App. 1998).

In the case-at-bar, trial counsel objected at length following the incident with juror Polk. 27 RR 122-25. Indeed, in his petition, Ochoa calls this objection "lengthy" and "well-reasoned." Pet. at 96, ECF No. 8. This objection appears ample to preserve the issue for review. But to the extent that the objections was insufficient, Ochoa has not shown that this limitation was not permitted by the

wide latitude allowed to trial court's to govern voir dire.  Nor has Ochoa shown

that any prospective juror who made it onto the jury was actually biased against

him.  Thus, no appeal of this alleged error would have been successful in any

event.

> 4. **Ochoa's claim that counsel failed to ask more pointed questions as compared to the State not a valid basis for *Strickland* relief.**

Ochoa claims that the defense team's allegedly inadequate investigation

precluded them from conducting a meaningful voir dire, especially vis-à-vis the

State's voir dire.  Pet at 98-99, ECF No. 8.  But Ochoa's conclusory complaint

simply does not satisfy the deficient performance prong of *Strickland*.  Under

*Strickland*, Ochoa "must prove that his counsel made errors so serious that they

deprived him of his Sixth Amendment rights and that the deficient performance

prejudiced his defense." *Smith*, 907 F.2d at 584.  Generalized claims cannot

satisfy this burden of proof; a habeas petitioner must show "specific incidents of

actual prejudice resulting from counsel's performance" in order to meet the

*Strickland* standard. *Id*.  Thus, a "wholly general and conclusory assertion" will

not establish a claim of ineffective assistance of counsel. *Id*.  Ochoa has not

identified any real (as opposed to speculative) instance of juror bias that should

have been ferreted out by further questioning.  The quality of the State's voir

dire is irrelevant to whether counsel's performance was reasonable.

**B.      Ochoa incorrectly asserts that prejudice should be presumed if counsel is found to have performed deficiently during voir dire.**

Ochoa claims that his attorneys' inadequate voir dire was per se prejudicial.  However, the Supreme Court has explained that there is only a narrow category of cases exist involving a "breakdown in the adversarial process," wherein prejudice will be presumed. *United States v. Cronic*, 466 U.S. 648, 657-62 (1984).  In *Cronic*, the Court "identified three situations implicating the right to counsel that involved circumstances 'so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified.'" *Bell*, 535 U.S. at 694 (citing *Cronic*, 466 U.S. at 658-59).  First, the Court held that prejudice would be presumed where a defendant suffered a "complete denial of counsel" during a critical stage of the proceedings, such as arraignment. *Id.* at 695.  Second, prejudice will be presumed when counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing." *Id.* at 696. Finally, prejudice will be presumed "where counsel is called upon to render assistance under circumstances where competent counsel very likely could not." *Id.* "Apart from circumstances of [this] magnitude, however, there is generally no basis for finding a Sixth[-]Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the [outcome of trial]." *Cronic,* 466 U.S. at 659 n.26.

The Fifth Circuit has repeatedly emphasized that "constructive denial of counsel as described in *Cronic* affords only a narrow exception to the requirement that prejudice be proved." *Childress v. Johnson*, 103 F.3d 1221, 1228 (1997); *see also Jackson v. Johnson*, 150 F.3d 520, 524 (5th Cir. 1998) (stating that constructive denial of counsel under *Cronic* "is a very narrow exception to the *Strickland* prejudice requirement"); *Gochicoa v. Johnson*, 238 F.3d 278, 284 (5th Cir. 2000)("'A constructive denial of counsel occurs . . . in only a very narrow spectrum of cases where the circumstances leading to counsel's ineffectiveness are so egregious that the defendant was in effect denied any meaningful assistance at all.'") (citations omitted).

The Fifth Circuit has limited *Cronic* to "cases involving the absence of counsel from the courtroom, conflicts of interest between defense counsel and the defendant, and official interference with the defense." *Jackson*, 150 F.3d at 525 (citing *Childress*, 103 F.3d at 1228); *Riddle*, 288 F.3d at 716-17 (citations and quotation marks omitted). In *Cronic*, the Supreme Court reversed a grant of habeas corpus relief because the petitioner had failed to show "that counsel failed to function in *any* meaningful sense as the Government's adversary." 466 U.S. at 666 (emphasis added). By its language, the Court indicated that it intended this category to be limited to circumstances involving the *absolute failure by counsel to represent the defendant's interests at all*. The Fifth Circuit

has generally stated this principle by noting that "bad lawyering, regardless of *how* bad, does not support the presumption [of prejudice]; more is required." *Jones v. Jones*, 163 F.3d 285, 300 (5th Cir. 1998) (quoting *McInerney v. Puckett*, 919 F.2d 350, 353 (5th Cir. 1990)) (emphasis in original); *see also Childress*, 103 F.3d at 1228 ("[W]hen the defendant can establish that counsel was not merely incompetent but inert, prejudice will be presumed."). Furthermore, *Cronic* only applies to a state action that denied a defendant his right to counsel "at a critical stage of trial." *Riddle* 288 F.3d at 716-17.

Ochoa cannot show that his case is squarely governed by *Cronic*, and thus, *Strickland* provides the proper analytical framework for evaluating his Sixth-Amendment claims. *See Woodward v. Collins*, 898 F.2d 1027, 1029 (1990) ("[U]nless the appellee can show that the instant case is squarely governed by *Cronic*, he must rebut a presumption that *Strickland* should apply") (citation omitted).

Under a traditional *Strickland* analysis, Ochoa cannot show that he was prejudiced. Ochoa alleges no specific facts showing his counsel were aware—or should have been aware—during voir dire of any identified venire member who possessed an inability or unwillingness to give mitigating effect to any evidence counsel intended to rely upon as mitigating. Consequently, even if Ochoa's

counsel is found deficient, Ochoa's ineffective-assistance-of-counsel claim should still be denied for lack of prejudice.

### III. Ochoa's Claim that He Was Denied a Fair and Impartial Jury Is Unexhausted and Procedurally Defaulted.  Alternatively, His Claim Is Without Merit.

In his third claim for relief, Ochoa argues that, because he was purportedly deprived an adequate voir dire, he was also denied his right to be tried by a fair and impartial jury under the Sixth and Fourteenth Amendments to the United States Constitution.  Pet. at 101-02, ECF No. 8.  But the Court should deny relief.  Ochoa never presented this claim to the state court for review, rendering it unexhausted and procedurally defaulted.  Moreover, it is wholly without merit.

### A.   This claim is unexhausted and procedurally defaulted.

Ochoa did not present this claim in either of his state habeas applications or in his brief on direct appeal.  *See* SHCR-01; SHCR-02; Appellant's Brief.  Thus, this claim is unexhausted and procedurally defaulted.  *See* 28 U.S.C. § 2254(b) (precluding federal habeas corpus relief when applicant has not exhausted state court remedies); *Nobles*, 127 F.3d at 422 (determining that defaulted claims had yet to be presented to the state courts; concluding that the standard for avoiding a state citation for abuse of the writ could not be satisfied; and holding the claims were unexhausted and procedurally defaulted).  Ochoa

does not argue cause or prejudice or assert actual innocence.  Consequently, he should not be permitted habeas relief on this claim.

**B.    Alternatively, this claim is without merit.**[12]

As explained more fully in Section II(B)(2), *supra*, the trial court's decision to limit voir-dire questioning (assuming arguendo that it did so) was within its discretion and violate Ochoa's due-process rights.  Moreover, Ochoa has failed to show that any member of his jury was actually biased or was impartial in any way.  Accordingly, Ochoa's claim should be denied on the merits even if it is not procedurally defaulted.

**IV.    Ochoa's Claim that He Received Ineffective Assistance of Counsel on Appeal Because His Appellate Attorney Chose Not to Raise the Above Voir-dire Issues Is Unexhausted and Procedurally Defaulted.  In the Alternative, this Claim Is Without Merit since the Unappealed Issue Would Not Have Succeeded.**

In his fourth claim for relief, Ochoa argues that he received ineffective assistance of counsel on appeal.  Pet. at 102-03, ECF No. 8.  Specifically, Ochoa contends that his appellate attorney failed to raise the issues of trial counsel's allegedly ineffective performance during voir dire or the independent violation of Ochoa's right to an adequate voir dire.  *Id.*  He asserts that as a result, he should be entitled to a new appeal.  But such relief is precluded by Ochoa's

---

[12]    Again, since Ochoa defaulted this claim any review would necessarily be de novo.

failure to raise this claim during state habeas review, thus rendering it unexhausted and procedurally defaulted. And even if Ochoa's claim was not unexhausted and procedurally defaulted, a new appeal should be denied because the unappealed issues are meritless.

### A.   This claim is unexhausted and procedurally defaulted.

Ochoa did not present this claim in either of his state habeas applications or in his brief on direct appeal. *See* SHCR-01; SHCR-02; Appellant's Brief. Thus, this claim is unexhausted and procedurally defaulted. *See* 28 U.S.C. § 2254(b) (precluding federal habeas corpus relief when applicant has not exhausted state court remedies); *Nobles*, 127 F.3d at 422 (determining that defaulted claims had yet to be presented to the state courts; concluding that the standard for avoiding a state citation for abuse of the writ could not be satisfied; and holding the claims were unexhausted and procedurally defaulted). Ochoa does not assert cause or prejudice for his default or assert that he is actually innocent. Consequently, habeas relief on this claim is not permitted.

### B.   In the alternative, this claim is without merit.[13]

Appellate counsel's effectiveness is measured by the same standard applied to trial counsel: whether the performance was objectively reasonable

---

[13]    Due to Ochoa's procedural default, a merits review of this claim is necessarily de novo.

and whether any deficient performance prejudiced the proceeding. *Sharp v. Puckett*, 930 F.2d 450, 452 (5th Cir. 1991). Counsel is not ineffective merely because he fails to raise issues that the defendant, his client, requests him to raise. *Smith v. Robbins,* 528 U.S. 259, 285 (2000). Nor is counsel ineffective for failing to raise every possible point on appeal. *Id.* at 288. Rather, appellate counsel is obliged to raise and brief only those issues that he believes have the best chance of success. *Smith,* 528 U.S. at 285; *see also Engle v. Isaac*, 456 U.S. 107, 134 (1982) ("[T]he constitution guarantees criminal defendants only a fair trial and a competent attorney. It does not insure that defense counsel will recognize and raise every conceivable constitutional claim."). Only "solid, meritorious arguments based on directly controlling precedent should be discovered and brought to the court's attention." *United States v. Williamson*, 183 F.3d 458, 462-63 (5th Cir. 1999). Furthermore, prejudice cannot be shown in the absence of a reasonable probability that, but for counsel's omitting a particular ground of error, the case would have been reversed on appeal. *Smith,* 528 U.S. at 285. Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent the alleged errors of counsel. *Strickland*, 466 U.S. at 695-96. Petitioners must "affirmatively prove prejudice." *Id.* at 693. They cannot satisfy

the second prong of *Strickland* with mere speculation and conjecture. *Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992).

As explained above in Sections II and III, *supra*, trial counsel was not ineffective and Ochoa's right to a fair and impartial jury was not violated. It is also worth noting that direct appeal is generally not an appropriate venue for ineffective-assistance-of-counsel claims. The Court of Criminal Appeals typically requires that these claims be brought in a state habeas application. *See Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App.1986); *Moore v. State*, 700 S.W.2d 193, 204-05 (Tex. Crim. App. 1985). Based on this record, Ochoa fails to show that his counsel was deficient for failing to raise a claim on direct appeal. Furthermore, absent a showing that the result of the appeal would have been different but for his counsel's deficient performance, Ochoa does not demonstrate the requisite actual prejudice. Accordingly, Ochoa has not established a valid claim for ineffective assistance of counsel on appeal.

## V. Ochoa's Confrontation-Clause Claim Is Procedurally Barred. Alternatively, it Is Without Merit.

In his fifth claim for relief, Ochoa argues that his right to confront and cross-examine witnesses as guaranteed by the Confrontation Clause of the Sixth Amendment was violated when the trial court allowed certain testimonial evidence before the jury. Pet. at 104-14, ECF No. 8. Ochoa raised this claim as his first point of error on direct appeal. *See* Appellant's Brief. But the Court of

Criminal Appeals found that this claim was barred for lack of a contemporaneous objection. Consequently, this claim is also procedurally barred from federal habeas review. Even assuming that this claim were not procedurally barred, it is without merit and habeas relief should be denied for that reason.

### A.    Facts relevant to the claim

The Court of Criminal Appeals accurately summarized the facts relating to this claim in its opinion on direct appeal:

> The evidence, which is the subject of this point of error, is an August 1997 tape-recorded telephone conversation between [Ochoa] and his wife while they were separated over the Jonathan issue. The tape contains many statements. About half of [Ochoa]'s statements on the tape are inaudible. [Ochoa] complains about the following statements that his wife made during the August 1997 tape-recorded telephone conversation.
>
> [[OCHOA]]:  (Inaudible).
>
> [[OCHOA]'S WIFE]:  Why do you want to kill us?
>
> [[OCHOA]]:  (Inaudible).
>
> [[OCHOA]'S WIFE]:  What do you mean killed [sic] us? We haven't done anything to you. You're the one that [sic] left.
>
> [Ochoa] claims that these out-of-court statements by his wife were offered for the truth of the matter asserted in them that [Ochoa] "was threatening to kill more than just her, perhaps also his children and/or family, which of course is what he eventually did." We note (and believe it relevant in resolving this point of error) that

[Ochoa] also made a statement on the August 1997 tape threatening to shoot his wife.

> [[OCHOA]]:  I am leaving.  I am fixing to hang up.  I have nothing else to say.  If you have anything to say about my daughter call me—if not don't call me.
>
> [[OCHOA]'S WIFE]:  You're not gonna know nothing about your daughter.
>
> [[OCHOA]]:  Why not?
>
> [[OCHOA]'S WIFE]:  If she gets sick or anything you don't worry about us.  We're not gonna worry about you.  You look—
>
> [[OCHOA]]:  (Inaudible) you don't worry about me!  My daughter worries about me and I worry about her.
>
> [[OCHOA]'S WIFE]:  How do you know she worries, worries about you?
>
> [[OCHOA]]:  (Inaudible)
>
> [[OCHOA]'S WIFE]:  Look, she—
>
> [[OCHOA]]:  Well see, you're starting to piss me off again.  You want me to go shoot you right now?  What's wrong with you man?  Why do you act that way?  Why do you say these words to me?  Jerk.  Witch.

When he testified at the punishment phase, [Ochoa] did not deny that he made the statement on the August 1997 tape threatening to shoot his wife.  He testified that his wife probably said something that caused him to threaten to shoot her.

> Q. [PROSECUTION]: So why are you telling her then about coming over and shooting her?  Why are you saying that you wish you never had these children?  Why are you saying that?  That's not due to anger?

A.  [[OCHOA]]:  Well, that phone conversation, she probably said something that did make me mad or one way or another, that caused me to say it.

Q.  So she would make you mad enough to where you would go and say, you know, Why don't I come over and shoot you and I wish I never had these children?

A.  At times we would argue heavily, which the first time I slapped her which that's what happened.  A lot of times our arguments that we had, like any other couple, would get real—real heavy.  And a lot of times, you know, I would tell her, you know, she wouldn't stop arguing.  A lot of times I would tell her, you know, You need to see a counselor.  You don't know when to stop when we argue heavily, and, you know, to say that—I mean, if I hadn't heard it on the tape, I wouldn't have believed it myself.

Q.  And you sure wouldn't admit to doing it in front of this jury?

[DEFENSE COUNSEL]:  Object to side bar remark, Your Honor.

Q.  Is that true?

[THE COURT]: Overruled.

A.  Can you repeat that?

Q.  That would be another thing you could deny if we didn't happen to have it on tape.  You would never admit to this jury that you ever threatened to shoot [your wife]?

A.  I wouldn't remember it, no, but I would not—I'm here to tell the truth.

Q.  How many times do you think you told her that·or
threatened her, to shoot her? How many times would
you tell her that?

A.  I don't know.  I don't think I told her any unless
I—you know, if I hadn't heard that tape, I would say
none.

Q.  And that's just quite a coincidence the one time that
you happen to threaten your wife, tell her you would
shoot her, just happens to be she had a tape recorder
running.  There is no other times?

A.  No, sir.

Q.  No other times you mention that you wish you'd
never had those children?

A.  No, sir.

Q.  How about calling her a bitch and a whore, how
often would you do that in front of all—in front of her
family?

A.  In front of her family, I don't believe any.

The trial court overruled the following objection that [Ochoa] made
to the admission of the August 1997 tape.

[[OCHOA]]:  Judge, first of all, it's hearsay.  Second of
all, it's not complete.  You cannot hear the entire
recording.  And without the other end of the recording,
we have no way of knowing the context or what was
said or anything else, because on at least the
first—more than 50 percent of this recording there's no
voice that's audible on the other end that can be
identified.

Furthermore, there's a voice somewhere in the middle
of the tape, sounds like a child.  That voice has not been

identified.  We've got no evidence in the record with regard to the recording device, how it was used, who made it, whether it's been altered or anything else. And she comes on at the very end and says when this conversation occurs, August 12th, 1997, on a Tuesday. You can obviously hear the tape has been cut off and then that it is added at the end.  We don't have any way of knowing it was made at the same time.  And there has been no testimony with regard to that either.

Furthermore, Judge, this conversation is completely out of context.  It was made more than 5 years—or 5 years prior to the events of August the 4th, 2002.  It's strictly done for inflammatory purposes.  I submit that the jury is going to be free to surmise the meaning behind these words without an explanation.  For instance, on page 6 of the transcript that has been provided to the Court where there is the mention of the word "Why do you want to kill us? What do you mean killed us," I submit to the Court that the meaning behind that has to do with the relationship and the marriage.  It has nothing to do with bodily harm or a threat to commit bodily harm.   But taken out of context on this tape or whatever, whatever, without anybody to explain it, the jury is free to presume that has to do with a physical threat to commit harm, and I do not believe that's what the meaning of this conversation is at that point.  And there's no way for that to be explained.  The State's free to argue its interpretation without us knowing the true meaning behind that portion of the tape or the words.

We don't believe the predicate has been laid for the admission of the tape.   It is rank hearsay.   We are aware of the fact that the Court of Criminal Appeals in [citation omitted] has basically stated that the previous requirements that were mentioned in [citation omitted] were not necessarily valid or to be followed now.  Their interpretation was that those predicates have been subsumed in Rule 901 of the Texas Rules of Evidence and it doesn't mean they've been taken away.  It just

means the rule is going to control rather than the plain language of case law in [citation omitted] which established the predicate for recording; that is, the device is capable of taking the testimony, the operator of the device was competent, the authenticity of the correctness of the recording, no changes, additions, or deletions have been made.   The manner and preservation of the recording and of speakers and the testimony elicited was voluntarily made without any kind of inducement.   We will submit to the Court that even that has not been satisfied.

For all these reasons we object to the admission of this rank hearsay that has no way of being verified.

*Ochoa v. State*, slip op. at 13-17.

### B. This claim is procedurally barred because of Ochoa's failure to raise a contemporaneous objection.

Where a petitioner fails to exhaust his State remedies, but it is clear that the State court to which he would return to exhaust the claim would find the claim procedurally barred, the claim is procedurally defaulted for purposes of federal habeas corpus review. *See, e.g., Coleman*, 501 U.S. at 735 n.1; *Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001); *Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir. 1995). Likewise barred from federal habeas review are claims that the state court held procedurally barred on review on the basis of independent and adequate state law grounds. *See, e.g., Coleman*, 501 U.S. at 729-30 ("The doctrine applies to bar federal habeas claims because the prisoner had failed to meet a state procedural requirement.  In these cases, the state judgment rests

upon independent and adequate state procedural grounds."); *Wainwright v. Sykes*, 433 U.S. 72, 87-88 (1977).  Where a state court holds a claim barred on independent and adequate state law grounds and reaches the merits of the claim in the alternative, the bar imposed by the state court is not vitiated.  *See Harris v. Reed*, 489 U.S. at 264 n.10; *Hughes v. Dretke*, 412 F.3d 582, 592-93 (5th Cir. 2005) (alternate holding on merits by state court did not preclude imposition of bar on federal habeas review for petitioner's failure to contemporaneously object on federal constitutional grounds in state court); *Thacker v. Dretke*, 396 F.3d 607, 614 (5th Cir. 2005) (procedural bar imposed for petitioner's failure to contemporaneously object and preserve claim for review not circumvented by state court's alternative holding that constitutional claim lacked merit).

As with unexhausted and procedurally defaulted claims, in order to receive federal habeas review, a petitioner must demonstrate "'cause' for the default and 'prejudice attributable thereto,' or demonstrate that failure to consider the federal claim will result in a 'fundamental miscarriage of justice.'" *Coleman*, 501 U.S. at 749-50 (internal citations omitted).  In order to demonstrate cause, a petitioner must show "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  Prejudice may be demonstrated by showing that the errors "worked to [the petitioner's] actual and substantial disadvantage,

-66-

infecting his entire trial with error of constitutional dimensions." *Carrier*, 477 U.S. at 494 (internal quotations omitted).   If a petitioner is unable to demonstrate cause and prejudice, he may obtain review of his claim by demonstrating that the application of the procedural bar would result in a miscarriage of justice because he is actually innocent of the crime.  *House v. Bell*, 547 U.S. 518, 537-38 (2006).   An allegation of actual innocence requires that a petitioner support his claim "with new, reliable evidence that was not presented at trial and show that it was more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Fairman v. Anderson*, 188 F.3d 635, 655 (5th Cir. 1999) (citing *Schlup*, 513 U.S. at 327).   In terms of the sentencing phase, "miscarriage of justice" also means that, but for constitutional error, no reasonable juror would have found the petitioner eligible for the death penalty under the applicable state law.  *Sawyer*, 505 U.S. at 336.

With regard to this claim, the Court of Criminal Appeals held:

> [Ochoa]'s trial objection, specifically mentioning only the wife's out-of-court statements, "Why do you want to kill us? What do you mean killed us," raised no claim that the admission into evidence of these out-of-court statements violated his federal constitutional right to confront the witnesses against him. [Ochoa]'s trial objection, thus, does not comport with that raised on appeal, and [Ochoa], therefore, failed to preserve for review the federal constitutional confrontation claim that he makes on appeal. *See* Tex. R. App. Proc., 33.1(a).

*Ochoa v. State,* slip op. at 17.

Because the state court rejected Ochoa's claim for failure to comply with Texas's contemporaneous-objection rule, the claim is procedurally barred as having been denied on independent and adequate state grounds.[14]

### C.   Alternatively, this claim is without merit because the testimony was introduced during punishment, not guilt-innocence.

Nevertheless, Ochoa is still not entitled to federal habeas relief on this claim. The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy . . . the right to be confronted with the witnesses against him." In *Crawford v. Washington*, the Supreme Court explained that this Clause "reflects a judgment, not only about the desirability of reliable evidence . . . , but about how reliability can best be determined." 514 U.S. 36, 61 (2004) (citation omitted). Reaching back to the Framers's original intent, the *Crawford* Court held that when the evidence at issue is "testimonial," the Sixth Amendment requires a showing of both unavailability and a prior opportunity for cross-examination before testimonial evidence will be admitted. *Id.* at 68. The Court explained that "[w]hatever else the term ['testimonial'] covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Id.* However, the

---

[14]     Ochoa contends that he received ineffective assistance of counsel because of his attorneys' failure to object; however, he does not claim it is cause for circumventing the procedural bar. And even if he did,. That claim, to , would have to be exhausted. *Edwards v. Carpenter*, 529 U.S. 446, 452 (2000)

Fifth Circuit has since held that "the Confrontation Clause does not operate to bar the admission of testimony relevant only to a capital-sentencing authority's selection decision." *United States v. Fields*, 483 F.3d 313, 326 (5th Cir. 2007). Consequently, this tape—admitted during punishment—is not subject to a *Crawford* analysis and Ochoa's Confrontation-Clause argument is without merit. 35 RR 5 (admission).

    **C.    Assuming arguendo that Ochoa's rights under the Confrontation Clause were violated, no harm resulted.**

Even assuming not only that these statements were hearsay, but also that their admission violated the Confrontation Clause, federal habeas corpus relief should not be granted unless the error had a substantial and injurious effect or influence in determining the jury's verdict. *Lee v. Illinois*, 476 U.S. 530, 539-40 (1986); *see also Brecht*, 507 U.S. at 637; *Cupit v. Whitley*, 28 F.3d 532 (5th Cir. 1994) (erroneous admission of evidence does not merit federal habeas relief unless it is a crucial, critical, highly significant factor that renders the trial as a whole fundamentally unfair); *see also Fry v. Pliler*, 551 U.S. 112, 121-22 (2007) (holding that, on federal habeas corpus review under 28 U.S.C. § 2254, the *Brecht* standard of harmless error applies whether or not the state appellate court conducted a harmlessness review under Chapman ). Contrary to Ochoa's assertion, the witnesses' statements did not have such an effect or influence upon the jury's verdict because the evidence of Ochoa's guilt was overwhelming.

Accordingly, the error, if any, could not have had the requisite substantial and injurious effect or influence upon the jury's verdict to warrant a grant of federal habeas relief.  For all these reasons, federal habeas relief must be denied.

## VI.   The State Court Reasonably Concluded that Ochoa Did Not Receive Ineffective Assistance of Counsel When His Trial Counsel Did Not Object to the State's Alleged Violation of the Confrontation Clause.

In his sixth claim for relief, Ochoa argues that he received ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments when his trial counsel failed to make proper and timely objections to the State's purported use of testimonial statements contrary to the Confrontation Clause of the Sixth Amendment to the United States Constitution.  Pet. at 113-14, ECF No. 8.  Ochoa raised this claim during state habeas review.  The state court concluded that counsel was not ineffective for failing to predict *Crawford,* and the testimony was clearly admissible under the precedent applicable prior to *Crawford.*  Alternatively, the state court found that an objection would have been overruled under *Crawford.*  This resolution is clearly reasonable, and therefore AEDPA forbids habeas relief being granted.

### A.   The state court reasonably concluded that the testimony was admissible under the precedent applicable prior to *Crawford* and counsel was not ineffective for failing to predict *Crawford.*

With respect to this claim, the state habeas court issued the following findings:

100.    Before the punishment phase began, the Court held a hearing outside the jury's presence on the admissibility of the audiotape.  Alma Alviso, the surviving sister of Ochoa's wife, Cecilia, testified that she was physically present in August of 1997 when Cecilia made the tape in question. [35 RR 4, 13.]

101.    Alma testified that Cecilia recorded the telephone conversation between Cecilia and Ochoa. [35 RR 14.] Alma identified the original tape and identified the only two voices on it as Cecilia's and Ochoa's. [35 RR 5-6.]

102.    Alma testified that the conversation is in Spanish and English and that the recording is an accurate depiction of what was said between them, even though some parts are inaudible. [35RR 5, 7, 61.] Alma also testified that Cecilia was concerned about the comments Ochoa made on the tape and wanted Alma to know she had the tape of something ever happened to her. [35 RR 6, 17.]

103.    Counsel objected at trial that the tape was hearsay, incomplete, contained an unidentified child's voice, was presented out of context, and that a proper predicate had not been laid. [35 RR 22-24, 26.] Counsel specifically complained about Cecilia's statements on the tape, "Why do you want to kill us?  What do you mean killed [sic] us?" [35 RR 23.] Counsel did not raise a Confrontation Clause objection.

104.    After listening to the tape, this Court overruled Ochoa's objections, [(35 RR 27)], and admitted it at punishment along with an accompanying transcript. [(35 RR 5-6, 63-63)].

105.    Ochoa appealed this Court's ruling on the ground that the admission of the tape violated the Confrontation Clause.  The Court of Criminal Appeals held that Ochoa's trial objection did not comport with his complaint on appeal.  [*Ochoa v. State*, slip op. at 17.]  The Court also held that Ochoa's own statement on the tape, "You want me to go shoot you right now?' was properly admitted and rendered any error in the admission of his wife's statements harmless. *Id.*

-71-

SHCR-02 368-69.

The state court then concluded that there was no viable objection based on existing law:

> 107. Counsel's representation is measured against the law in effect at the time of trial. *Ex parte Chandler*, 182 S.W.3d 350, 359 (Tex. Crim. App. 2005).
>
> 108. The Court finds that Ochoa was tried almost one year prior to the Supreme Court's decision in [*Crawford*]. Ochoa's trial occurred three months prior to the Supreme Court granting certiorari in that case. *See Crawford v. Washington*, 539 U.S. 914 (2003) (granting certiorari June 9, 2003).
>
> 109. Under the controlling law of the time, [*Roberts*][15], hearsay rules partially overlapped with Confrontation[-]Clause law. *United States v. Owens*, 484 U.S. 554, 560 (1988). Since Cecilia's statements on the audiotape were not hearsay and their trustworthiness was easily gauged by the jury listening

---

[15]     Under *Ohio v. Roberts*:

when a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate "indicia of reliability." Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other case, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness.

448 U.S. 56, 66 (1980) (footnote omitted). *Roberts* did not distinguish between testimonial and non-testimonial evidence. *See Crawford*, 541 U.S. at 68 ("Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law—as does *Roberts*, and as would an approach that exempted such statements from Confrontation Clause scrutiny altogether. Where testimonial evidence is at issue, however, the Sixth Amendment demands . . . unavailability and a prior opportunity for cross-examination.").

to the tape, *Roberts* did not provide a viable ground for exclusion under the Confrontation Clause.

110. Based on defense counsel Steve Miller's affidavit, the Court finds that Miller does not remember why he did not make a Confrontation[-]Clause objection at trial except that he probably did not believe that it was a viable objection because the Supreme Court had not issued [*Crawford*]. [SHCR-02 262-63 (Miller affidavit).]

111. The Court finds that although counsel did not make a Confrontation[-]Clause objection, he raised five other objections to the evidence, including a hearsay objection. [35 RR 22-24, 26.]

112. The Court finds that defense counsel's decision to forgo a Confrontation Clause objection was not unreasonable under the law and circumstances at the time of trial.

113. The Court concludes that Ochoa fails to prove defense counsel provided deficient representation in failing to assert a Confrontation Clause objection to the tape.

SHCR-02 370-71.

Ochoa thus fails to establish that his attorney was deficient for failing to object. Absent a showing that his counsel failed to raise a meritorious objection and that the outcome would have been different, Ochoa fails to demonstrate deficient performance or actual prejudice. *Parr*, 472 F.3d at 256 (holding that counsel was not deficient in failing to present a meritless argument) (citation omitted); *Smith*, 907 F.2d at 585 n.6 ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim."); *Lavernia*, 845 F.2d 493, 499 ("Counsel cannot be faulted for failing to pursue meritless

motions.") (citations omitted); *Murray*, 736 F.2d at 283 ("Counsel is not required

to engage in the filing of futile motions.").

### B. Alternatively, the state court reasonably concluded that the testimony was admissible under *Crawford* and any error was harmless.

The state court also held that:

117.  [Alternatively], the Court finds that the Confrontation Clause
      is not implicated because Cecilia's statements on tape are not
      testimonial in nature.

[. . .]

118.  [Also alternatively], the Court finds that the Confrontation
      Clause is not violated because the statements in question are
      not hearsay.

SHCR-02 371, 374.

Finally, the state court noted that the outcome of the trial would not have

been different even if counsel had object on the basis of the Confrontation

Clause.  SHCR-02 376.  The state habeas court noted that the Court of Criminal

Appeals had noted that Ochoa's statements on the tape were properly admitted

(threatening to shoot Cecilia) and, therefore, any error in admitting Cecilia's

statements was harmless.[16]  *Id.*

---

[16]    Although not found by the state court, it is worth noting again that the
Fifth Circuit has held that *Crawford* is not applicable to the punishment phase of a
capital murder trial.  *See* Section VI, *supra*.

-74-

### C.   Conclusion

It follows that Ochoa fails to establish a claim for ineffective assistance of counsel in connection with his attorney's alleged failure to object on the basis of the Confrontation Clause.  He further fails to show that the state court's decision to reject this claim was contrary to or involved an unreasonable application of clearly established Supreme Court precedent.  Accordingly, Ochoa is not entitled to relief on this issue.

### VII.   Ochoa's Claim that the Trial Court's Alleged Exclusion of Ochoa's Rebuttal Evidence Denied Him the Right to Present a Fair Defense Is Unexhausted and Procedurally Defaulted.   But even if it Were Not Unexhausted and Procedurally Defaulted, the Court of Criminal Appeals Would Have Barred it for Lack of a Contemporaneous Objection.

In his seventh claim for relief, Ochoa argues that the trial court's exclusion of certain rebuttal evidence denied Ochoa the right to present a fair defense contrary to the Sixth and Fourteenth Amendmentss.  Pet. at 114-17, ECF No. 8.  Specifically, he contends that the trial court should not have limited the testimony of Victor Faz (Faz) and Bessie McClendon (McClendon).  *Id.* at 115.  Ochoa claims that McClendon would have testified that Cecilia would have stated that Cecilia was happy with Ochoa and was not afraid of him.  *Id.*  McClendon would have further testified that Cecilia had concealed Jonathan's paternity at the behest of her mother.  *Id.*  He also claims that Faz would have testified that Ochoa had never been violent with Cecilia.  *Id.*

However, habeas relief on this claim is precluded since it is unexhausted and procedurally defaulted. Alternatively, relief should be denied because the state court would have denied the claim because counsel failed to contemporaneously object.

## A.    This claim is unexhausted and procedurally defaulted.

Ochoa did not present this claim in either of his state habeas applications or in his brief on direct appeal. *See* SHCR-01; SHCR-02; Appellant's Brief. Thus, this claim is unexhausted and procedurally defaulted.[17] *See* 28 U.S.C. § 2254(b) (precluding federal habeas corpus relief when applicant has not exhausted state court remedies); *Nobles*, 127 F.3d at 422 (determining that defaulted claims had yet to be presented to the state courts; concluding that the standard for avoiding a state citation for abuse of the writ could not be satisfied; and holding the claims were unexhausted and procedurally defaulted).

---

[17]    Ochoa does assert ineffective assistance of counsel as a separate claim. Pet. at 116-17, ECF No. 8. However, Ochoa does not assert that his procedural default should be excused because of ineffective assistance of counsel. And even if that were not the case, counsel did not act ineffectively with respect to this testimony. *See* Section VIII(B), *infra*. Consequently, Ochoa cannot skirt the procedural bar on this basis.

**B.     Even if Ochoa's claim were not procedurally defaulted, the state court would have found it barred for lack of a contemporaneous objection.**

Even if Ochoa's claim were not procedurally defaulted, the state court would have found it barred for lack of a contemporaneous objection.  In Texas, trial counsel may preserve an error for appeal by making a contemporaneous objection, filing a bill of exception, or moving for a new trial.  *Sharp v. Johnson*, 107 F.3d 282, 288 (5th Cir. 1997) (citation omitted).  In the instant case, counsel asked the trial court for leeway in presenting the witnesses, but did not object, file a bill of exception, or move for a new trial.  Consequently, the Court of Criminal Appeals would have found this claim barred had it been raised on direct appeal.

**VIII. Ochoa's Claim that Trial Counsel Was Ineffective for Not Objecting to the Trial Court's Ruling Excluding Ochoa's Rebuttal Evidence Is Unexhausted and Procedurally Defaulted.  Alternatively, it Is Without Merit.**

In his eighth claim for relief (briefed concurrently with the last claim), Ochoa argues that he received ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments when his trial counsel failed to make proper and timely objections to the trial court's ruling excluding certain rebuttal evidence.  Pet. at 114-17, ECF No. 8.  However, relief on this claim should be denied because it is unexhausted and procedurally defaulted.  Alternatively, this claim is meritless and relief should be denied on that basis.

### A.    This claim is unexhausted and procedurally defaulted.

Ochoa did not present this claim in either of his state habeas applications or in his brief on direct appeal.  *See* SHCR-01; SHCR-02; Appellant's Brief. Thus, this claim is unexhausted and procedurally defaulted.  *See* 28 U.S.C. § 2254(b) (precluding federal habeas corpus relief when applicant has not exhausted state court remedies); *Nobles*, 127 F.3d at 422 (determining that defaulted claims had yet to be presented to the state courts; concluding that the standard for avoiding a state citation for abuse of the writ could not be satisfied; and holding the claims were unexhausted and procedurally defaulted).

### B.    Alternatively, this claim is without merit.

Ochoa correctly notes that the Supreme Court held in *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973), that when a state rule of evidence conflicts with the right to present witnesses, the rule may not be mechanically applied to defeat the ends of justice, but it must meet the fundamental standards of due process.  In the context of a capital-sentencing hearing, the right to present a defense extends to evidence relevant to the defendant's character or record. *Lockett v. Ohio*, 438 U.S. 586, 604 (1978).  While acknowledging the general right of a defendant to present evidence, however, *Chambers* noted that "[i]n the exercise of this right, the accused, as is required of the State, must comply with

established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." 410 U.S. at 302.

In the instant case, the trial judge stated simply that the defense would not be allowed to present "blanket hearsay" but that unobjected-to hearsay or hearsay that fell into an exception would be admissible. This is hardly a "mechanical" application of state law. Furthermore, Ochoa has not presented any affidavits from the two witnesses that he claims were not allowed to testify to the full extent of their knowledge. Pet. at 114-17, ECF No. 8. Consequently, what their testimony would have been is completely speculative. *See* Section I(B)(2)(c), *supra*.

Thus, Ochoa fails to establish that his attorney was deficient for failing to object. Absent a showing that his counsel failed to raise a meritorious objection and that the outcome would have been different, Ochoa fails to demonstrate deficient performance or actual prejudice. *Parr*, 472 F.3d at 256; *Smith*, 907 F.2d at 585 n.6; *Lavernia*, 845 F.2d at 499; *Murray*, 736 F.2d at 283. Accordingly, Ochoa is not entitled to relief on this issue.

## IX.   Ochoa's Claim that Dr. Richard Coons's Testimony Was Unreliable Is Unexhausted and Procedurally Defaulted. Alternatively, the Admission of Dr. Coons's Testimony Did Not Deprive Ochoa of His Right to Due Process.

In his ninth claim for relief, Ochoa argues that the State's presentation of allegedly unreliable psychiatric rebuttal testimony by Dr. Richard Coons

deprived him of his right to due process of law under the Fifth, Eighth, and Fourteenth Amendments.   Pet. at 117-133, ECF No. 8.   But Ochoa never presented this issue to the state courts.   As a consequence, this claim is unexhausted and procedurally defaulted and cannot form the basis for federal habeas relief.  But even were this claim not procedurally defaulted, it is squarely foreclosed by controlling precedent and should be denied on the merits.

### A.   This claim is unexhausted and procedurally defaulted.

Ochoa did not present this claim in either of his state habeas applications or in his brief on direct appeal.   *See* SHCR-01; SHCR-02; Appellant's Brief. Thus, this claim is unexhausted and procedurally defaulted.  *See* 28 U.S.C. § 2254(b) (precluding federal habeas corpus relief when applicant has not exhausted state court remedies); *Nobles*, 127 F.3d at 422 (determining that defaulted claims had yet to be presented to the state courts; concluding that the standard for avoiding a state citation for abuse of the writ could not be satisfied; and holding the claims were unexhausted and procedurally defaulted).

Ochoa asserts that his procedural default should be excused because of ineffective assistance of counsel and correctly raises ineffective assistance of counsel as a separate claim. Pet. at 134-40, ECF No. 8.  But counsel did not act

ineffectively with respect to Dr. Coons's testimony.[18]  *See* Section VIII(B), *infra*. Consequently, Ochoa cannot demonstrate the cause and prejudice necessary to skirt the procedural bar on this basis.

**B.    Alternatively, Dr. Coons's testimony is entirely permissible under controlling precedent.**

Under Texas law, the jury is required to decide, in a capital case, "whether there is a probability that the Defendant would commit criminal acts of violence that would constitute a continuing threat to society." Tex. Code Crim. Proc. art. 37.071 § 2(b)(1).  In rebuttal to the testimony of Dr. Nace and Ochoa, the State introduced the testimony of Dr. Coons.  Among other things, Dr. Coons opined that Ochoa presented a future threat to society.

Ochoa now claims that the trial court improperly admitted Dr. Coons's testimony regarding future dangerousness.  But it is clear that this testimony was entirely permissible under both Fifth Circuit and Supreme Court precedent. As noted by the majority in *Flores v. Johnson*:

> Our colleague expresses concern over the admissibility of expert testimony regarding the issue of future dangerousness. Flores has been ably represented on this appeal and counsel have not claimed that the judgment should be reversed because this testimony was admitted in the state trial.  And properly so. It is clear that any error was not of a constitutional magnitude under the settled law of the Supreme Court and

---

[18]      As shown in Section VIII(A), *infra*, his ineffective-assistance-of-counsel claim is unexhausted and procedurally barred as well.  Thus, it cannot support a claim of cause and prejudice. *Edwards*, 529 U.S. at 453.

> this court. It is the inescapable fact that a lay jury is asked to judge future dangerousness. We cannot then reject as constitutionally infirm the admission into evidence of the same judgment made by a trained psychiatrist.

210 F.3d 456, 458-70 (5th Cir. 2000).

Indeed, in *Barefoot v. Estelle*, 463 U.S. 880 (1983), the petitioner argued that evidence of future dangerousness was unreliable. The Supreme Court decided the issue adversely to the petitioner. *Id.* at 896-906. Moreover, the Court specifically refused to convert the American Psychiatric Association's (APA) condemnation of psychiatric predictions of future dangerousness into a constitutional rule barring an entire category of expert testimony. *Barefoot,* 463 U.S. at 899; *see also Estelle v. Smith*, 451 U.S. 454, 473 (1981) (stating that it was in "no sense disapproving the use of psychiatric testimony bearing on future dangerousness").

Because no clear federal constitutional law exists which forbids the use of expert psychiatric testimony—even testimony contrary to APA ethical guidelines—to determine future dangerousness, Ochoa is barred from receiving relief on this claim under *Teague*. 489 U.S. at 310.

### C. Because this claim is procedurally defaulted—as well as completely meritless—an evidentiary hearing is unnecessary.

Ochoa also asks the Court to hold an evidentiary hearing on his claim regarding Dr. Coons. Pet. at 129-133, ECF No. 8. But since an evidentiary

hearing is barred under 28 U.S.C. § 2254(e)(2), the Court should deny Ochoa's motion.  Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  28 U.S.C. § 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.  28 U.S.C. § 2254(e)(2)(B).  The Supreme Court has held that under § 2254(e)(2), a habeas petitioner has not failed to develop the factual basis of a claim in state court unless there has been a lack of diligence, or some greater fault, on the part of the petitioner or petitioner's counsel.  *(Michael)Williams*, 529 U.S. at 432.  The Court further stated that such diligence depends upon whether the petitioner made a reasonable attempt to investigate and pursue claims in state court.  *Id.* at 435.  Diligence will therefore require that a petitioner, at a minimum, seek an evidentiary hearing in state court and that the petitioner be diligent in developing the record and presenting, if possible, all claims of constitutional error.  *Id.* at 437.

Nevertheless, even if a petitioner has satisfied the requirements of § 2254(e)(2), he is not necessarily entitled to an evidentiary hearing. "[O]vercoming the narrow restrictions of § 2254(e)(2) does not guarantee a petitioner an evidentiary hearing; it merely opens the door for one[.]" *Murphy v. Johnson*, 205 F.3d 809, 815 (5th Cir. 2000). Federal law leaves "[t]he decision whether to conduct an evidentiary hearing . . . to the sound discretion of the district court[.]" *Barrientes v. Johnson*, 221 F.3d 741, 770 (5th Cir. 2000). "[W]here a district court has before it sufficient facts to make an informed decision regarding the merits of a claim, a district court does not abuse its discretion in refusing to grant an evidentiary hearing (even where no factual findings are explicitly made by any state court)." *Murphy*, 205 F.3d at 816; *see also McDonald v. Johnson*, 139 F.3d 1056 (5th Cir. 1998) ("The district court had sufficient facts before it to make an informed decision on the merits . . . and, accordingly, did not abuse its discretion in refusing to hold an evidentiary hearing."); *Young v. Herring*, 938 F.2d 543, 560 n. 12 (5th Cir. 1991) ("[A] petitioner need not receive an evidentiary hearing if it would not develop material facts relevant to the constitutionality of his conviction.").

Furthermore, a petitioner is not entitled to an evidentiary hearing "if his claims are merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible." *Young*, 938 F.2d at 559. "If

it appears that an evidentiary hearing is not required, the judge shall make such disposition of the petition as justice shall require." Rule 8 of the Rules Governing Section 2254 Cases. In deciding whether to grant a hearing, under Rule 8(a) of the Rules Governing Habeas Corpus Cases Under Section 2254, "the judge must review the answer [and] any transcripts and records of state-court proceedings to determine whether an evidentiary hearing is warranted." *Hall v. Quarterman*, 534 F.3d 365, 368 (5th Cir. 2008) (quoting *Schriro v. Landrigan*, 550 U.S .465, 473 (2007)).

Therefore, before granting petitioner's request for a hearing, the Court must consider whether further factual development could "enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Landrigan*, 550 U.S. at 474. Furthermore, "[b]ecause the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate." *Id.* "[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary  hearing." *Id.*

In the case-at-bar, Ochoa's claims are indisputably procedurally barred, prohibiting relief even if he were to uncover more favorable facts. *See* Section IX(A), *supra.* Moreover, he has displayed an abject lack of diligence by failing

to raise this claim during state review, given that the claim was ripe at trial. Finally, as shown above, even if Ochoa were to uncover additional facts they would not assist him, as controlling precedent dictates that Dr. Coons's testimony was entirely proper. *See* Section IX(B), *supra*. Consequently, there is no basis for further fact-finding, and this Court should deny Ochoa's request for an evidentiary hearing.

X.   **Ochoa's Claim that His Trial and Appellate Counsel Were Ineffective for Not Precluding/appealing Admission of Dr. Coons's Testimony Is Unexhausted and Procedurally Defaulted.   But Even If This Claim Were Not Barred, Ochoa Did Not Receive Ineffective Assistance of Counsel.**

In his tenth claim for relief, Ochoa argues that he received ineffective assistance of counsel under the Sixth and Fourteenth Amendments because: (1) his trial attorneys failed to appropriately object to the purportedly erroneous admission of Dr. Coons's testimony; and (2) his appellate attorney failed to present the issue on direct appeal.   Pet. at 134-40, ECF No. 8.   But this claim—as with the underlying issue—is procedurally defaulted.   Also, even if Ochoa's claims were not procedurally defaulted, they are wholly without merit. As demonstrated below, trial counsel did in fact object.   And appellate counsel had no basis to raise the issue on direct appeal since it is barred by controlling precedent.   Therefore, there is no ineffective-assistance-of-counsel, and relief on this claim should be denied.

## A.     This claim is unexhausted and procedurally defaulted.

Ochoa did not present this claim in either of his state habeas applications or in his brief on direct appeal.  *See* SHCR-01; SHCR-02; Appellant's Brief. Thus, this claim is unexhausted and procedurally defaulted.  *See* 28 U.S.C. § 2254(b) (precluding federal habeas corpus relief when applicant has not exhausted state court remedies); *Nobles*, 127 F.3d at 422 (determining that defaulted claims had yet to be presented to the state courts; concluding that the standard for avoiding a state citation for abuse of the writ could not be satisfied; and holding the claims were unexhausted and procedurally defaulted).

## B.     Alternatively, this claim fails on the merits.

Ochoa further contends that he received ineffective assistance of counsel because his trial attorneys did not challenge the lack of scientific reliability of Dr. Coons's opinion, and his appellate attorney did not appeal on the same basis. But because Dr. Coons's opinion was clearly admissible under existing Supreme Court precedent, this claim should be denied.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme Court established a two-pronged test to determine whether expert testimony is sufficiently relevant and reliable to merit admission under Rule 702 of the Federal Rules of Evidence.  A trial court must determine "whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the

trier of fact to understand or determine a fact in issue." *Id.* at 592.  In *Kelly v. State*, 824 S.W.2d 568, 573 (Tex. Crim. App. 1992), Texas' counterpart to *Daubert*, the Court of Criminal Appeals outlined factors to consider in determining reliability:

> A trial court can look to, but is not bound by, appropriate methods of validation to determine reliability.  This can include, but is not limited to: (1) the extent to which the underlying theory and technique are accepted as valid by the relevant community, (2) the qualifications of the expert testifying, (3) the existence of literature supporting or rejecting the underlying theory and technique, (4) the potential rate of error of the technique, (5) the availability of other experts to test and evaluate the technique, (6) the clarity with which the underlying theory and technique can be explained to the court, and (7) the experience and skill of the person(s) who applied the technique on the occasion in question.

*See Kelly*, 824 S.W.2d at 573.

Under Rule 702, the proponent of scientific evidence must show, by clear and convincing proof, that the evidence proffered is sufficiently relevant and reliable to assist the trier of fact in determining a fact in issue.  Tex. R. Evid. 702; *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000); *Kelly*, 824 S.W.2d at 573.  "Once a particular type of scientific evidence is well established as reliable, a court may take judicial notice of that fact, thereby relieving the proponent of the burden of producing evidence on that question." *Moore v. State*, 78 S.W.3d 387, 390 (Tex. App.—Tyler 2002) (citing *Weatherred*, 15 S.W.3d at 542 n.4).

To begin, it is worth noting that trial counsel did actually conduct a long and probing cross-examination of Dr. Coons both in and outside the presence of the jury. 38 RR 196-215, 243-62, 263-64. During the cross-examinations, trial counsel repeatedly attacked the Dr. Coons's credibility and the reliability of his scientific opinions. *Id.* Thus, any claim based on counsel's performance in this respect appears to be unfounded.

But even if this were not adequate, to demonstrate that trial counsel was deficient, Ochoa must demonstrate that the trial court would have sustained any objection that the witness' testimony was unreliable or irrelevant. *Clark*, 19 F.3d at 966 ("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite."); *Morlett*, 851 F.2d at 1525; *Koch*, 907 F.2d at 526 ("This Court has made clear that counsel is not required to make futile motions or objections."); *McCoy*, 874 F.2d at 963. Any finding that the defense was deficient necessarily implies that the trial court would have disallowed the expert testimony based on *Daubert* admissibility criteria.

Ochoa cannot make this showing. Precedent from the Supreme Court, Fifth Circuit, and the Court of Criminal Appeals all support the conclusion that any objection to Dr. Coons's testimony would have been frivolous. *See, e.g., Johnson v. Cockrell*, 306 F.3d 249, 255 (5th Cir. 2002). In particular, Ochoa's argument about the inadmissibility of Dr. Coons's testimony is foreclosed by

*Barefoot*, where the Supreme Court held that expert testimony regarding future dangerousness is admissible.[19]  463 U.S. at 897-99.  Moreover, the Fifth Circuit has rejected the very argument that Ochoa is making here as violating of *Teague*'s non-retroactivity principle.  *Johnson*, 306 F.3d 249, 255 (citing *Tigner v. Cockrell*, 264 F.3d 521, 526-27 (5th Cir. 2001) ("We decline Tigner's invitation to undercut *Barefoot*, because to do so on collateral review would constitute a new rule in violation of *Teague*'s non-retroactivity principle").  Likewise, in *United States v. Fields*, 483 F.3d 313, 341-46 (2007)—the Fifth Circuit, noting that *Daubert* does not apply to sentencing (including capital sentencing), held that a "jury could benefit from the opinion of a psychological expert on [future dangerousness]."  *Id.* at 345.

Because any objection to the admissibility of Dr. Coons's testimony would have been overruled based on existing precedent, such an objection would have been futile.  An attorney is not ineffective for failing to file a futile motion or raise futile objections.  *Clark*, 19 F.3d at 966.  Likewise, given the precedent cited here and in Section X, *infra,* appellate counsel was clearly not deficient for choosing not to raise this issue on direct appeal.  *Smith,* 528 U.S. at

---

[19]    The Texas courts have also found psychiatric predictions of future dangerousness to be admissible.  *Nenno v. State*, 970 S.W.2d 549, 560-62 (Tex. Crim. App. 1998) (holding "future dangerousness" expert testimony to be admissible), *overruled on other grounds by State v. Terrazas*, 4 S.W.3d 720 (Tex. Crim. App. 1999).

285; *Williamson*, 183 F.3d at 462-63.  Accordingly, Ochoa is not entitled to relief on his ineffective-assistance-of-counsel claim.

## XI.   Ochoa's Shackling Claim Is Unexhausted and Procedurally Defaulted. In the Alternative, His Claim Is Without Merit.

In his eleventh claim for relief, Ochoa argues that he was denied due process under the Fourteenth Amendment to the United States Constitution because he was allegedly shackled during the punishment phase.  Pet. at 141-44, ECF No. 8.  But the Court should deny this claim because it is unexhausted and procedurally defaulted.  Alternatively, the Court should deny this claim because it is meritless.

### A.   This claim is unexhausted and procedurally defaulted.

Ochoa did not present this claim in either of his state habeas applications or in his brief on direct appeal.  *See* SHCR-01; SHCR-02; Appellant's Brief. Thus, this claim is unexhausted and procedurally defaulted.[20]  *See* 28 U.S.C. § 2254(b) (precluding federal habeas corpus relief when applicant has not exhausted state court remedies); *Nobles*, 127 F.3d at 422 (determining that defaulted claims had yet to be presented to the state courts; concluding that the standard for avoiding a state citation for abuse of the writ could not be satisfied;

---

[20]    Ochoa argues that counsel was ineffective for failing to object to his alleged shackling.  However, no where does Ochoa assert that the procedural default should be circumvented on this basis.  *Edwards*, 529 U.S. at 453.

and holding the claims were unexhausted and procedurally defaulted).

### B.   Alternatively, this claim fails on the merits.

In *Deck v. Missouri*, 544 U.S. 622 (2005), the Supreme Court held that "the Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial." *Id.* at 629. The Court explained that visible shackling of a criminal defendant during trial "undermines the presumption of innocence and the related fairness of the fact[-]finding process," "can interfere with a defendant's ability to participate in his own defense, say by freely choosing whether to take the witness stand on his own behalf," and "'affront[s]' the 'dignity and decorum of judicial proceedings that the judge is seeking to uphold.'" *Id.* at 630-31 (alteration in original) (quoting *Illinois v. Allen*, 397 U.S. 337, 344 (1970)). Even before *Deck* was decided by the Supreme Court, the Fifth Circuit held that "[s]hackling is an inherently prejudicial practice, permitted only when justified by an essential state interest specific to each trial." *United States v. Joseph*, 333 F.3d 587, 590-91 (5th Cir. 2003); *see also United States v. Hope*, 102 F.3d 114, 117 (5th Cir. 1996).

A trial court may, however, require a defendant to wear restraints if the trial court deems it necessary to protect the court and the courtroom. *Deck*, 544

U.S. at 632. The trial court must take into account the circumstances of the particular case. *Id.* The Supreme Court recognizes that "[t]here will be cases . . . where these perils of shackling are unavoidable." *Id.* When determining whether a violation occurred, the Court considers any "steps to mitigate any prejudicial influence on the jury." *Chavez v. Cockrell*, 310 F.3d 805, 809 (5th Cir. 2002).

On collateral review of a state conviction, a federal court will grant habeas relief only when the use of restraints "had a substantial and injurious effect or influence in determining the jury's verdict." *Hatten v. Quarterman*, 570 F.3d 595, 604 (5th Cir. 2009) (citations and internal quotation marks omitted). Overwhelming evidence of a defendant's guilt may be sufficient to render harmless any error in shackling a defendant. *Id.* Moreover, a jury's knowledge that a defendant already is a convicted prisoner may be a factor to consider when addressing whether a shackling error is harmless. *See Wilkerson v. Whitley*, 16 F.3d 64, 68 (5th Cir.), reinstated in relevant part, 28 F.3d 498, 509 (5th Cir. 1994) (en banc).

In the case-at-bar, it is worth noting that Ochoa has provided no record cites indicating that Ochoa was shackled. Instead, he only provides a cite to Francis's affidavit, where she mentions that Ochoa was in leg chains when he walked to the witness stand for his punishment-phase testimony. Pet. at 141-44,

ECF No. 8; Francis Affidavit, ECF No. 8-1. But Francis's affidavit provides no further context. Indeed, it is entirely possible there was a legitimate security concern or steps were taken to mitigate the prejudicial effect of the shackling (assuming that the shackling actually occurred). It is Ochoa's burden to show that he is entitled to relief[21], and the Fifth Circuit has consistently held that a petitioner's conclusory, self-serving allegation will not form the basis for that relief. *Koch*, 907 F.2d at 530; *Ross*, 694 F.2d at 1012 .

Assuming *arguendo* that Ochoa was actually shackled, there is no allegation that his attorney objected, thus precluding relief. Moreover, it is undisputed that Ochoa was convicted for killing two members of his family. He was also further shown to have killed three additional members of his family and shot another. One of his victims was his eighteen-months-old daughter, another was his seven-year-old daughter. Any error by the state trial court in having Ochoa shackled during punishment was harmless. In light of the strength of the evidence against Ochoa and the jury's knowledge that Ochoa was already a prisoner, any viewing of Ochoa's leg restraints by the jury would not

---

[21]     Ochoa claims that "[i]n the absence of even a shred of evidence that any of these rationales [for shackling] applied to [Ochoa], the prejudice inherent in the practice cannot be justified." Pet. at 146, ECF No. 8. As noted above, Ochoa has the burden of showing that he is entitled to relief. Furthermore, it worth pointing out that the reason there is no evidence of these rationales is because Ochoa procedurally defaulted his claim by failing to raise it during state review.

-94-

have substantially influenced the verdict. *See Hatten*, 570 F.3d at 604.

Accordingly, Ochoa is not entitled to federal habeas corpus relief on this claim.

**XII. Ochoa's Claim that His Attorney Was Ineffective for Failing to Object to His Alleged Shackling Is Unexhausted and Procedurally Defaulted. Counsel Was Not Ineffective When He Did Not Object to the Trial Court's Decision to Place Ochoa in Shackles.**

In his twelfth claim for relief, Ochoa argues that he received ineffective

assistance of counsel in violation of the Sixth and Fourteenth Amendments when

his trial counsel failed to object to the trial court's alleged decision to place

Ochoa in shackles.  Pet. at 145-46, ECF No. 8.  But this claim is unexhausted

and procedurally defaulted by his failure to raise it during state review.

Furthermore, this claim is meritless.  Consequently, any relief should be denied.

**A.      This claim is unexhausted and procedurally defaulted.**

Ochoa did not present this claim in either of his state habeas applications

or in his brief on direct appeal.  *See* SHCR-01; SHCR-02; Appellant's Brief.

Thus, this claim is unexhausted and procedurally defaulted.  *See* 28 U.S.C. §

2254(b) (precluding federal habeas corpus relief when applicant has not

exhausted state court remedies); *Nobles*, 127 F.3d at 422 (determining that

defaulted claims had yet to be presented to the state courts; concluding that the

standard for avoiding a state citation for abuse of the writ could not be satisfied;

and holding the claims were unexhausted and procedurally defaulted).

## B.    Alternatively, this claim fails on the merits.

Under *Strickland*, Ochoa "must prove that his counsel made errors so serious that they deprived him of his Sixth Amendment rights and that the deficient performance prejudiced his defense." *Smith v. Puckett*, 907 F.2d 581, 584 (5th Cir. 1990).   Thus, the burden is on Ochoa to allege specific facts which show his trial counsel decision not to object—assuming that Ochoa was actually shackled and that counsel actually failed to object—fell outside the wide range of presumptively reasonable professional performance.   The petitioner has the burden of proof in a habeas proceeding attacking the effectiveness of counsel. *See Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997).   Ochoa's proof that he was shackled is limited to Francis's affidavit.   Francis Affidavit, ECF No. 8-1. Even assuming that this affidavit is correct, Francis does not testify that counsel did not object to the shackling or explain that the shackling was unnecessary. *Id*.   Ochoa's conclusory complaint simply does not satisfy the deficient performance prong of *Strickland*.

Nor can Ochoa demonstrate prejudice.   In order to establish that he has sustained prejudice, Ochoa "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland,* 466 U.S. at 694.   A reasonable probability is a probability sufficient to undermine the confidence in the outcome." *Id*.   As noted

previously, Ochoa was convicted for killing two members of his family.  He was also further shown to have killed three additional members of his family and shot another.  One of his victims was eighteen-months-old, and the other was seven.  Consequently, even if counsel had objected and Ochoa had not been shackled, there is no reasonable probability that the outcome of the proceeding would have been different.  Thus, Ochoa could not have been prejudiced by counsel's alleged failure to object.  Accordingly, even if this claim were not procedurally defaulted, Ochoa would still not be entitled to relief.

## XIII.  The State Court Reasonably Held that the Evidence Is Legally Sufficient to Support the Jury's Affirmative Answer to the First Special-issue Asking Whether Ochoa Would Constitute a Continuing Threat to Society.

In his thirteenth claim for relief, Ochoa argues that the evidence is legally insufficient to support the jury's answer to the first special-issue finding that Ochoa would constitute a continuing threat to society.  Pet. at 146, ECF No. 8.  But it is clear that the Court of Criminal Appeals acted reasonably in denying this claim on direct appeal.  *Ochoa v. State*, slip op. at 1-13.  Consequently, relief should be denied.

When a petitioner asserts that the evidence presented to the state court was insufficient to find future dangerousness, the limited question before a federal habeas court is "whether the [Court of Criminal Appeals'] decision constitutes an 'unreasonable application' of [*Jackson v. Virginia*, 443 U.S. 307

(1979)]." *Martinez v. Johnson*, 255 F.3d 229, 241 n. 21 (5th Cir. 2001); *Callins v. Collins*, 998 F.2d 269, 276 (5th Cir. 1993).  Under this standard, the court again looks at the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have concluded beyond a reasonable doubt that petitioner would probably commit criminal acts of violence that would constitute a continuing threat to society. *Jackson*,  443 U.S. at 307; *Allridge v. State*, 850 S.W.2d 471 (Tex. Crim. App. 1991) .

In the instant case, the state habeas court framed its analysis under that constitutional standard.   *Ochoa*, No. AP-74,663, slip op. at 2, 12-13.   After evaluating the evidence in the light most favorable to the verdict, the court concluded that a rational trier of fact could find the essential elements of future dangerousness beyond a reasonable doubt.  *Id*.  As noted by the state court:

> We decide that a rational jury could find beyond a reasonable doubt
> that there is a probability that "a man capable of slaughtering five
> members of his immediate family" would commit criminal acts of
> violence that would constitute a continuing threat to society. *See
> Sonnier v. State*, 913 S.W.2d 511, 517-18 (Tex. [Crim.] App. 1995)
> (jury could rationally conclude from the results of defendant's
> isolated incident of rage in murdering a mother and her
> two-year-old son that "his rage is of such an uncontrollable and
> extreme nature that he is a continuing danger to society"); *Dinkins
> v. State*, 894 S.W.2d 330, 358-60 (Tex.[Crim.] App.) [](evidence that
> defendant inflicted multiple gunshot wounds at close range to one
> female murder victim and that he killed the other female murder
> victim after hunting her down sufficient to support affirmative
> answer to future dangerousness special issue).  In addition, the
> evidence supports a finding that [Ochoa]'s murder of his family was
> not an aberration or an isolated incident and that it was the

culmination of a pattern of abuse and threats directed by [Ochoa] against his wife.  And, [Ochoa]'s own expert testified that he "would expect bad things could happen to" [Ochoa] if [Ochoa] "got back to a repetitive pattern of cocaine use."

*Id.* at 12-13.

In conducting a sufficiency review, a federal habeas corpus court may not substitute its view of the evidence for that of the fact finder, but must consider all of the evidence in the light most favorable to the prosecution.  *See Weeks v. Scott*, 55 F.3d 1059, 1061 (5th Cir. 1995).  "Where a state appellate court has conducted a thoughtful review of the evidence, moreover, its determination is entitled to great deference." *Callins*, 998 F.2d at 276.  With due deference to "the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weight the evidence, and to draw reasonable inferences from basic facts to ultimate facts," the evidence presented at Ochoa's trial was plainly enough to support a finding of future dangerousness.  *Jackson*, 443 U.S. at 319.  Because Ochoa fails to show that his conviction was supported by insufficient evidence in violation of the *Jackson* standard, he does not demonstrate that the state court's decision to reject this claim was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent.  Accordingly, relief is barred under AEDPA.

**XIV. Ochoa's Destruction-of-Evidence Claim Is Procedurally Barred Because He Failed to Raise it on Direct Appeal. Alternatively, the State Court Reasonably Held Ochoa Was Not Deprived of His Right to Due Process and to a Fair Trial When the State Destroyed His Crack Pipe, Wool, and Plastic Baggie.**

In his fourteenth claim for relief, Ochoa argues that he was deprived of right to due process and to a fair trial when the State destroyed material and exculpatory evidence. Pet. at 146-53, ECF No. 8. But this claim is procedurally barred because Ochoa failed to raise it on direct appeal. Alternatively, it is without merit because Ochoa cannot demonstrate that the evidence was destroyed in bad faith. Consequently, any relief should be denied.

**A.    Relevant Facts**

The state court noted the following facts in its findings and conclusions:

5.    The Court finds that the issue of the drug paraphernalia was raised and litigated several times during the trial of this case:

6.    It was the subject of a Motion to Preserve Evidence filed by the defense on February 17, 2003. [31 RR 7; CR 62, 66].

7.    It was discussed on April 7, 2003, during a pretrial hearing on the defense's Motion for Scientific Analysis of the crack pipe and baggie, which this Court dismissed as moot because the evidence had been destroyed on February 16, 2003. [31 RR 5-6; CR 88.

8.    The Court finds from the testimony presented at the examining trial that Detective Dan Lusty knew Ochoa claimed to have smoked crack cocaine immediately before

shooting his family. (RR-Examining Trial[22]: 17). The detective testified on the record that the paraphernalia had been placed in the property room and that it had *not* "been marked to be analyzed." (RR-Examining Trial: 17).

9.    The Court finds, based on the prosecutor's statements at the April 7, 2003[,] pretrial hearing, that DPD never sent the items for analysis because Ochoa was not charged with possession of a controlled substance or drug paraphernalia. [31 RR 7]. The Court finds that the items had been designated as "found" property. The Court further finds that the DPD destroys found property after 60 days if unclaimed. [31 RR 7].

10.    The Court finds that Officer Cox found a crack pipe, some steel wool, and a clear little baggie on Ochoa's person at the time of Ochoa's arrest on August 4, 2002. [32 RR 7]. The Court finds, based on Officer Cox's testimony, that the glass pipe and steel wool were brand new and shiny like they had not been used.

11.    The Court finds that the DPD property room will not take an item as "found" or "abandoned" property if it has drug residue on it unless it is packaged and sealed in a certain way. [32 RR 18, 20-22, 26]. The Court finds that the property room accepted the pipe, baggie, and steel wool because they looked new and did not contain visible residue. [*Id.*]

12.    The Court finds that DPD Sergeant Judy Katz brought computer records to the hearing to show the disposition of the property, as well as documents showing the standard operating procedure of the property room. [32 RR 34;

---

22    The relevant pages of the reporter's record of the examining trial are attached to Ochoa's state habeas petition. SHCR-02 61-65. This document was not included in the original transcript provided to the Attorney General by the Court of Criminal Appeals. The Director is attempting to secure a complete copy of the document from the 194th Judicial District Court and will remit a copy to the Court when it is available.

Defense's Trial Exhibits 1 and 2]. Based on her testimony, the Court finds that the property room received the items on August 5, 2002. [32 RR 26-27.] The Court finds that, while the Texas Code of Criminal Procedure requires that found or abandoned property be held for 30 days, it is DPD's practice to hold it for 60 days. [32 RR 39]; *see* [Tex. Code. Crim. Proc. Ann. Art 18.17(a) (Vernon 2005)]. The Court finds that it is DPD's practice after sixty days to bag the property and stockpile it until there is enough to incinerate. [32 RR 30.]

13.  The Court finds that this procedure was followed in this case. [32 RR 30.] The items were pulled from the shelf after 60 days and the identifying tags removed. The Court finds that the items were incinerated on February 16, 2003, approximately six months after Detective Lusty testifies (in the examining trial) that the items were stored in the property room and not slated for analysis by DPD. [32 RR 31; RR-Examining Trial: 17].

14.  The Court finds that a "hold" would have been placed on the property, telling DPD employees not to destroy it, if a subpoena had ever issued with respect to the property. The Court finds that there is no evidence that subpoena issued for this property or that anyone contacted the property room with regard to this property. [32 RR 29.]

15.  The Court finds that Officer Cox revisited this issue in his testimony before the jury. Officer Cox reiterated that he found a glass crack pipe, some steel wool, and an empty clear baggie on Ochoa during his arrest. [33 RR 109.] Cox told the jury that the crack pipe was a clear piece of glass and did not have any residue or blacking on it that you usually see after a pipe has been used. [33 RR 130.] He testified that the steel wool also appeared to be new. [33 RR 130.] He said Ochoa never mentioned anything to him about drugs or crack, Ohcoa did not appear to be intoxicated or high on crack at the time of his arrest, and Ochoa was not arrested for a drug offense. [33 RR 110, 131.]

16. The Court finds that Officer Cox received no direct instructions from the detectives in the capital murder investigation about what to do with the items and that he put them in the property room as found property. [33 RR 109-110, 115.] The Court further finds that, in a drug-related arrest, the items would have been saved as trial evidence. [33 RR 115.]

SHCR-02 350-53.

## B.   This claim is procedurally barred because Ochoa did not raise it on direct appeal.

Ochoa raised this claim on state habeas review.  But the state habeas court found that relief should be denied because Ochoa failed to raise the issue on direct review.  SHCR-02 at 353-54.   The Fifth Circuit has recognized the Court of Criminal Appeals's rule that "record based claims not raised on direct appeal will not be recognized in habeas proceedings" as "an adequate state ground capable of barring habeas review." *Dorsey v. Quarterman*, 494 F.3d 527, 532 (5th Cir. 2007) (citing *Ex parte Gardner*, 959 S.W.2d 189, 191 (Tex. Crim. App. 1996) (finding that failure to raise an issue on direct appeal bars consideration of that issue under habeas corpus proceedings)).  Under Texas law, it is a "firmly established and regularly followed" rule that when a state habeas court rejects a claim as procedurally barred, that claim is also barred from federal habeas review.  *Dorsey*, 494 F.3d at 533; *Brewer v. Quarterman*, 466 F.3d 344, 347 (5th Cir. 2006) ("In this case, the state habeas court explicitly found both that 'because the Applicant should have, but failed, to raise this issue

on direct appeal, he is procedurally barred from raising the issue by way of habeas corpus"). Ochoa attempts to excuse his procedural default by alleging ineffective assistance of counsel. In particular, he maintains that his failure to raise this issue on appeal should be excused because his attorney was constitutionally ineffective on direct appeal for not raising the claim. However, exhaustion requires that a petitioner first present the substance of his federal claims to the highest state court either through direct appeal or by state collateral review procedures. *Morris v. Dretke*, 413 F.3d 484, 491 (5th Cir.2 005). Ineffective assistance of counsel on direct appeal may provide cause to avoid a procedural bar, but "the exhaustion doctrine . . . generally requires that a claim for ineffective assistance of counsel be presented to the state courts as an independent claim before it can be used to establish cause for procedural default." *Murray*, 477 U.S. at 488-89. In other words, the claim of ineffective assistance of counsel on direct appeal is an independent constitutional violation, which must itself be properly exhausted using state collateral review procedures. *See Edwards*, 529 U.S. at 451-53. Thus, where a habeas petitioner did not exhaust his ineffective appellate counsel argument in state court, such a claim cannot furnish the requisite cause or prejudice for purposes of overcoming the procedural default of his underlying claims. *See Hatten*, 570 F.3d at 605. Stated another way, allegations that are proffered as "cause" for a procedural default

are themselves subject to the exhaustion requirement; they must be presented to the state court before they may be raised on federal habeas review. *See Edwards*, 529 U.S. at 453 ("[A]n ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted."). Ochoa has failed to establish cause and prejudice to excuse his procedural default of his ineffective assistance claim and, hence, he is barred from using it as a basis for cause to excuse his procedural default of the underlying claim. *Id.* at 451-53. Consequently, Ochoa's claim must be denied as procedurally barred for his failure to raise it on direct appeal.

### C.    Alternatively, this claim fails on the merits.

According to clearly established precedent, the State must disclose all exculpatory evidence to the accused. *Brady v. Maryland*, 373 U.S. 83, 83 (1963). Even in the absence of a specific request, the prosecution has a constitutional duty to turn over exculpatory evidence that would raise a reasonable doubt about the defendant's guilt. *California v. Trombetta*, 467 U.S. 479 (1984). Where potentially exculpatory evidence is destroyed in bad faith there is a due-process violation. *Trombetta*, 467 U.S. at 488; *Arizona v. Youngblood*, 488 U.S. 51 (1988).

The state court analyzed this claim and found that Ochoa could not prevail because he did not show that the Dallas Police Department acted in bad faith by

destroying the drug paraphernalia. SHCR-02 355-60. The record shows that the evidence was logged as found property because Ochoa was not charged with drug possession. *Id.* It was retained there until it was destroyed four months after the administratively-proscribed sixty day waiting period. *Id.* The state court noted that the pipe was new and unused; there did not appear to be any drug residue on the pipe; and, thus, the police were not on alert that there was the possibility that the defense would want the pipe for testing. *Id.* The state court found that there was no discovery request pending at the time that evidence was destroyed. *Id.*

Furthermore, the state court noted that, even if there was bad faith, no harm resulted:

56.     The Court finds that Ochoa's defensive theory was that Ochoa committed this offense in a cocaine-induced delirium and had brain damage in his frontal lobes from cocaine abuse which affected his impulse control and made him more susceptible to a state of delirium. [36 RR 40-103; 39 RR 10-34].

57.     The Court finds that the jury knew, from Ochoa's confession and testimony, that he had a long-standing addiction to crack, that he financed his crack habit with an illegal small-loan scheme, and that the offense was drug-related. [34 RR 43-46; 38 RR 69-135]. The jury heard additional evidence of his crack addiction through the testimony of his brothers, Gabriel and Javier [(35 RR 139, 145-47, 151; 36 RR 175-77)], his brother-in-law, Victor [(37 RR 166-68)], and the director of a drug rehabilitation center he once attended. [37 RR 102-111]. The jury heard Ochoa's father testify that he was an alcoholic and abusive toward Ochoa's mother in front of the children. [35 RR 113-15, 128-29].

58.   The Court finds that the defense presented sixteen witnesses at the punishment phase, including relatives, neighbors, coworkers, church acquaintances, and law enforcement personnel, to discuss Ochoa's difficult childhood, his relatively crime-free life prior to his addiction to crack, his mild brain damage from crack abuse, his work ethic, hjis lack of disciplinary problems in jail, and the conditions under which he would live if given a life sentence at TDCJ-ID.

59.   The Court finds that the defense had a well-presented theory of long-term crack addiction and rehabilitation attempts by an otherwise law-abiding person to offer in mitigation of punishment.

60.   The Court finds that the paraphernalia—even if it had contained a detectable amount of residue—would not have added significantly to the body of drug abuse evidence already introduced and would have been virtually immaterial to the jury's decision in the case.

SHCR 360-61.

A state court's factual findings are entitled to deference on federal habeas corpus review and are presumed correct under 28 U.S.C. § 2254(e)(1), unless the petitioner rebuts those findings with "clear and convincing evidence." *Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006) (citing *Hughes*, 412 F.3d at 589 and 28 U.S.C. § 2254(e)(1)). This deference extends not only to express findings of fact, but to the implicit findings of the state court. *Id.* at 444-45 (citing *Summers v. Dretke*, 431 F.3d 861, 876 (5th Cir. 2005); *Young v. Dretke*, 356 F.3d 616, 629 (5th Cir. 2004)).

The state court's factual findings that the State did not act in bad faith and Ochoa did not suffer any harm must be accorded a presumption of correctness. 28 U.S.C. § 2254(e)(1). Ochoa fails to rebut the court's findings by proffering evidence that is clear and convincing. *Hill v. Johnson*, 210 F.3d 481, 487 (5th Cir. 2000). Based on the record, there is nothing unreasonable in the state court's application of clearly established federal law or in the state court's determination of facts in light of the evidence. Accordingly, Ochoa's claim does not warrant federal habeas relief.

## XV. Ochoa's Trial Counsel Was Not Ineffective with Regard to Preserving Evidence in the State's Possession.

In his fifteenth claim for relief, Ochoa argues that he received ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments when his trial counsel allegedly failed to preserve evidence in the State's possession or make a timely objection or motion for such preservation. Pet. at 151-53, ECF No. 8. Ochoa raised this claim during state habeas review. However, the state court reasonably concluded that counsel was not ineffective in his efforts to preserve this evidence.

To begin, the state court found that Ochoa had failed to assert that the paraphernalia seized from him at the time of the arrest was the same paraphernalia that he used to smoke crack immediately before the murders and Ochoa therefore did not articulate a valid claim for relief. SHCR-02 383. But to

-108-

the extent that Ochoa now asserts that it was the same paraphernalia, the state court found no deficiency in counsel's actions:

177. The Court finds that, in his affidavit, defense counsel Steve Miller correctly states that he moved to preserve all physical evidence on February 17, 2003, two months before trial. [SHCR-02 263 (Miller affidavit); CR 62]. The Court finds that the property had been destroyed the previous day.

178. According to Miller's affidavit, he did not move to preserve the evidence any sooner because in his experience, the police do not destroy evidence collected in capital murder investigations. [SHCR-02 263 (Miller affidavit)]. As Miller put it, "I never would have dreamed that the police department would destroy evidence in a capital murder case." [*Id.*]

179. The Court finds that Officer Cox's testimony corroborates the reasonableness of Miller's belief. Officer Cox had no idea that found property is eventually destroyed by DPD. [32 RR18; 33 RR: 124, 132]. Officer Cox also testified that if he thought the items were important to the case, he would have logged them in as "evidence" rather than found property.

SHCR-02 385.

Morever, even if there was deficiency, the state court found that Ochoa was not prejudiced as a result:

186. Alternatively, the Court finds that counsel's alleged deficiency would not have changed the trial outcome.

187. The Court finds no evidence in the record that the crack pipe, steel wool, and baggie were the same items used by Ochoa before he committed these murders.

188. The Court has previously found that, based on the evidence, that the crack pipe, steel wool, and baggie were new and

unused. [32 RR 20-22; 33 RR 130]. Ochoa himself testified extensively about his drug habit at trial and did not contradict the testimony of Office Cox in regard to the physical appearance of the paraphernalia. [38 RR 5-188]. Ochoa further testified that he had purchased a "pitiful number" of crack pipes in his life and he would just discard them "a lot of times after the use." [38 RR 76].

189.   The Court finds, therefore, Ochoa fails top show he was prejudiced by any alleged deficiency. That is, he fails to show a probability sufficient to undermine confidence in the outcome that the trial would have been any different. [citation omitted]

190.   The Court concludes that Ochoa was not prejudiced by counsel's representation with respect to the crack pipe, steel wool, and baggie.

SHCR-02 386-87.

These findings are clearly supported by the testimony of Officers Cox and Lusty, Miller's affidavit, and the clerk's record showing counsel's motions. There is nothing unreasonable in the state court's application of clearly established federal law or in the state court's determination of facts in light of the evidence. Accordingly, Ochoa's claim does not warrant federal habeas relief.

## XVI.  The State Court Reasonably Determined that Ochoa Did Not Receive Ineffective Assistance of Appellate Counsel When His Attorney Chose Not to Raise the Issue Concerning the State's Destruction of Evidence on Direct Appeal.

In his sixteenth claim of relief, Ochoa argues that he received ineffective assistance of appellate counsel when his appellate counsel failed to raise the State's allegedly unconstitutional destruction of evidence on direct appeal. Pet.

at 153, ECF No. 8.  However, the state court reasonably concluded that counsel

was not ineffective in this respect, and therefore relief is precluded by AEDPA.

The state court found:

217.   Ochoa presents no evidence as to the reasons behind appellate counsel's decisions.  The mere fact that appellate counsel failed to press a claim on appeal, without more, falls short of the rigorous standard required in [*Strickland*] to prove deficient performance. [*See Smith*, 477 U.S. at 535-36.]

[. . .]

220.   As for the destruction of evidence claim in ground for relief one, the Court finds that the record patently shows that the evidence was destroyed pursuant to an administrative protocol and fails to demonstrate bad faith on the par of the police, which would be necessary to win such a claim on appeal.

[. . .]

222.   The Court concludes that appellate counsel's representation was not deficient or prejudicial.

SHCR-02 392-94.

In *Smith*, the Supreme Court explained that a petitioner alleging

ineffective assistance of appellate counsel "must first show that his counsel was

objectively unreasonable, in failing to find arguable issues to appeal-that is, that

counsel unreasonably failed to discover non-frivolous issues and to file a merits

brief raising them.  If [petitioner] succeeds in such a showing, he then has the

burden of demonstrating prejudice.  That is, he must show a reasonable

probability that, but for his counsel's unreasonable failure to file a merits brief, he would have prevailed on his appeal." 528 U.S. at 285. As Ochoa has not demonstrated that his destruction-of-evidence argument has merit, he can demonstrate neither serious errors nor prejudice, as required by *Smith*. *See United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994).

The state habeas court found that Ochoa failed to show that his appellate counsel's omission on appeal of a claim of ineffective assistance of trial counsel fell outside the norms of professional judgment and that such omission was prejudicial. The record supports the state habeas court's findings. Ochoa's appellate counsel raised and argued several non-frivolous issues on direct appeal but did not raise the destruction-of-evidence issue. *See* Appellant's Brief. The state habeas courts found that destruction of evidence was not a violation of Ochoa's due-process rights, and Ochoa has failed to rebut such findings. Likewise, Ochoa fails to rebut the state habeas court's findings with respect to his appellate counsel's representation. The Court of Criminal Appeals's rejection on the merits of Ochoa's complaint regarding the performance of his state appellate counsel was neither contrary to, nor involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, nor an unreasonable determination of the facts in

light of the evidence presented in the Ochoa's state habeas corpus proceeding.

Accordingly, Ochoa's claim for relief should be denied.

**XVII.    Ochoa's Claim that His Rights to Due Process, Reliability of the Death Sentence, and Freedom from Arbitrariness and Capriciousness in Capital Sentencing Were Violated Due to the Fact That the Texas Mitigation Special Issue Given in His Case Failed to Assign a Burden of Proof Is Procedurally Barred Because Ochoa Did Not Raise it on Direct Appeal.  Alternatively, It Is Without Merit.**

In his seventeenth claim for relief, Ochoa argues that his death sentence should be set aside because the Texas mitigation special issue given in his case failed to assign a burden of proof in violation of his rights to due process under the Fourteenth Amendment and his right to reliability of the death sentence and freedom from arbitrariness and capriciousness in capital sentencing as guaranteed by the Eighth Amendment.  Pet. at 154-61, ECF No. 8.  But these claims are procedurally barred because Ochoa did not raise them on direct appeal.  Alternatively, they are without merit.  Thus, habeas relief is inappropriate

**A.    These claims are procedurally barred because Ochoa did not raise them on direct appeal.**

Ochoa raised these claims on state habeas review.  There, the state habeas court found that relief should be denied because Ochoa failed to raise the issue on direct review.  SHCR-02  The Fifth Circuit has recognized the Court of Criminal Appeals's rule that "record based claims not raised on direct appeal

will not be recognized in habeas proceedings" as "an adequate state ground capable of barring habeas review." *Dorsey*, 494 F.3d at 532 (citing *Ex parte Gardner*, 959 S.W.2d at 191 (finding that failure to raise an issue on direct appeal bars consideration of that issue under habeas corpus proceedings)). Under Texas law, it is a "firmly established and regularly followed" rule that when a state habeas court rejects a claim as procedurally barred, that claim is also barred from federal habeas review. *Dorsey*, 494 F.3d at 533; *Brewer*, 466 F.3d at 347.   Ochoa attempts to excuse his procedural default by alleging ineffective assistance of counsel.   But Ochoa has failed to establish cause and prejudice to excuse his procedural default of his ineffective assistance claim and, hence, he is barred from using it as a basis for cause to excuse his procedural default of the underlying claim. *Edwards*, 529 U.S. at 451-53.   Consequently, Ochoa's claim must be denied as procedurally barred for his failure to raise it on direct appeal.

**B.    Alternatively, this claim fails on the merits.**

Under the capital-sentencing scheme applicable to Ochoa, once a defendant has been found guilty of capital murder, in order for a death sentence to be imposed, the jury is required to answer two special issues unanimously. *See* Tex. Code Crim. Proc. Art. 37.071 § 2.  The first special issue—the "future dangerousness" special issue—asks "whether there is a probability that the

defendant would commit criminal acts of violence that would constitute a continuing threat to society." *Id.* at § 2(b)(1).  The State is required to prove this issue beyond a reasonable doubt.  *Id.* at § 2(c).  If the jury returns an affirmative finding to the future dangerousness special issue, then it proceeds to answer the second special issue—the "mitigation special issue"—which asks:

> Whether, taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, there is a sufficient mitigating circumstance of circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed.

*Id.* at § 2(e)(1).[23]  The mitigation special issue assigns no burden of proof, either to the defendant or to the State.  *See Blue v. State*, 125 S.W.3d 491, 501 (Tex. Crim. App. 2003) ("[N]either party bears the burden of proof at punishment on the mitigating evidence special issue.").  If the jury's answer to the mitigation special issue is "yes," the defendant receives a life sentence; if the answer is "no," the defendant receives a death sentence.

---

[23]    Under Article 37.071 § 2(f), the trial court is required to charge the jury that in answering the mitigation special issue, the jury:

(1)    shall answer the issue "yes" or "no";
(2)    may not answer the issue "no" unless it agrees unanimously and may not answer the issue "yes" unless 10 or more jurors agree;
(3)    need not agree on what particular evidence supports an affirmative finding on the issue; and
(4)    shall consider mitigating evidence to be evidence that a juror might regard as reducing the defendant's moral blameworthiness.

Ochoa argues that his Sixth Amendment right to a trial by jury was violated because the State is not assigned the burden of proving the absence of mitigating factors beyond a reasonable doubt under the second special issue. Ochoa specifically argues that he is entitled to relief under *Apprendi* and *Ring*, which require that any aggravating circumstance that elevates a sentence beyond the statutory maximum must be determined by a jury beyond a reasonable doubt. But because the jury's answer to the mitigation special issue is not a factor in aggravation of a death sentence, the absence of a burden of proof does not violate the Sixth Amendment.

*Apprendi* and *Ring* were both decided on the narrow grounds that a jury must determine beyond a reasonable doubt whether *aggravating* factors exist that increase a defendant's punishment beyond the "prescribed statutory maximum" authorized by the jury's verdict. Under Texas Penal Code sections 12.31 and 19.03, the "prescribed statutory maximum" for capital murder is fixed at death. Nothing in the mitigation special issue can enhance a capital murder sentence beyond the prescribed maximum.

In *Apprendi*, the Supreme Court specifically noted and reaffirmed the distinction between "facts in aggravation of punishment and facts in mitigation." *Apprendi*, 530 U.S. at 490 n.16. Where a judge finds a fact in mitigation that allows a defendant to "escape the statutory maximum" attached to a jury verdict,

-116-

that finding by a judge "neither expose[es] the defendant to a deprivation of liberty greater than that authorized by the verdict according to the statute, nor is the judge imposing upon the defendant a greater stigma than that accompanying the jury verdict alone." *Id.*  Similarly, in a concurring opinion joined by Justice Scalia, Justice Thomas pointed out that facts with the potential to mitigate punishment are not an element of a crime that might increase a sentencing decision. *Id.* at 501 (suggesting that "a 'crime' includes every fact that is by law a basis for imposing or increasing punishment (in contrast with a fact that mitigates punishment)").

In *Ring*, the Supreme Court found that the Sixth Amendment jury trial right is violated by allowing "a sentencing judge, sitting without a jury, to find an aggravating circumstance necessary for imposition of the death penalty." *Ring*, 536 U.S. at 609.   The Court focused on judicial findings regarding aggravating factors and emphasized that "Ring's claim [was] tightly delineated" to the issue of whether the Sixth Amendment requires a jury finding on the aggravating circumstances asserted against him, and "ma[de] no Sixth Amendment claim with respect to mitigating circumstances." *Id.* at 597 n.4.

Unlike the circumstances presented in *Ring* and *Apprendi*, the Texas mitigation special issue does not operate as "the functional equivalent of an element of a greater offense." *Ring*, 536 U.S. at 609; *Apprendi,* 530 U.S. at 494.

-117-

Ochoa's argument improperly attempts to construe the mitigation special issue as an aggravating factor by suggesting that the *absence* of sufficient mitigating evidence *functionally* aggravates his sentence from life to death.  Although he is correct that a Texas capital-sentencing jury must specifically answer the disputed issue in the negative to render a death sentence, the *function* of that special issue is designed to inure to the defendant's benefit by allowing the jury a broad mechanism to give effect to the defendant's mitigating evidence.  Ochoa's reading of *Apprendi* and *Ring* would illogically result in requiring prosecutors to prove a negative beyond a reasonable doubt.  It is impossible under the Texas system (which leaves it to the individual jurors to decide what evidence is mitigating and whether that evidence suggests mercy be imposed) to prove the *absence* of mitigating evidence beyond a reasonable doubt.  *Apprendi* and *Ring* affect only traditional findings that *aggravate* a sentence and are inapposite to Ochoa's claim.

Furthermore, as held by the Fifth Circuit in *Rowell v. Dretke*, "[n]o Supreme Court or Circuit precedent constitutionally requires that Texas's mitigation special issue be assigned a burden of proof."  398 F.3d 370, 378 (5th Cir. 2005).  Thus, any extension of this precedent would create a new rule of constitutional law in violation of *Teague*.  489 U.S. at 310.

In light of the foregoing, the state court's resolution of Ochoa's claim was correct.  SHCR-02 362-64 (finding that the mitigation special issue does not violate *Ring* or *Apprendi*).  Federal courts cannot grant habeas relief unless the state court's decision conflicts with clearly-established federal law as determined by the Supreme Court or "[is] based on an unreasonable determination of the facts in light of the evidence."  28 U.S.C. § 2254(d).  There is no such conflict here.  Accordingly, relief should be denied on this claim.

XVIII.     **Ochoa's Claim that the Texas Mitigation Special Issue Fails to Adequately Define Its Terms Is Procedurally Defaulted. Alternatively, the Texas Mitigation Special Issue Is Constitutionally Sound.**

In his eighteenth claim for relief, Ochoa argues that his death sentence should be set aside because the Texas mitigation special issue given in his case failed to adequately define what is meant by mitigation or mitigating evidence and the terms used created a reasonable possibility that the jury would construe mitigating evidence narrowly such that it would not give full consideration and effect to all of his mitigating evidence in violation of the Eighth Amendment to the United States Constitution.  Pet. at 154, ECF No. 8.  But Ochoa is not entitled to relief on this claim because it is procedurally defaulted. Alternatively, he is not entitled to relief because the mitigation special issue is constitutionally sound.

## A.     This claim is procedurally defaulted.

Ochoa did not raise the above claim until second state habeas application, which was dismissed as an abuse of the writ.   SHCR-01; *Ex parte Ochoa,* No. WR-67,495-01, -02, slip op. at 2. (citing Tex. Code Crim. Proc. art. 11.071 § 5). The state court's dismissal of his claims as an abuse of the writ thus precludes federal habeas relief as a matter of law.   *See Fearance v. Scott,* 56 F.3d 633, 642 (5th Cir. 1995) (holding that pre-11.071 abuse-of-the-writ doctrine was strictly and regularly applied and, thus, was independent and adequate state procedural bar); *Emery v. Johnson,* 139 F.3d 191, 195-96 (5th Cir. 1997) (extending *Fearance* to Article 11.071 statutory abuse-of-writ doctrine); *Barrientes v. Johnson*, 221 F.3d 741, 758-59 (5th Cir. 2000); *Fuller v. Johnson,* 158 F.3d 903, 906 (5th Cir. 1998);  *see also Moore v. Texas,* 535 U.S. 1044, 1047-48 (2002) (Scalia, J., *dissenting*) (recognizing Texas abuse-of-the-writ statute as independent and adequate state ground).

## B.     Alternatively, this claim fails on the merits

A review of the instruction given clearly shows that Ochoa's capital-sentencing jury was not denied a vehicle for expressing its reasoned moral response to Ochoa's mitigating evidence.   The trial court instructed the jury on the mitigation issue as follows:

### SPECIAL ISSUE NO. 2

> Do you find, taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, that there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed?

CR 380 (jury charge on punishment).

The Fifth Circuit has repeatedly held that "Texas'[s] definition 'encompasses 'virtually any mitigating evidence.'" *Roach v. Quarterman*, 220 Fed. App'x 270, 277 (5th Cir. 2007)  (quoting *Beazley*, 242 F.3d at 260). Furthermore, the Supreme Court specifically commended the current Texas capital-sentencing scheme, calling the new statute "[a] clearly drafted catchall instruction on mitigating evidence" and a model of "brevity and clarity." *Penry v. Johnson*, 532 U.S. 782, 802-03 (2001) (*Penry II*)

Accordingly, Ochoa has not shown that the state court proceedings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly-established federal law, as determined by the Supreme Court of the United States, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  This claim should be denied.

**XIX.  Ochoa's Claim that He Received Ineffective Assistance of Counsel When His Attorneys Did Not to Object to the Mitigation Special Issue Did Not Constitute Ineffective Assistance of Counsel Is Unexhausted and Procedurally Defaulted.  Alternatively, it Is Without Merit.  Likewise, His Appellate Counsel's Decision Not to Raise this Issue on Direct Appeal Did Not Constitute Ineffective Assistance of Counsel.**

In his nineteenth claim for relief, Ochoa argues that he received ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments when his trial counsel failed to object properly and timely to the lack of a burden of proof with respect to the mitigation special issue and when his appellate counsel failed to raise these issues on direct appeal.  Pet at 161, ECF No. 8.  However, Ochoa's claim that trial counsel was ineffective is unexhausted and procedurally defaulted as well a completely meritless.  Likewise, Ochoa's claim that appellate counsel was ineffective is also meritless.  Consequently, habeas relief should be denied.

**A.  Ochoa's claim that trial counsel was ineffective is unexhausted and procedurally barred.  Alternatively, Ochoa's claim is without merit.**

**1.  This claim is unexhausted and procedurally defaulted.**

Ochoa did not present this claim in either of his state habeas applications or in his brief on direct appeal.  *See* SHCR-01; SHCR-02; Appellant's Brief. Thus, this claim is unexhausted and procedurally defaulted.  *See* 28 U.S.C. § 2254(b) (precluding federal habeas corpus relief when applicant has not exhausted state court remedies); *Nobles*, 127 F.3d at 422 (determining that

defaulted claims had yet to be presented to the state courts; concluding that the standard for avoiding a state citation for abuse of the writ could not be satisfied; and holding the claims were unexhausted and procedurally defaulted).

### 2. Alternatively, this claim is without merit.

Morever, as shown in Section XX, *supra*, such an objection would have been futile. To demonstrate that trial counsel was deficient, Ochoa must demonstrate that the trial court would have sustained any objection that the witness' testimony was unreliable or irrelevant. *Clark*, 19 F.3d at 966.

### B. Appellate counsel was not ineffective for choosing not to raise a claim based on the second special issue's burden of proof on direct appeal.

In his briefing, Ochoa only argues that trial counsel was ineffective. Consequently, it appears that Ochoa has inadequately briefed his ineffective assistance of appellate counsel claim and it should be considered waived. Nevertheless, given the precedent cited here and in Section XVIII, *supra,* appellate counsel was clearly not deficient for choosing not to raise this issue on direct appeal. *Smith,* 528 U.S. at 285; *Williamson*, 183 F.3d at 462-63. Consequently, trial counsel was not ineffective for not objecting to the mitigation instruction, and appellate counsel was not ineffective for choosing not to raise the issue on direct appeal.

**XX.    Ochoa's Fair-Cross-Section Claim Is Procedurally Barred. Alternatively, the State Court Reasonably Determined that Ochoa Failed to Demonstrate that His Right to Be Tried by a Jury Selected from a Jury Panel Representing a Fair Cross-Section of the Community Was Violated.**

In his twentieth claim for relief, Ochoa argues that his right under the Sixth Amendment to be tried by a jury selected from a jury panel representing a fair cross-section of the community was violated.  Pet. at 161-62, ECF No. 8. Ochoa alleges that the Dallas-County venire-selection process violated his right to an impartial jury consisting of a representative cross-section of the community because Hispanics were under-represented in the venire.  *Id.*  Ochoa contends that Dallas County's process resulted in the systematic exclusion of Hispanics. *Id.*  But as shown below, this claim is procedurally barred for two reasons—first, because Ochoa failed to contemporaneously object, and second, because he failed to raise the claim on direct appeal.  Moreover, this claim is wholly without merit.

**A.    This claim is procedurally barred because of Ochoa's failure to contemporaneously object.**

It is undisputed that trial counsel did not object on the above basis. SHCR-02 394-95.   As noted above, the Fifth Circuit recognizes that the contemporaneous-objection rule constitutes an adequate and independent state ground procedurally barring federal habeas review.  *Sharp*, 107 F.3d at 285-86. This Court cannot grant habeas relief in absence of proof of cause and prejudice for the procedural default.  *See Coleman*, 501 U.S. 722; *Hughes*, 191 F.3d at 614.

But Ochoa has failed to recognize, much less attempt to excuse, his procedural default. Consequently, Ochoa's claim must be denied as procedurally barred for his failure to contemporaneously object.

**B.      This claim is procedurally barred because Ochoa failed to raise it on direct appeal.**

Likewise, this claim is procedurally barred because Ochoa failed to raise it on direct appeal. SHCR-02 395-96. The Fifth Circuit has recognized the Court of Criminal Appeals's rule that "record based claims not raised on direct appeal will not be recognized in habeas proceedings" as "an adequate state ground capable of barring habeas review." *Dorsey*, 494 F.3d at 532.

**C.      Alternatively, Ochoa's claim fails on the merits.**

The Supreme Court has held that the Sixth Amendment right to a jury trial requires that the jury be selected from a representative cross-section of the community. *Taylor v. Louisiana*, 419 U.S. 522, 528-29 (1975). Therefore jury venires must not systematically exclude distinctive groups in the community. *Duren v. Missouri*, 439 U.S. 357, 363-64 (1979). In order to establish a prima facie Sixth-Amendment fair cross-section violation, one must show that: (1) the group that was alleged to have been excluded is a distinctive group in the community; (2) the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of this group in the

community; and (3) this under-representation is due to systematic exclusion of the group in the jury selection process.  *Id.* at 364.

### 1.   Ochoa cannot meet *Duren's* second prong.

Disregarding the first prong because there is no question Ochoa has satisfied it, Ochoa fails to establish the second prong of *Duren*.  Ochoa's confuses those summoned for jury duty with those who appear for jury duty.  But as the state court found, there were no disparities between those Hispanics summoned for service in Ochoa's case and the percentage of Hispanics who reside in Dallas County.  SHCR-02 399-400.  And the second prong of *Duren* is not satisfied by mere reference to those who appear for jury duty without regard to the process of summoning prospective jurors.

In *Duren*, the Supreme Court found that the petitioner, who claimed women were underrepresented on the venire, satisfied the three-prong test for demonstrating a violation of the fair cross-section requirement.  The Court noted that the percentage of women in the community was 54 percent.  439 U.S. at 362, 365.  The percentage of women summoned was 26.7 percent, and the number of women actually on the venire was 14.5 percent.  *Id.* at 362.  In addressing the second prong, the Court stated: "Such a gross discrepancy between the percentage of women in jury venires and the percentage of women in the community requires the conclusion that women were not fairly

represented *in the source from which petit juries were drawn* in Jackson County.

*Id.* at 366 (emphasis added).  And in *Taylor v. Louisiana*, the Court held:

> It should also be emphasized that in holding that petit juries *must be drawn from a source fairly representative of the community* we impose no requirement that petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population.  Defendants are not entitled to a jury of any particular composition; but the jury wheels, pools of names, panels, or venires from which juries are drawn must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof.

419 U.S. at 538 (emphasis added).  Because the Supreme Court has emphasized

the source from which juries are drawn, it is evident that a petitioner cannot

satisfy *Duren's* second prong by providing statistics regarding "no shows" when

those same statistics reveal that a county's process of summoning jurors is

absolutely fair.

The Fifth Circuit, moreover, has addressed disparities in terms of the

summoning process, not those who appear for service.  *See United States v.*

*Butler*, 611 F.2d 1066, 1069-70 (5th Cir. 1980) (declining relief under *Duren*

based on the low absolute disparity between *presence on jury wheel* and

presence in group population); *United States v. Maskeny*, 609 F.2d 183, 189-90

(5th Cir. 1980) (rejecting *Duren* claim where "the disparity between the

percentage of each allegedly 'distinctive' group in the community and the

percentage of that group either returning questionnaires or ending up on the qualified wheel is less than ten percent").

Ochoa's second error is that *Duren* requires him to show that the number of Hispanics on Dallas County venires is not fair and reasonable in relation to the number of such persons in the community *who are qualified for the jury-selection process. See Pondexter v. State*, 942 S.W.2d 577, 580-81 (Tex. Crim. App. 1996). In *Pondexter*, the defendant claimed his venire violated the fair cross-section requirement because undisputed evidence showed that African-Americans made up 22 percent of the county's population but less than 10 percent of the jury array. The Court of Criminal Appeals overruled the complaint because Pondexter did not show that the number of African-Americans who qualified for the jury-selection process "were of the same or similar percentages as the population of the county." *Id.* Ochoa has the same problem proving his claim as did Pondexter.

In his statistical analysis, Ochoa relies on the 2000 U.S. Census to provide a countywide population count of Hispanics over the age of eighteen. Assuming the accuracy of the census, Ochoa presents no information regarding the number of Hispanics in Dallas County *who qualify for the jury selection process.*

In Texas, the names of people who qualify for the jury-selection process are placed on a "jury wheel."  Tex. Gov't Code Ann. § 62.004(a) (Vernon 1998).  The jury wheel is reconstituted using, as the source:

> (1) all persons on the voter registration list *and*
>
> (2) all persons with a driver's license or state identification card,
>
> (3) who are not disqualified from jury service due to
>
>> (a) being under age 18,
>>
>> (b) being a noncitizen of Texas or Dallas County, or
>>
>> (c) having a felony conviction.

*See* Tex. Gov't Code Ann. § 62.001 (Vernon Supp. 2004-2005).  Thus, the above characteristics define the people who qualify for the jury-selection process, *i.e.*, the people upon whom a fair cross-section complaint must be based according to *Pondexter*.  Ochoa cannot win his fair cross-section claim by merely comparing the number of adult Hispanics who are in the venire with the general population count.  Any Hispanic adult in Dallas County who is not registered to vote and lacks a driver's license or identification card, has a felony conviction, or is not a state or county citizen is, under Section 62.001, ineligible for the jury-selection process.  Ochoa cannot prove discrimination by showing that the process excludes persons who do not qualify in the first place. *United States v. Williams*, 264 F.3d 561, 568 (5th Cir. 2001) ("The *Duren* test instead focuses on whether

the representation of African-Americans in the challenged venire was fair and reasonable in relation to the number of African-Americans in the community. The relevant community consisting of those individuals who are eligible to serve as jurors in the Southern District of Mississippi."); *United States v. Fike*, 82 F.3d 1315, 1321 (5th Cir. 1996) (declining relief under *Duren* where appellant failed to show a significant discrepancy between African-Americans summoned to serve on the jury and African-Americans in the population eligible to serve); *United States v. Apodaca,* 666 F.2d 89, 93 (5th Cir. 1982) ("The record is totally devoid of any evidence that would tend to establish the percentage in either identifiable class who are eligible to serve as jurors."); *United States v. Brummit,* 665 F.2d 521, 529 (5th Cir. 1981)(holding that fair cross-section claim must be based not on total population of Hispanics but on those Hispanics who are eligible to serve as jurors).

Finally, Ochoa's claim relies on statistics cited in the Dallas Morning News and an SMU law review article.  SHCR-02 45-46.  The mere citation of articles does not suffice to introduce into evidence the truth of the hearsay or "scientific conclusions" contained within them.  *See Ramdass v. Angelone*, 530 U.S. 156, 172 (2000).

## 2.  Ochoa cannot saitsfy *Duren's* third prong (systematic exclusion)

Ochoa has failed to show the "systematic exclusion" of Hispanics from the jury-selection process.  To satisfy this requirement, Ochoa must demonstrate that the alleged underrepresentation is inherent in the particular jury-selection process used.  *Duren*, 439 U.S. at 366.  Ochoa must identify a specific systematic defect or operational deficiency that accounts for the alleged underrepresentation.  *Pion*, 25 F.3d at 23.

In *Taylor*, for example, the Supreme Court struck down a Louisiana statute that prevented a woman from being selected for jury service unless she filed a written declaration of her desire to be subject to jury service.  419 U.S. at 523, 531.  Thus, affirmative barriers to *selection* for jury service or different *selection* standards for different groups is the earmark of a Sixth Amendment violation.

In Texas, the names on the jury wheel in each county are selected from the names of all persons on the current voter registration lists and the names of all citizens who have a valid Texas driver's license or identification card.  *See* Tex. Gov't Code Ann. § 62.001.  There is nothing inherently exclusive about this method of selection, and it has been upheld repeatedly against attack.  *See United States v. James*, 528 F.2d 999, 1022 (5th Cir. 1976).; *Thompson v. Sheppard*, 490 F.2d 830, 833 (5th Cir. 1974) ("We conclude that a jury list drawn

objectively, mechanically, and at random from the entire voting list of a county is entitled to the presumption that it is drawn from a source which is a fairly representative cross-section of the inhabitants of that jurisdiction."). No person otherwise qualified for jury service is prevented, by reason of his Hispanic heritage, from getting a driver's license or identification card, nor is the person precluded from registering to vote. The fact that a person may not avail himself of the privilege to get a driver's license or to vote does not make him a distinctive group for *Duren* purposes. *Rioux*, 930 F. Supp. at 1572-1573.

Ochoa offers no evidence that the Dallas County venire-selection process systematically excludes Hispanics. Even the SMU Law Review and Dallas Morning News articles Ochoa relies on acknowledge that the complained-of disparity is caused by problems that appear *after* summonses were mailed.

Thus, Ochoa's actual complaint is clear: Hispanics disregard juror summonses in disproportionate numbers. Ochoa blames this failure to report on Dallas County policies, suggesting that low pay for jury service plus the failure to enforce the jury summonses result in a violation of the fair cross-section requirement. But aside from the conclusory newspaper and law review articles, Ochoa provides no evidence that Dallas County's low juror pay and its failure to enforce summonses cause unconstitutional underrepresentation. There could be any number of reasons, unrelated to Dallas County policies, for

Hispanics not reporting.  The summons could include a bad address or be addressed to a person who has left home, is disabled or ill, does not speak English, or simply has no civic responsibility.  Moreover, Ochoa's low-pay excuse is faulty because his argument assumes that the loss of a daily job wage in exchange for jury pay is more harmful to Hispanics than other groups.  He has provided nothing to show this is true.

In any case, discrepancies resulting from such private-sector influences rather than affirmative governmental action do not violate the fair cross-section requirement. By definition, Dallas County is not actively preventing anyone from responding, nor is the County actively discriminating.  All people summoned for jury duty, regardless of their race, get the same pay and suffer the same consequences for not reporting.  *Duren* is satisfied so long as the system is reasonably open to all, which it is.  *Barber v. Ponte*, 772 F.2d 982, 997-98 (1st Cir. 1985).  Disparities attributable to personal predilection or wealth imbalances, as opposed to state or locally imposed impediments, cannot form the basis of a cognizable class and evoke sanctions against the judicial system.  *See Rioux*, 930 F. Supp. at 1573; *see also United States v. Cecil*, 836 F.2d 1431, 1146-48 (4th Cir. 1987) (upholding use of voter registration list as source for jury selection regardless of fact that it would exclude persons, whatever their race, color, gender, or age, who had not registered to vote) (citing *Foster v. Sparks*, 504

F.2d 805, 816-17 (5th Cir. 1975)). Stated simply, the personal decision by some people not to appear for jury service is not a government action that runs afoul of the Sixth Amendment.

Finally, Ochoa must prove that the alleged exclusion is systematic. He has failed in this regard because he has analyzed only one jury pool. SHCR-02 403. The existence of systematic underrepresentation turns on the process of selecting venires, not on the outcome of that process in a particular case. In *Duren*, systematic exclusion was proven by showing that an underrepresentation of women occurred not just occasionally, but in every weekly venire for the period of *nearly a year*. *See Duren*, 439 U.S. at 366.

In conclusion, Ochoa has failed to satisfy his burden under *Duren*. The state court's decision was not objectively unreasonable, and this Court should deny relief.

## CONCLUSION

For the above reasons, the Director respectfully requests that the Court deny Ochoa's petition for a writ of habeas corpus with prejudice and sua sponte deny a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (explaining that the district court has the power to sua sponte deny a certificate of appealability without prior briefing and argument by counsel).

Respectfully submitted,

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

ERIC J.R. NICHOLS
Deputy Attorney General
for Criminal Justice

EDWARD L. MARSHALL
Chief, Postconviction
Litigation Division


* Attorney-in-charge

 /s/  Stephen M. Hoffman
*STEPHEN M. HOFFMAN
Assistant Attorney General
Texas Bar No. 24048978
P. O. Box 12548, Capitol Station
Austin, Texas   78711
Tel:  (512) 936-1400
Fax: (512) 320-8132
Stephen.Hoffman@oag.state.tx.us

ATTORNEYS FOR RESPONDENT

## CERTIFICATE OF SERVICE

I do hereby certify that on December 17, 2010, I electronically filed the foregoing pleading with the Clerk of the Court for the U.S. District Court, Northern District of Texas, using the electronic case-filing system of the Court. The electronic case-filing system sent a "Notice of Electronic Filing" to the following attorneys of record, who consented in writing to accept this Notice as service of this document by electronic means

James Gregory Rytting
Hilder Associates PC
819 Lovett Blvd
Houston, TX 77006-3905
713-655-9111
Fax: 713-655-9112
Email: james@hilderlaw.com

and

Philip Harlan Hilder
Hilder & Associates P.C.
819 Lovett Blvd.
Houston, TX 77006-3905
713-655-9111
Fax: 713-655-9112
Email: philip@hilderlaw.com

        /s/  Stephen M. Hoffman
        STEPHEN HOFFMAN
        Assistant Attorney General