IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS,
DALLAS DIVISION

| | | |
|---|---|---|
| **ABEL REVILL OCHOA,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| | § | |
| **-v-** | § | **NO.  3:09-cv-02277** |
| | § | |
| | § | |
| | § | |
| **WILLIAM STEPHENS,** | § | |
| **Director, Texas Department of Criminal** | § | |
| **Justice, Correctional Institutions Division** | § | **CAPITAL CASE** |
| | § | |
| **Respondent.** | § | |

**PETITIONER'S SUPPLEMENTAL BRIEFING ON THE EFFECT OF**
*MARTINEZ V. RYAN* **AND** *TREVINO V. THALER* **ON THE ISSUES
IN THIS CASE**

Respectfully submitted,

ALEXANDER L. CALHOUN
Attorney at Law
Texas Bar No. 00787187
4301 W. William Cannon Dr.  Ste. B-150
        # 260
Austin, Texas 78749
(512) 420-8850 (telephone)
(512) 233-5946 (facsimile)
(512) 731-731-3159 (cell)
alcalhoun@earthlink.net

PAUL E. MANSUR
Senior Staff Attorney
Texas Defender Service
P.O. Box 1300
Denver City, Texas 79323
(806) 215-1025 (telephone)
(806) 592-9136 (facsimile)
pmansur@texasdefender.org

Counsel for Petitioner, Abel Revill Ochoa

## TABLE OF CONTENTS

I.      Introduction ...............................................................................................................1

II.     Procedural History .....................................................................................................2

III.    Discussion ..................................................................................................................3

        A.      Mr. Ochoa has no available state court remedy; thus, it would be futile and
                inappropriate to send the case back to state court. ....................................................3

                1.      Since filing for habeas relief in this Court, there has been a
                        fundamental change in the applicable law under AEDPA that
                        creates an exception to the cause and prejudice inquiry for
                        procedurally defaulted and/or unexhausted claims. ....................................3

                2.      There is no adequate remedy of law in the state courts which
                        would require the case be remanded to the state courts in order to
                        exhaust the claims. ...................................................................................10

                        a.      Even when confronted with the holdings in *Trevino* and
                                *Martinez* and the fact that these cases would allow *de novo*
                                review of IATC claims in federal court, the Texas Court of
                                Criminal Appeals has expressly refused to recognize a
                                similar equitable exception to the successor writ bar in
                                Section 5 of Article 11.071 of the Texas Code of Criminal
                                Procedure. ...................................................................................10

                        b.      Because of the Texas Court of Criminal Appeals's rejection
                                of *Trevino* and *Martinez* as an equitable basis to justify
                                procedural default, returning to the state court to exhaust
                                any defaulted claims would be futile. ...........................................13

        B.      Further factual development is necessary in order for this Court to apply
                *Martinez* and *Trevino* to Mr. Ochoa's case. ..........................................................16

                1.      The *Martinez* inquiry is a fact-based review of the pertinent
                        evidence of the underlying constitutional claim and of state post-
                        conviction counsel's representation, and it requires an adequate
                        opportunity to present evidence in the federal district court. .....................16

                2.      Because of pre-*Trevino* case-law, Mr. Ochoa has not yet been
                        provided the full opportunity to investigate, develop, and present
                        the relevant evidence under a *Martinez* inquiry. ........................................18

i

3.      Mr. Ochoa has numerous unexhausted claims for which he seeks to demonstrate cause and prejudice under *Martinez* and for which he requires an adequate opportunity to develop facts that will enable him to make the requisite showing. .........................................................22

IV.     Conclusion ............................................................................................................26

INDEX OF AUTHORITIES

*Cases*:

*Anderson v. Johnson*, 338 F.3d 382 (5th Cir. 2003) ........................................................13

*Barnard v. Collins*, 13 F.3d 871 (5th Cir. 1994)...........................................................16

*Barrientes v. Johnson*, 221 F.3d 741 (5th Cir. 2000) ..............................................16, 17

*Blackmon v. Scott*, 22 F.3d 560 (5th Cir. 1994)..........................................................17

*Cantu v. Thaler*, 682 F.3d 1053 (5th Cir. 2012) ........................................................15

*Cantu v. Thaler*, No. 2:06-CV-166 (E.D. Tex.)............................................................15

*Carter v. Estelle*, 677 F.2d 427 (5th Cir. 1982) .........................................................14

*Collazo v. Curley*, No. 11-6 Erie, 2012 U.S. Dist. LEXIS 77841 (W.D. Penn, Jun. 5, 2012)...............................................................................................................24

*Coleman v. Thompson*, 501 U.S. 722 (1991)...............................................................4, 5

*Dilworth v. Johnson*, 215 F.3d 497 (5th Cir. 2000)......................................................14

*Douglas v. California*, 372 U.S. 353 (1963).................................................................24

*Dugger v. Adams*, 489 U.S. 401 (1989).........................................................................4

*East v. Scott*, 55 F.3d 996 (5th Cir. 1995)..................................................................20

*Evitts v. Lucey*, 469 U.S. 387 (1985) ..........................................................................24

*Ex parte Adams*, No. WR-68,066-03, 2012 Tex. Crim. App. Unpub. LEXIS 118 (Tex.Crim.App., Feb. 15, 2012)..................................................................................10

*Ex parte Balentine*, No. WR-54,071-03, 2011 Tex. Crim. App. Unpub. LEXIS 401 (Tex.Crim.App., Jun. 14, 2011) ...................................................................................11

*Ex parte Blue*, 230 S.W.3d 151 (Tex.Crim.App. 2007)..................................................5

*Ex parte Campbell*, 226 S.W.3d 418 (Tex.Crim.App. 2007) .........................................5

*Ex parte Granados*, No. WR-51,135-01 (Tex.Crim.App., Jan. 10, 2007).......................5

*Ex parte Graves*, 70 S.W.3d 103 (Tex.Crim.App. 2002) ..................................................5

*Ex parte Hernandez*, No. WR-62,840-02, 2012 Tex. Crim. App. Unpub. LEXIS 311 (Tex.Crim.App., Mar. 21, 2012) .....................................................................................10, 11

*Ex parte Hood*, 211 S.W.3d 767 (Tex.Crim.App. 2007) ..................................................5

*Ex parte Hood*, 304 S.W.3d 397 (Tex.Crim.App. 2010) ..................................................5

*Ex parte McCarthy*, No. WR-50,360-04, 2013 Tex. Crim. App. Unpub. LEXIS 731 (Tex.Crim.App., Jun. 24, 2013) ...........................................................................10, 11, 12, 13

*Ex parte Medina*, 361 S.W.3d 633 (Tex.Crim.App. 2011) ...............................................5

*Ex parte Medrano*, No. WR-78,123-01 (Tex.Crim.App., Nov. 7, 2012) .........................5

*Ex parte Moreno*, No. WR-25,897-03 (Tex.Crim.App., May 9, 2007) ............................5

*Ex parte Moreno*, 245 S.W.3d 419 (Tex.Crim.App. 2008) ..............................................5

*Ex parte Thurmond*, No. WR-62,425-02, 2012 Tex. Crim. App. Unpub. LEXIS 146 (Tex.Crim.App., Feb. 29, 2012) .......................................................................................10

*Fisher v. Texas*, 169 F.3d 295 (5th Cir. 1999) ................................................................14

*Graham v. Johnson*, 94 F.3d 958 (5th Cir. 1996) ...........................................................14

*Halbert v. Michigan*, 545 U.S. 605 (2005) ..................................................................6, 24

*Hartfield v. Thaler*, 699 F.3d 394 (5th Cir. 2012) ..........................................................14

*Humphrey v. Cady*, 405 U.S. 504 (1972) .......................................................................16

*Ibarra v. Thaler*, 687 F.3d 222 (5th Cir. 2012) .........................................................3, 8, 9

*Ibarra v. Thaler*, ___ F.3d ___, No. 11-70031 (5th Cir., Jul. 17, 2013) .......................15

*In re Hearn*, 376 F.3d 447 (5th Cir. 2004) .................................................................20, 21

*Jenkins v. Anderson*, 447 U.S. 231 (1980) .....................................................................16

*Maples v. Thomas*, 132 S. Ct. 912 (2012) ........................................................................3

*Massaro v. United States*, 538 U.S. 500 (2003) ..............................................................17

iv

*Martinez v. Johnson*, 255 F.3d 229 (5th Cir. 2001) ...................................................5, 19

*Martinez v. Ryan*, 132 S. Ct. 1309 (2012) .......................................1, 2, 3, 6, 7, 8, 17, 25

*Matchett v. Dretke*, 380 F.3d 844 (5th Cir. 2004) .............................................................5

*McCleskey v. Zant*, 499 U.S. 467 (1991) .......................................................................4, 5

*McFarland v. Scott*, 512 U.S. 849 (1994) .........................................................................20

*Miller-El v. Cockrell*, 537 U.S. 322 (2003) .......................................................................8

*Morris v. Dretke*, 413 F.3d 484 (5th Cir. 2005) .............................................................14

*Murray v. Carrier*, 477 U.S. 478 (1986) ...........................................................................5

*Ochoa v. State*, No. 74,663 (Tex.Crim.App., Jan. 26, 2005) .............................................2

*Patterson v. Johnson*, No. 3:99-CV-0808-G, 2000 U.S. Dist. LEXIS 12694
(N.D. Tex., Aug. 31, 2000) ...........................................................................................20, 21

*Rhines v. Weber*, 544 U.S. 269 (2005).............................................................................5

*Riley v. Dretke*, 362 F.3d 302 (5th Cir. 2004).............................................................19

*Rodriguez v. Padulla*, No. 12-6392, 2012 U.S. App. LEXIS 20405 (4th Cir., Sept.
28, 2012) ............................................................................................................................24

*Rose v. Lundy*, 455 U.S. 509 (1982) .................................................................................4

*Strickland v. Washington*, 466 U.S. 668 (1984) .............................................................10

*Teague v. Scott*, 60 F.3d 1167 (5th Cir. 1990)..............................................................20

*Trevino v. Thaler*, 132 S. Ct. 524 (2012) ..........................................................................3

*Trevino v. Thaler*, 133 S. Ct. 3980 (2013) ........................................1, 8, 9, 10, 18, 19, 25

*United States v. Culverhouse*, 507 F.3d 888 (5th Cir. 2007) ........................................17

*United States v. Hayes*, 532 F.3d 349 (5th Cir. 2008) ...................................................17

*United States v. Rivas-Lopez*, 678 F.3d 353 (5th Cir. 2012) .........................................17

*Wainwright v. Sykes*, 433 U.S. 72, 86-90 (1977) ............................................................................4

*Williams v. Thaler*, 602 F.3d 291 (5th Cir. 2010) ........................................................................5

*Wiggins v. Smith*, 539 U.S. 510 (2003) ........................................................................................25

<u>*Statutes*</u>:

18 U.S.C. § 3599(f) ........................................................................................................................21

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS,**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **ABEL REVILL OCHOA,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| | § | |
| **-v-** | § | **NO.  3:09-cv-02277** |
| | § | |
| | § | |
| | § | |
| **WILLIAM STEPHENS,** | § | |
| **Director, Texas Department of Criminal** | § | |
| **Justice, Correctional Institutions Division** | § | **CAPITAL CASE** |
| | § | |
| **Respondent.** | § | |

**PETITIONER'S SUPPLEMENTAL BRIEFING ON THE EFFECT OF**
***MARTINEZ V. RYAN* AND *TREVINO V. THALER* ON THE ISSUES**
**IN THIS CASE**

TO THE HONORABLE JUDGE OF THIS COURT:

NOW COMES, Petitioner, Abel Revill Ochoa ("Mr. Ochoa"), in accordance with

Northern District of Texas Local Rule 7.2, and files this supplemental brief concerning the effect

of the two recent landmark Supreme Court cases—*Martinez v. Ryan*, 132 S. Ct. 1309 (2012), and

*Trevino v. Thaler*, 133 S. Ct. 3980 (2013)—on the issues in this case.

**I.  Introduction**

It cannot be doubted that *Martinez* and *Trevino* fundamentally altered the playing field in

this case.  Prior to these cases, petitioners whose ineffective assistance of trial counsel ("IATC")

claims had been defaulted through the negligence of state habeas counsel had little recourse for

presenting these claims in federal court.  They were denied resources in which to develop the

underlying claims, and the federal courts in Texas refused to recognize ineffective assistance of

state habeas counsel as cause for the default.  Consequently, most of these claims were defeated on procedural grounds, and courts rarely reached the substantive merits of whether petitioners had been denied the fundamental right to counsel.

*Martinez* and *Trevino* now open the door to allow full and proper development of otherwise defaulted IATC claims by allowing petitioners in federal court to establish cause and prejudice based on state habeas counsel's deficient representation.  To accomplish this, however, petitioners will require both time and resources in order to establish both cause and prejudice under *Martinez* and *Trevino* and the merits of the underlying IATC claim.

## II.  Procedural Background

Mr. Ochoa was sentenced to death in *State of Texas v. Abel Revill Ochoa* by the 194th District Court of Dallas County on April 23, 2003.  The Texas Court of Criminal Appeals affirmed the conviction and sentence.  *Ochoa v. State*, No. 74,663, slip op. (Tex.Crim.App., Jan. 26, 2005).  Represented by new counsel, Mr. Ochoa filed a petition for writ of habeas corpus in this Court on August 19, 2010.  (Docket No. 8).  Mr. Ochoa raised a number of claims in the federal habeas corpus petition that had not been uncovered or presented by state habeas counsel, including numerous claims that trial and direct appeal counsel had provided ineffective assistance of counsel.  As a result, the claims were unexhausted and potentially procedurally defaulted.

Respondent filed an answer and motion for summary judgment on December 17, 2010, arguing that each of these claims were unexhausted and, for that reason, procedurally defaulted and that Mr. Ochoa had not shown cause and prejudice for the default.  (Docket No. 14) Initially, Mr. Ochoa sought to stay and abey the proceedings in order to return to state court to exhaust these claims, but based on two new landmark Supreme Court decisions—*Martinez v.*

*Ryan*, 132 S. Ct. 1309 (2012), and *Maples v. Thomas*, 132 S. Ct. 912 (2012)—that were decided in the interim, Mr. Ochoa supplemented his reply to point out that these cases potentially provided mechanisms through which he could show cause and prejudice.  (Docket Nos. 21 & 33)  Subsequently, the Fifth Circuit held that *Martinez* did not apply to Texas cases.  *See Ibarra v. Thaler*, 687 F.3d 222 (5th Cir. 2012).  After the Supreme Court granted certiorari in *Trevino v. Thaler*, 133 S. Ct. 524 (2012), to address the validity of *Ibarra*, this Court stayed the case.  (Docket No. 38)  Once the Supreme Court handed down an opinion in *Trevino*, this Court on May 31, 2013, lifted the stay and reopened the case.  (Docket No. 40).

This Court has ordered the parties to brief the impact of *Trevino* and *Martinez* on the issues in this case, including, but not limited to the following questions:

(1) whether evidentiary development should be allowed by this Court in connection with the *de novo* consideration of any unexhausted claim that may fall within the exception to procedural bar created in *Martinez*; and

(2) whether this Court should further abate these proceedings to allow the petitioner to now present any such claim to the state court in the first instance.

*Order* (Docket No. 40).  Because it addresses whether this case should remain in this Court, Mr. Ochoa addresses the second question first.

### III.  Discussion

A.   Mr. Ochoa has no available state court remedy; thus, it would be futile and inappropriate to send the case back to state court.

1.   Since filing for habeas relief in this Court, there has been a fundamental change in the applicable law under AEDPA that creates an exception to the cause and prejudice inquiry for procedurally defaulted and/or unexhausted claims.

Since initiating post-conviction proceedings in this Court, the Supreme Court has issued two significant decisions that dramatically change the manner in which federal district courts

apply procedural default and exhaustion in federal post-conviction proceedings. The law was previously controlled by *Coleman v. Thompson,* 501 U.S. 722 (1991), in which the Court held that "[i]n all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that the failure to consider the claims will result in a fundamental miscarriage of justice." *Id.* at 750. *See also McCleskey v. Zant*, 499 U.S. 467, 493-94 (1991) (describing the cause and prejudice standard); *Dugger v. Adams*, 489 U.S. 401, 406-07 (1989) (same); *Wainwright v. Sykes*, 433 U.S. 72, 86-90 (1977) (applying the cause and prejudice standard when a constitutional claim is procedurally defaulted in state court because of failure to comply with state contemporaneous objection rule). Also, a habeas petitioner must exhaust each of the claims presented in federal court by first affording the state court system the opportunity to correct any constitutional infirmities affecting a state court judgment. *Rose v. Lundy*, 455 U.S. 509, 518 (1982). However, though exhaustion and procedural default are distinct concepts in federal habeas, the *Coleman* Court held that if it is clear that the court "to which the petitioner would be required to present him claims in order to meet the exhaustion requirement would now find the claims procedurally barred," then "[i]n such a case there is a procedural default for purposes of federal habeas regardless of the decision of the last state court to which the petitioner actually presented his claims."[1] *Coleman*, 501 U.S. at 735 n.1.

---

[1]     Before a court could apply procedural default to an unexhausted claim under *Coleman*, it had to be clear that the state court would do the same, thus, rendering a return to state court a futile act. Of course, the exhaustion requirement requires total exhaustion, and, pre-AEDPA, if a petitioner filed a mixed petition (one with both exhausted and unexhausted claims), the federal court was required to dismiss the entire petition in order to allow the petitioner to exhaust all of the claims. *Rose v. Lundy*, 455 U.S. at 521-22. In the wake of the adoption of AEDPA and its one-year statute of limitations, the Supreme Court allowed district courts, under certain circumstances, to

Also, in *Coleman*, the Court rejected the argument that mere attorney error could serve as cause for a defaulted claim. *Coleman v. Thompson*, 501 U.S. at 752-53. *See also Murray v. Carrier*, 477 U.S. 478, 488 (1986); *McCleskey v. Zant*, 499 U.S. at 493-94. *Coleman*, however, left open the question of whether there was a constitutional right to counsel in state post-conviction proceedings when state habeas presented the first opportunity a claimant had for raising an IATC claim. *Coleman*, 501 U.S. at 755. The Fifth Circuit nevertheless had foreclosed the possibility of showing cause and prejudice under these circumstances. *See Martinez v. Johnson*, 255 F.3d 229, 240-41 (5th Cir. 2001) (rejecting argument that ineffective assistance of state habeas counsel when state habeas presented first opportunity to present constitutional claim could be considered cause). *See also Williams v. Thaler*, 602 F.3d 291, 308-09 (5th Cir. 2010) (same); *Matchett v. Dretke*, 380 F.3d 844, 849 & n.1 (5th Cir. 2004) (same).

This changed with *Martinez* and *Trevino*. In *Martinez*, the Court granted certiorari apparently to consider the question left open in *Coleman*; however, the court bypassed the

---

stay and abey the proceedings in order to permit a federal petitioner to return to state court to exhaust the previously unexhausted claim. *See Rhines v. Weber*, 544 U.S. 269, 274-77 (2005). Mr. Ochoa initially sought to avail himself of this procedure in order to present his unexhausted claims to the Texas court. Because it was not entirely clear under *Coleman* that the Court of Criminal Appeals would necessarily apply a procedural bar to his claim, he argued that his state post-conviction counsel's woefully deficient representation provided both good cause for going back to state court and potentially supported an exception to the state bar on successor petitioners contained in Article 11.071, § 5, of the Texas Code of Criminal Procedure. *See Petitioner's Response to Respondent's Answer*, at 55-75.

At the time, there was precedential support for this position. Though the Court of Criminal Appeals had rejected an argument that ineffective assistance of state post-conviction counsel could, as a general matter, constitute an exception to Section 5, s*ee Ex parte Graves*, 70 S.W.3d 103, 114-15 (Tex.Crim.App. 2002), more recent decisions suggested possible exceptions to that rule in cases of extreme attorney malfeasance. *See Ex parte Medrano*, No. WR-78,123-01 (Tex.Crim.App., Nov. 7, 2012) (not designated for publication); *Ex parte Medina*, 361 S.W.3d 633 (Tex.Crim.App. 2011); *Ex parte Granados*, No. WR-51,135-01 (Tex.Crim.App., Jan. 10, 2007) (not designated for publication); *Ex parte Hood*, 211 S.W.3d 767 (Tex.Crim.App. 2007) (*Hood I*); *Ex parte Hood*, 304 S.W.3d 397 (Tex.Crim.App. 2010) (*Hood II*); *Ex parte Moreno*, No. WR-25,897-03 (Tex.Crim.App., May 9, 2007) (not designated for publication) (Womack & Price, JJ., issuing statements concerning non-action of the court) (*Moreno I*); *Ex parte Moreno*, 245 S.W.3d 419 (Tex.Crim.App. 2008) (*Moreno II*); *Ex parte Blue*, 230 S.W.3d 151 (Tex.Crim.App. 2007); *Ex parte Campbell*, 226 S.W.3d 418 (Tex.Crim.App. 2007). However, as will be demonstrated, in the *Martinez/Trevino* context, the Court of Criminal Appeals has largely foreclosed an exception to *Graves* in order to allow the state judiciary to consider, as an equitable matter, whether ineffective assistance of state habeas counsel may constitute an exception to the Section 5 bar for a defaulted IATC claim.

constitutional issue and, instead, adopted an equitable exception to *Coleman*'s rule that state habeas counsel's negligence does not provide cause for default. *Martinez v. Ryan*, 132 S. Ct. at 1315. The Court held:

> This is not the case, however, to resolve whether that exception exists as a constitutional matter. The precise question here is whether ineffective assistance in an initial-review collateral proceeding on a claim of ineffective assistance at trial may provide cause for a procedural default in a federal habeas proceeding. To protect prisoners with a potentially legitimate claim of ineffective assistance of trial counsel, it is necessary to modify the unqualified statement in *Coleman* that an attorney's ignorance or inadvertence in a postconviction proceeding does not qualify as cause to excuse a procedural default. This opinion qualifies *Coleman* by recognizing a narrow exception: Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial.

*Id*. The Court explained that an initial review-collateral proceeding, which presents the first legitimate opportunity to raise an IATC claim, is the equivalent of a prisoner's direct appeal with respect to these claims. *Id*. at 1317 (quoting *Halbert v. Michigan*, 545 U.S. 605 (2005)). However, without an exception to *Coleman*'s rule, a defendant risked losing the opportunity to have any court, state or federal, review a substantial IATC claim. The Court noted that it did not have the opportunity to consider this issue in *Coleman* because in that case the state trial court addressed the IATC claim on the merits and the default arose in perfecting an appeal from that decision; thus, at least one court had reviewed the defendant's claim. *Id*. at 1316. To the Court, this marked a key difference between *Martinez* and *Coleman*: "When an attorney errs in initial-review collateral proceedings, it is likely that no state court at any level will hear the prisoner's claim." *Id*. Also, the Supreme Court on direct review of the state proceedings and, later, the federal courts in federal habeas will be deprived of the ability to review the claim. *Id*. As a result, "no court will review the prisoner's claim." *Id*. The fact that these claims could escape

review was of particular concern to the Court because the right to counsel is "a bedrock principle" of and, indeed, the very "foundation for our adversary system" of justice. *Id*. at 1317.

The Court recognized that a State may have sound practical reasons for reserving the adjudication of IATC claims for collateral review, particularly because such claims invariably depend on evidence outside the record and the very limited opportunity for expanding the record on direct appeal renders it virtually impossible in most cases to investigate and develop an ineffective assistance claim, and the Court clearly pointed out that States do not engage in any impropriety in fashioning such systems to address IATC claims. *Martinez v. Ryan*, 132 S. Ct. at 1318. However, reserving these claims to a more appropriate forum is not without consequences to the State's right to assert procedural default in federal court. *Id*. at 1317-18. The Court explained:

> By deliberately choosing to move trial-ineffectiveness claims outside of the direct-appeal process, where counsel is constitutionally guaranteed, the State *significantly diminishes* prisoners' ability to file such claims. It is within the context of this state procedural framework that counsel's ineffectiveness in an initial-review collateral proceeding qualifies as cause for a procedural default.

*Id.* at 1318 (emphasis added). Federal rules relating to procedural default reflect "an *equitable judgment* that only where a prisoner is impeded or obstructed in complying with the State's established procedures will a federal habeas court excuse the prisoner from the usual sanction of default." *Id*. (emphasis added). Under the circumstances addressed in *Martinez*, it is the State's procedural framework that creates an impediment external to the defense, and consequently, it diminishes the State's ability to assert a procedural default in the later federal proceedings. *Id*.

> Allowing a federal habeas court to hear a claim of ineffective assistance of trial counsel when an attorney's errors (or the absence of an attorney) caused a procedural default acknowledges, as an equitable matter, that the initial-review collateral proceeding, if undertaken without counsel or with ineffective counsel,

may not have been sufficient to ensure that proper consideration was given to a substantial claim.[2]

Id.  Thus, to establish cause for a defaulted IATC claim, a defendant must show either that there was no counsel appointed in state habeas proceedings or, that, if counsel was appointed, that state post-conviction counsel was "ineffective under the standards of *Strickland v. Washington*." *Id*.  The petitioner must also demonstrate that the underlying claim is "substantial," meaning that it has "some merit."  *Id*. at 1318-19 (citing *Miller-El v. Cockrell*, 537 U.S. 322 (2003)).[3]

In *Trevino v. Thaler*, 133 S. Ct. 1911 (2013), the Court revisited its holding in *Martinez*, and in doing so, the Court made clear that a defendant must have a meaningful opportunity to litigate an IATC claim in state court proceedings.  *Id*. at 1919, 1921.  Unlike Arizona, Texas did not prohibit appellants from raising IATC claims on direct appeal; however, the "structure and design" of the direct appeal system made it prohibitively difficult, and in most cases impossible, to raise an IATC claim on direct appeal.  *Id*. at 1915.  But because the "possibility" that an appellant could raise a IATC claim on direct appeal existed, at least in theory, the Fifth Circuit had held in *Ibarra* that the equitable concern in *Martinez* that at least one court be able to review these claims was not implicated and that, therefore, its exception to *Coleman* categorically did not apply to any Texas case.  *Id*. at 1916 (discussing the holding in *Ibarra v. Thaler*, 687 F.3d at

---

[2]        In fact, preserving flexibility for the states to fashion systems for addressing IATC claims was central to the Court's determination to fashion an equitable remedy, rather than a constitutional rule that "would impose the same system of appointing counsel in every State . . . ."  *Id*. at 1319.  The Court stated:

> An equitable ruling . . . permits States a variety of systems for appointing counsel in initial-review collateral proceedings.  And it permits a State to elect between appointing counsel in initial-review collateral proceedings or not asserting a procedural default and raising a defense on the merits in federal habeas proceedings.

*Id*. at 1319-20.

[3]        The Court's equation of the standard to show a "substantial" claim with the standard for a certificate of appealability, as discussed in *Miller-El*, is significant.  A petitioner need not demonstrate the substantive merits of the claim or that he would necessarily prevail on it.  *Miller-El*, 537 U.S. at 337-38.

227).  The Court effectively held that *Ibarra* undermined the equitable nature of its holding in *Martinez*.  The Court identified three premises underlying *Martinez*.  First, the importance of the right to counsel as a cornerstone in our adversarial system of justice set it apart from other rights.  *Id*. at 1917.  Second, the systemic difficulties of raising most IATC claims on direct appeal caused many states to remove them from the direct appeals process, in which ineffective assistance of direct appeal counsel could constitute cause for default, and channel them into post-conviction proceedings in which counsel was not constitutionally guaranteed.  *Id*. at 1917-18.  Third, because of this circumstance in which IATC claims are routed to habeas, "a lawyer's failure to raise an [IATC] claim during initial-review collateral proceedings, could (were *Coleman* read broadly) deprive a defendant of any review of that claim at all."  *Id*. at 1918.

The Court believed this was no less true in Texas than it was in Arizona.  Given the systemic difficulties in raising IATC claims on direct appeal, primarily because the short and impractical deadlines during the post-trial period make it virtually impossible to expand the record with the evidence needed to prove ineffective assistance and the lack of reasonable alternative procedures to expand the record during appeal and because the Court of Criminal Appeals systematically discouraged litigants from attempting to raise IATC claims on direct appeal, the Court held that Texas effectively routed IATC claims to habeas proceedings.  *Id*. at 1920.  The Court posed a rhetorical question to demonstrate the unfairness of depriving Texas litigants of the benefit of *Martinez*:

> How could federal law deny defendants the benefit of *Martinez* solely because of the existence of a theoretically available procedural alternative, namely direct appellate review, that Texas procedures render so difficult, and in the typical case all but impossible, to use successfully, and which Texas courts so strongly discourage defendant's from using?

*Id.*  Thus, *Trevino* teaches that *Martinez*'s equitable rule is flexible enough to prevent manifest injustices occurring in Texas, just as it did in Arizona.

*Trevino* and *Martinez* leave no doubt that the rule from *Coleman*, that attorney error can never provide cause and prejudice to excuse procedural default of a post-conviction claim, is subject to a narrow, yet significant, exception:  error by state post-conviction counsel which rises to the level of a constitutional inadequacy of counsel under *Strickland v. Washington*, 486 U.S. 668 (1984), may provide cause and prejudice for a defaulted claim of ineffective assistance of trial counsel.

    2.    There is no adequate remedy of law in the state courts which would require the case be remanded to the state courts in order to exhaust the claims.

            a.    Even when confronted with the holdings in *Trevino* and *Martinez* and the fact that these cases would allow *de novo* review of IATC claims in federal court, the Texas Court of Criminal Appeals has expressly refused to recognize a similar equitable exception to the successor writ bar in Section 5 of Article 11.071 of the Texas Code of Criminal Procedure.

The Court of Criminal Appeals, in the wake of the *Trevino* and *Martinez* decisions, has expressly rejected the adoption of ineffective assistance of state post-conviction counsel as an exception to the successor petition bar under Article 11.071, § 5.  *See Ex parte McCarthy*, No. WR-50,360-04, 2013 Tex. Crim. App. Unpub. LEXIS 731 (Tex.Crim.App., Jun. 24, 2013) (not designated for publication).  In a series of cases decided during *Martinez*'s pendency before the Supreme Court and subsequent to its issuance, the Court of Criminal Appeals routinely and consistently denied stays in light of *Martinez*.  *See Ex parte Thurmond*, WR 62,425-02, 2012 Tex. Crim. App. Unpub. LEXIS 146 (Tex.Crim.App., Feb. 29, 2012) (not designated for publication); *Ex parte Hernandez*, No. WR-62,840-02, 2012 Tex. Crim. App. Unpub. LEXIS 311 (Tex.Crim.App. Mar. 21, 2012) (not designated for publication); *Ex parte Adams*, No. WR 68,066-03, 2012 Tex. Crim. App. Unpub. LEXIS 118 (Tex.Crim.App., Feb. 15, 2012) (not

designated for publication); *Ex parte Balentine*, WR-54,071-03, 2011 Tex. Crim. App. Unpub. LEXIS 401 (Tex.Crim.App., Jun. 14, 2011) (not designated for publication).  In *Hernandez*, the court found a subsequent writ application to be barred by Section 5 and refused to consider the underlying merits of the IATC claim.  *Hernandez*, 2012 Tex. Crim. App. Unpub. LEXIS, at *2. The court rejected the petitioner's claim that it should fashion an exception to Section 5 in light of *Martinez*.  *Id.* at *6.   Concurring in the dismissal of the writ application, Judge Price sympathized with the contention that *Martinez* prompted an equitable exception to Section 5, but concluded it was a matter for the Texas Legislature and not the court.  *Id.* at *5-*6 (Price, J., concurring).

Since *Trevino*, the Court of Criminal Appeals has clearly indicated it is unreceptive to any argument that *Trevino* and *Martinez* justify any exception to the Section 5 bar.  In *McCarthy*, the Court dismissed as an abuse of the writ a successor application raising an IATC claim in which the petitioner relied on *Martinez/Trevino* to establish an exception to Section 5.  *Ex parte McCarthy*, 2013 Tex. Crim. App. Unpub. LEXIS, at *2.    It is apparent that a majority of judges on the court reject creating a exception to Section 5 for  *Martinez/Trevino*.  Only two judges dissented to the dismissal, arguing that the Court should accept *Martinez* and *Trevino* as providing an exception for defaulted IATC claims.  *Id.* at *21-*40 (Alcala, J., joined by Johnson, J., dissenting).  Two other judges concurred in the dismissal, but they indicated that the facts of the case did not make a good vehicle for reassessing the court's Section 5 jurisprudence.  *Id.* at *3-*5 (Price, J., joined by Myers, J., concurring).  Judge Cochran filed a lengthy concurrence, opining that the solution for the inequities established by Section 5 rested with the Texas

Legislature and concluding that the Court lacked the authority to craft a judicial exception to

Section 5.[4]  *Id*. at *5-*20 (Cochran, J., concurring).

_____

[4]        Judge Cochran's critique of *Martinez* and *Trevino*, to the extent these cases nudged states to provide counsel in post-conviction proceedings or to review otherwise defaulted IATC claims, was strident.  Nevertheless, she clearly believed it was beyond the court's power to fashion any exception to Section 5.

> Article 11.071 § 5 prohibits an applicant from raising a claim in a subsequent application that she could have raised in a previous application.  If we are to follow our clear and explicit Texas statute, we are required to dismiss this application.

> I respectfully disagree with the dissent that all we are doing is making "[t]he sound of crickets." *This Court does not have the inherent authority to commit the State of Texas to . . . ignor[e] or alter[] our entire statutory post-conviction collateral review system simply to avoid full federal review of our state convictions.*  The strictures and procedures of the congressionally enacted federal "deferential review" mechanism of AEDPA were essentially overruled in *Martinez v. Ryan*, and *Trevino v. Thaler*.  *But it is federal courts, not state courts, that must implement this new de novo review*.

>                                       ***

> The Supreme Court's decision in *Trevino* is not based upon the federal Constitution, but rather the Court's sense of "equity."  Its decision affects the application of a federal statute, AEDPA, to federal courts.  Its decision affects the authority of federal courts.  Its decision does not address the authority of state courts.  The implicit suggestion in *Trevino* is that states should provide lawyers to indigent inmates for filing writs of habeas corpus alleging that their state-provided trial lawyers were ineffective.  That is an extremely onerous financial burden on the states.  But even when states do provide free representation for habeas review, federal courts will still be required to review the effectiveness of the state-provided habeas attorney and will do so even if the state has both provided an attorney for habeas claims and permitted a second round of habeas review to address the claim that the first habeas attorney provided ineffective assistance of counsel.

>                                       ***

> *The Solicitor General of Texas has suggested that this Court should have an opportunity to reevaluate its prior rulings and procedures and address the merits of claims brought in subsequent writs despite our Texas statutes barring such review.  Unlike the United States Supreme Court, we cannot create "equitable" exceptions to our habeas statutes.  We must follow current statutory law*.  I agree with the Solicitor General, however, that the Texas Legislature may wish to address the issues and concerns that the *Trevino* case raises.  If the Legislature deems statutory changes appropriate, it must allocate the financial resources necessary to support any such changes to the current law.

> Conclusion

> The Texas Legislature has many choices.  This Court has few choices and no authority to implement drastic changes that would seriously affect the financial stability of the Texas criminal-justice system.  Furthermore, unlike this Court, the various state legislatures may work in tandem with Congress to enact appropriate state and federal legislation that ensures fairness to those state-court inmates who may have a legitimate claim of ineffective assistance of trial counsel while ensuring comity, finality, and the preservation of scarce state resources.  I do not desire "a federal take-over," but I recognize that we do not have the authority to commit the taxpayers of Texas to unanticipated, unapproved, and unfunded mandates as suggested by the applicant in this case.

In light *McCarthy*, it is apparent that a firm plurality, if not a majority,[5] of the judges on the Court of Criminal Appeals have rejected an equitable exception to the Section 5 bar that would permit a merits consideration of a claim that had been defaulted by ineffective assistance of state post-conviction counsel.  As a result, the court knowingly has placed finality interests ahead of any concerns about comity and federalism occasioned by *de novo* federal review. Accordingly, the Court of Criminal Appeals has retained its *Graves* decision and has foreclosed any relief based on state successive petitions for habeas corpus in which deficient representation by state post-conviction counsel is the cause for the failure to raise the claim previously.  As a result, the interests of judicial economy will be best served if the case remains in this Court, where it can consider whether Mr. Ochoa can establish both cause and prejudice under *Martinez* and *Trevino* and ultimately the underlying merits of the constitutional claims.

> b.    Because of the Texas Court of Criminal Appeals's rejection of *Trevino* and *Martinez* as an equitable basis to justify procedural default, returning to the state court to exhaust any defaulted claims would be futile.

The exhaustion doctrine does not require that the case be returned to state court.  Though principles of comity typically require a claim be exhausted in state court before its presentation in federal court, this rule is not inflexible.  Exhaustion is a matter of comity between the state and federal courts; it is not a jurisdictional requirement.  *See Anderson v. Johnson*, 338 F.3d 382, 386 (5th Cir. 2003).  A federal court need not remand an unexhausted claim to the state court if it would be "futile" to do so; this is the "futility doctrine," which provides an exception to the general requirement for exhaustion of a claim in state court.  The Fifth Circuit has long

---

*Id*. at *6, *17-*20 (footnotes omitted) (emphasis added).

[5]    Judge Keasler did not participate in the *McCarthy* decision; however, it is doubtful that he would be any more receptive to an exception to Section 5 than the other judges rejecting such an exception, particularly in light of the fact that he apparently was in the majority in *Thurmond*, *Hernandez*, *Adams*, and *Balentine* in which the court refused to stay executions in light of *Martinez*.

recognized the "futility doctrine," and it has survived the enactment of AEDPA.  *See Hartfield v. Thaler*, 699 F.3d 394, 403 (5th Cir. 2012); *Morris v. Dretke*, 413 F.3d 484, 492 (5th Cir. 2005); *Dilworth v. Johnson*, 215 F.3d 497, 501 n.4 (5th Cir. 2000); *Fisher v. Texas*, 169 F.3d 295, 303 (5th Cir. 1999); *Graham v. Johnson*, 94 F.3d 958, 969 (5th Cir. 1996); *Carter v. Estelle*, 677 F.2d 427, 449 (5th Cir. 1982).  Exhaustion is based on the premise that state remedies are available, adequate, and effective to vindicate a petitioner's federal constitutional rights.  *Shelton v. Heard*, 696 F.2d 1127, 1128 (5th Cir. 1983).  "When those state procedures become ineffective or inadequate, the foundation of the exhaustion requirement is undercut and the federal courts may take action."  *Id.*

In order to compel a remand to the state courts, the state court remedies must be real, as opposed to merely theoretical.  It is not sufficient that at some point in the future the state courts may provide a remedy if the remedy is unavailable at the present time.   *Carter v. Estelle*, 677 F.2d at 449.  Remand of a case to the state courts to exhaust the claim is excused where it would be futile to do so because the state court's attitude toward the claim is a "foregone conclusion." *Id.* at 446.  "The futility exception applies when, as here, the highest state court has recently decided the same legal question adversely to the petitioner."  *Fisher*, 169 F.3d at 303.  *See also Dilworth*, 215 F.3d 501 n.4 (citing *Fisher*).

There is little question, in light of the Court of Criminal Appeals recent rejection of the successive state writ petition in *McCarthy* that the state court does not recognize the equitable exception to procedural default created by the Supreme Court in *Martinez* and *Trevino*.  Thus, were Mr. Ochoa's unexhausted claims to be remanded to state court for exhaustion, regardless of whether they met the criteria for cause and prejudice for federal review under *Martinez* and *Trevino*, the state court would still find them barred under Section 5 and, thus, procedurally

defaulted.  Under these circumstances, remand does not serve the purposes of comity because the state court categorically will not consider the merits of the claims.  For this reason, the Court should retain the case to decide whether the unexhausted claims meet the criteria under *Martinez* and *Trevino* rather than remanding for the hollow endeavor of obtaining state court review over his claims in a successor petition.

This approach is supported by Fifth Circuit precedent.  In *Cantu v. Thaler*, 682 F.3d 1053 (5th Cir. 2012), upon having the case remanded by the Supreme Court following *Martinez*, the court ordered that the case "be remanded to the district court so that the district court [could] decide *in the first instance* the impact of *Martinez v. Ryan* on [petitioner's] contention that he had cause for his procedural default."  *Cantu v. Thaler*, 682 F.3d 1053, 1054 (5th Cir. 2012) (emphasis added).[6]  In a post-*Trevino* case, the Fifth Circuit also concluded that remand to the federal district court was appropriate for a determination of cause and prejudice.  *Ibarra v. Thaler*, ___ F.3d ___, No. 11-70031 (5th Cir., Jul. 17, 2013); *id.* (Graves, J., concurring and dissenting) ("I agree that the Supreme Court's recent decision in *Trevino v. Thaler*, . . . requires us to vacate our prior decision, . . . and remand to the district court for the appropriate application of *Martinez v. Ryan*, 132 S. Ct. 1309 (2012).  The trial court should, in the first instance, be allowed to apply *Martinez* in accordance with *Trevino*.") (footnote omitted).

Accordingly this Court is the appropriate forum under *Martinez* and *Trevino* to determine whether Mr. Ochoa's unexhausted claims meet the exceptions crafted in those cases to entitle him to federal review.

---

[6]     *Cantu* is presently pending before the District Court for the Eastern District of Texas–Sherman Division. *See Cantu v. Thaler*, No. 2:06-CV-166, Docket (PACER).

B.     Further factual development is necessary in order for this Court to apply *Martinez* and *Trevino* to Mr. Ochoa's Case.

      *Martinez* and *Trevino* create an avenue to establish cause and prejudice, affording a petitioner a narrow opportunity to present the merits of his unexhausted constitutional claims to federal court for *de novo* consideration.  But the question of cause and prejudice is an inherently fact-bound and context-specific issue, one that cannot be addressed in the abstract and one that cannot be approached under the "deferential" approach of AEDPA record-based review.

      1.     The *Martinez* inquiry is a fact-based review of the pertinent evidence of the underlying constitutional claim and of state post-conviction counsel's representation, and it requires an adequate opportunity to present evidence in the federal district court.

      The *Martinez* inquiry requires the establishment of factual grounds to support a showing of cause and prejudice.  The issue of cause and prejudice is a federal question, and one that is inherently contextual and fact bound.  *See Coleman,* 501 U.S. at 750; *Jenkins v. Anderson*, 447 U.S. 231, 234-35 n.1 (1980) (holding that "application of the 'cause'-and-'prejudice' standard may turn on factual findings that should be made by a district court"); *Barrientes v. Johnson*, 221 F.3d 741, 768 (5th Cir. 2000) (noting question of cause was a fact-bound question and remanding to the district court for an evidentiary hearing); *Barnard v. Collins*, 13 F.3d 871, 878 (5th Cir. 1994) (holding district court could not dismiss successive writ on failure to show cause and prejudice without first holding an evidentiary hearing on whether cause and prejudice could be established).  *Cf. Humphrey v.* Cady, 405 U.S. 504, 517 (1972) (concluding that an evidentiary hearing was necessary to determine whether habeas petitioner could establish exception to exhaustion requirement under "deliberate bypass").

      In this vein, *Martinez* establishes two criteria necessary to demonstrate cause and prejudice as a predicate to consideration of a defaulted claim in federal court.  A petitioner must

16

establish: (1) the potentially substantive merits of the underlying claim and (2) constitutionally defective state post-conviction counsel. *See Martinez v. Ryan*, 132 S. Ct. at 1318-19. These are inextricably fact-bound questions, both with respect to the potential merits of the underlying claim, *id*. ("[A] prisoner must . . . demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit"), as well as the question of whether state post-conviction counsel rendered ineffective assistance of counsel. *See id*. at 1317 ("Claims of ineffective assistance of counsel at trial often require investigative work and an understanding of trial strategy."). These issues can only be meaningfully developed in an evidentiary hearing in this court because they are not evident on the face of the post-conviction record. *See Massaro v. United States*, 538 U.S. 500, 506 (2003) (concluding that the district court is the "the forum best suited to developing the facts necessary to determining the adequacy of representation . . . ."); *United States v. Rivas-Lopez*, 678 F.3d 353, 358 (5th Cir. 2012) ("To determine both deficiency and prejudice, we would benefit from additional facts that should be determined at an evidentiary hearing in the district court."); *United States v. Hayes*, 532 F.3d 349, 355 (5th Cir. 2008) ("Because the district court did not hold an evidentiary hearing, we would be engaging in speculation, preventing adequate review of the district court's judgment as to whether defense counsel performed unreasonably under *Strickland*."); *United States v. Culverhouse*, 507 F.3d 888, 898 (5th Cir. 2007) ("Counsel may have had valid reasons not to raise the objection. Without any evidence as to counsel's strategy, we refuse to make hindsight guesses on the matter."); *Barrientes v. Johnson*, 221 F.3d at 768-69 (remanding for evidentiary hearing on cause and prejudice because "the issue of cause c[ould not] be adequately resolved on the record before [the Court]"); *Blackmon v. Scott*, 22 F.3d 560, 566 (5th Cir. 1994) ("No state court findings were made with respect to this aspect of

17

Blackmon's claim.  Remand is necessary for an evidentiary hearing in order to evaluate more properly Blackmon's due process claim as it relates to inadequate access, and to determine whether prejudice existed.").

Accordingly, the relevant venue to determine the question of cause and prejudice is this Court and the nature of the inquiry requires a hearing in which to present the specific facts underlying the claims in order to demonstrate their substantive merit and the facts relating to state post-conviction counsel's representation.  None of these facts are present in the state post-conviction record before this Court.

    2.    Because of pre-*Trevino* case-law, Mr. Ochoa has not yet been provided the full opportunity to investigate, develop, and present the relevant evidence under a *Martinez* inquiry.

It would be inconsistent with *Martinez* and *Trevino* to compel Mr. Ochoa to make the requisite showing without providing a meaningful opportunity to investigate and develop the facts essential to the inquiry.  *Trevino* did not just simply apply *Martinez*'s cause and prejudice rule in Texas.  The Court also focused on the meaningfulness of the opportunity to litigate ineffective assistance of trial counsel claims.   Because the fundamental and bedrock right to counsel could escape any opportunity for vindication at any stage of the post-conviction proceedings, the Court in *Martinez* held that equity required a forum in which these claims could be raised and heard.  But, as *Trevino* has made clear, this opportunity cannot be a mere formality; instead, it has to be meaningful—a standard for which the Texas direct appeal system fell well short.  *Trevino v. Thaler*, 133 S. Ct. at 1921 ("[W]e believe that the Texas procedural system—as a matter of its structure, design, and operation—does not offer most defendants a meaningful opportunity to present a claim of ineffective assistance of trial counsel on direct appeal."); *id*. ("Thus, for present purposes, a distinction between (1) a State that denies permission to raise a

claim on direct appeal and (2) a State that in theory grants permission but, as a matter of procedural design and systemic operation, denies a meaningful opportunity to do so is a distinction without a difference.").  By allowing a defendant to raise what would otherwise be a defaulted IATC claim in federal court, the Court in *Martinez* and *Trevino* inescapably believed that the federal judicial system would provide a meaningful forum in which a defendant could litigate these claims.[7]  The Court surely contemplated that a habeas petitioner in federal court would be provided the resources to develop and raise a substantial IATC claim, as well as to prove cause and prejudice under *Martinez* and *Trevino*, and would be provided a forum, through a hearing, to fully litigate the claim.

To date, Mr. Ochoa has been limited in his ability to develop and present facts in support of the cause and prejudice inquiry under *Martinez*.  Under pre-*Trevino* case law, Mr. Ochoa was not entitled to investigative or expert assistance to develop the relevant facts, *Riley v. Dretke*, 362 F.3d 302, 307-08 (5th Cir. 2004), nor was he entitled to a hearing in which to establish his unexhausted claims based on deficiencies of post-conviction counsel.[8]  *Martinez v. Johnson*, 255 F.3d 229, 240-41 (5th Cir. 2001) (holding deficient counsel could not provide cause for procedurally defaulted claims).  *Martinez* and *Trevino*, however, work a sea-change on the Fifth Circuit precedent that formerly deprived Mr. Ochoa of the opportunity to establish cause and prejudice in this Court.  The cases, by providing an avenue to establish cause and prejudice based

---

[7]  This is all the more true in the wake of *McCarthy*, in which the Court of Criminal Appeals, when presented with the opportunity to provide a meaningful forum in state court, categorically rejected providing any exceptions to its rule that ineffective assistance of state habeas counsel cannot ever satisfy Section 5.

[8]  In fact, Mr. Ochoa pursued the only legally available option that was then open to him in which he could conceivably develop the factual basis of his claims and potentially overcome both exhaustion and procedural default—he sought a stay and abeyance of the case under *Rhines* in order to return to state court.  As has been demonstrated, the subsequent developments that apparently close that avenue to him at the same time open up new opportunities to accomplish the same thing.  However, the work of fully developing the claims remains to be done.

on constitutionally deficient post-conviction counsel's representation, also portend a change in resources available to develop such claims in the federal district court *in the first instance*.

A court should provide a meaningful opportunity for investigation and discovery when factual development is necessary to present his claim to the court. *See Teague v. Scott*, 60 F.3d 1167, 1172 (5th Cir. 1990); *East v. Scott*, 55 F.3d 996, 1001-02 (5th Cir. 1995). Because of the factual and procedural complexity of capital post-conviction cases, factual development is often critical to the development and presentation of claims to the federal court. *McFarland v. Scott*, 512 U.S. 849, 855 (1994). Consistent with the need to investigate and develop potential claims, a petitioner need only make a colorable showing of a claim in order to be entitled to investigative assistance. *In re Hearn*, 376 F.3d 447, 454-55 (5th Cir. 2004). In *Patterson v. Johnson*, 3:99-CV-0808-G, 2000 U.S. Dist. LEXIS 12694 (N.D. Tex., Aug. 31, 2000) (not designated for publication), the court, following *McFarland*, recognized that investigative and expert funding was necessary not simply to develop the substantive merits of a claim, but also to develop the factual basis to prove cause and prejudice as well:

> Even if he could allege facts which, if true, would establish "cause" for the procedural default, without investigative funds at the pre-application stage, Patterson may be unable to show a constitutional violation with sufficient particularity (and perforce, would be unable to show "prejudice").
>
> \*\*\*
>
> Ultimately, the court concludes that it makes little sense to force Patterson to first try to make a good faith claim of a constitutional violation before supplying him with the resources to investigate this claim's factual basis and validity. *This is especially true of a claim that may have been procedurally defaulted in the state post-conviction forum, for which Patterson must also allege and prove not just "cause" for the procedural default, but "prejudice" as well. If Patterson is to make the requisite allegation of constitutional deficiency and consequent "prejudice" in his petition, he should be allowed to investigate and develop the full extent of the mitigating evidence that trial counsel allegedly failed to investigate and produce at his trial*. It is for this purpose that he seeks federal investigatory funds.

20

*Id.* at \*5-\*6 (emphasis added).  Finally, though *McFarland* and *Patterson* addressed pre-petition funding requests, it should not matter that in this case a petition has been filed and is pending before the Court.  As has been demonstrated, on May 28, 2013, the date when the Supreme Court decided *Trevino*, the law applicable in this case dramatically changed, and Mr. Ochoa should be allowed to take full advantage of this change, including making requests for full factual development and the opportunity to present the resulting evidence in an evidentiary hearing.  In *Hearn*, the Fifth Circuit rejected an argument that funding under 21 U.S.C. § 848(q)(7), now codified in 18 U.S.C. § 3599(f), and *McFarland* only applied to the pre-petition stage.  *In re Hearn*, 376 F.3d at 452.  In discussing the underlying statute, the court held:  "On their face, these statutes grant indigent capital prisoners a mandatory right to qualified legal counsel and reasonably necessary legal services in all federal post-conviction proceedings.  Needless to say, this is not language of limitation."  *Id.* at 451.

The court's grant of investigative funding in *Patteson* neatly dovetails with the holding in *Martinez*.  *Martinez*, in fact, provides additional support for the court's reasoning in *Patterson*. Because attorney error, if constitutionally deficient under *Strickland*, can now provide cause and prejudice to excuse procedural default for claims, funding to develop the factual basis to make a showing under a *Martinez* inquiry is now reasonably necessary for potentially qualifying claims. Mr. Ochoa anticipates filing motions for discovery and investigative assistance under 18 U.S.C. § 3559(f) for the purposes of meeting the elements of proof required under *Martinez*.   Any such motions and requests will be filed under separate cover and make the required showings.

3.      Mr. Ochoa has numerous unexhausted claims for which he seeks to demonstrate cause and prejudice under *Martinez* and for which he requires an adequate opportunity to develop facts that will enable him to make the requisite showing.

Mr. Ochoa has raised several post-conviction claims that were unexhausted in the state court and which Respondent contends are procedurally defaulted and barred from review. *See Respondent Thaler's Answer with Brief in Support*, pp. 24-28, 45-46, 55-57, 76-81, 86-87, 91-92, 95, 122-23. These claims are as follows:

Claim Number One:

Mr. Ochoa received ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution when his trial attorneys failed to investigate and to present significant mitigation evidence at the punishment hearing.

Claim Number Two:

Mr. Ochoa received ineffective assistance of counsel during the voir dire of his capital murder trial in violation of the Sixth and Fourteenth Amendments to the United States Constitution.
Claim Number Three:

Mr. Ochoa's trial counsel were rendered ineffective during the voir dire of his capital murder trial in violation of the Sixth and Fourteenth Amendments to the United States Constitution.

Claim Number Four:

Because Mr. Ochoa was deprived of the right to an adequate voir dire, his right to be tried by a fair and impartial jury under the Sixth and Fourteenth Amendments to the United States Constitution was denied.

Claim Number Five:

Mr. Ochoa received ineffective assistance of counsel on appeal because his appellate attorney failed to raise the voir dire issues on appeal.

Claim Number Seven:

Mr. Ochoa received ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution when his trial counsel failed to make proper and timely objections to the trial court's ruling excluding important rebuttal evidence.

Claim Number Eight:

The trial court's exclusion of important rebuttal evidence denied Mr. Ochoa the right to present a fair defense contrary to the Sixth and Fourteenth Amendments to the United States Constitution.

Claim Number Nine:

Mr. Ochoa received ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution when his trial counsel failed to make proper and timely objections to the trial court's ruling excluding important rebuttal evidence.

Claim Number Ten:

Mr. Ochoa was deprived of his right to due process of law under the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution by the State's presentation of unreliable psychiatric rebuttal testimony by Dr. Richard Coons.

Claim Number Eleven:

Mr. Ochoa was deprived of his right to the effective assistance of counsel under the Sixth and Fourteenth Amendments to the United States Constitution because of his appellate counsel's failure to present the issue concerning the trial court's erroneous admission of Dr. Coons's unconstitutionally unreliable testimony on direct appeal.

Claim Number  Twelve:

Because Mr. Ochoa was shackled during the punishment phase of his capital murder trial, his right to due process under the Fourteenth Amendment to the United States Constitution was denied.

Claim Number  Thirteen:

Mr. Ochoa received ineffective assistance of counsel during the punishment phase of his capital murder trial in violation of the Sixth and Fourteenth Amendments to the United States Constitution when his trial counsel failed to object to the trial court's decision to place Mr. Ochoa in shackles.

*Petition for a Writ of Habeas Corpus*, at 46-49.

The foregoing claims fall within the core of cases addressed by *Martinez*.  Mr. Ochoa has raised diverse claims relating to the adequacy of trial counsels' sentencing phase investigation, trial counsels' failure to inquire into jurors' ability to consider relevant evidence, trial counsels' failure to preserve error relating to limitations upon voir dire, trial counsels' failure to preserve error following the exclusion of essential rebuttal evidence to the testimony of the decedent's fear of Mr. Ochoa, trial counsels' failure to object to Mr. Ochoa's having been visibly shackled during portions of trial, and trial counsels' failure to object to scientifically unreliable testimony relating to future dangerousness, as well as claims relating to appellate counsel's failure to raise significant issues relating to limitations upon voir dire and to the State's use of scientifically unreliable testimony.

Thus, each unexhausted issue involves a substantive violation of law which has either been framed in the context of or can be re-framed in the context of ineffective assistance of trial counsel or of appellate counsel.[9]  The issue of procedural default and non-exhaustion for each

---

[9]     *Martinez* has been applied in the context of ineffective assistance of appellate counsel.  *See Rodriguez v. Padula*, No. 12-6392, 2012 U.S. App. LEXIS 20405 (4th Cir., Sept. 28, 2012); *Collazo v. Curley*, No. 11-6 Erie, 2012 U.S. Dist. LEXIS 77841 (W.D. Penn., Jun. 5, 2012).   Insofar as state post-conviction relief is the *only* opportunity to raise challenges to the representation of appellate counsel, *Martinez* and *Trevino* logically extend to state post-conviction counsel's failure to raise appellate counsel's own waiver of meritorious claims where the waiver results from constitutionally deficient appellate counsel.  The right to effective assistance of counsel on direct appeal is likewise an important and fundamental right similar to the right to effective assistance of trial counsel.  *See Evitts v. Lucey*, 469 U.S. 387, 395-96 (1985) ("To prosecute the appeal, a criminal appellant must face an adversary proceeding that—like a trial—is governed by intricate rules that to a layperson would be hopelessly forbidding.  An unrepresented appellant—like an unrepresented defendant at trial—is unable to protect the vital interests at stake.").  *See also Halbert v. Michigan*, 545 U.S. at 616-24; *Douglas v. California*, 372 U.S. 353, 357-58 (1963).

claim can be addressed under the framework provided under *Martinez*.  Notably, the state appellate and habeas record contains no testimony or other evidence relating to trial or appellate counsel's  reasoning process in either committing the acts or omissions complained of in relation to each of the claims.  For this reason, one of the key considerations of the "merits," *e.g.*, whether Mr. Ochoa received ineffective assistance, simply cannot be resolved given the record before the Court.  What is more, aside from the question of deficient representation at the trial and appellate level, the substantive merits of the underlying claims on some of the issues have not been fully developed.  For example, Mr. Ochoa's *Wiggins*[10] claim has not been fully developed, nor has the claim relating to the methodological unreliability of the testimony relating to Dr. Coons's opinion on future dangerousness.  Proof relating to these matters are integral to the elements of proof under a *Martinez* inquiry, but cannot be sustained on the face of the record before the Court.

Similarly, the record before this Court, while suggesting constitutionally deficient representation by state post-conviction counsel, does not provide this Court a meaningful opportunity to fully evaluate the reasonableness of post-conviction counsel's investigation of cognizable post-conviction issues or his decision-making process in the development of the claims for state court-litigation.  Presently, given the state of the record, this Court is in essentially the same position as an appellate court with a clam of ineffective assistance of

---

Furthermore, the perceived role of direct appeal counsel, as a constitutionally assured safeguard to vindicate violations of the United States Constitution, was important to the Supreme Court's decision to expand as an equitable matter cause and prejudice to state post-conviction proceedings for state habeas counsel's failure to raise sufficiently a substantial IATC claim.  *See Martinez v. Ryan*, 132 S. Ct. at 1316-17 ("As *Coleman* recognized, an attorney's errors during an appeal on direct review may provide cause to excuse a procedural default; for if the attorney appointed by the State to pursue the direct appeal is ineffective, the prisoner has been denied fair process and the opportunity to comply with the State's procedures and obtain an adjudication of the merits of his claims.").  *See also Trevino v. Thaler*, 133 S. Ct. at 1917-18 (discussing importance of direct appeal counsel similarly to *Martinez*).

[10]       *Wiggins v. Smith*, 539 U.S. 510 (2003).

counsel—it lacks the necessary evidentiary development to rule upon the claim. Additional evidentiary development is necessary before this Court can evaluate state post-conviction counsel's conduct.

## IV.  Conclusion

This Court's resolution of Mr. Ochoa's unexhausted claims is governed by *Martinez* and *Trevino*.  Mr. Ochoa has presented the Court with numerous unexhausted but substantial claims, each of which are defaulted as a result of trial or appellate counsel's deficient representation, and which are unexhausted and procedurally defaulted resulting from state post-conviction counsel's own deficient representation.  Consistent with *Martinez* and *Trevino*, this Court should grant an evidentiary hearing in order to provide Mr. Ochoa an opportunity to make a showing of cause and prejudice under *Martinez*.  And as a predicate to the hearing, this Court should permit a reasonable opportunity to expand the record and to investigate and develop the pertinent facts to the *Martinez* inquiry.

WHEREFORE, PREMISES CONSIDERED, Petitioner, Abel Revill Ochoa, respectfully requests that the Court

(1) Set a litigation schedule to permit Mr. Ochoa to file requests for ancillary assistance under 18 U.S.C. § 3599(f) within the next 30 days;

(2) Permit Mr. Ochoa to conduct discovery consistent with the Habeas Rules up until a reasonable period of time prior to an evidentiary hearing;

(3) Defer an evidentiary hearing on this matter for at least 180 days in order to permit Mr. Ochoa time to investigate the grounds to establish cause and prejudice;

(4) Grant an evidentiary hearing on this matter in order for Mr. Ochoa to make his showing of cause and prejudice under *Martinez*; and

(5) Grant any further relief to which Mr. Ochoa may be entitled.

Respectfully submitted,

ALEXANDER L. CALHOUN
Attorney at Law
Texas Bar No. 00787187
4301 W. William Cannon Dr.  Ste. B-150
        # 260
Austin, Texas 78749
(512) 420-8850 (telephone)
(512) 233-5946 (facsimile)
(512) 731-731-3159 (cell)
alcalhoun@earthlink.net

By:  /s/ Alexander L. Calhoun
        Alexander L. Calhoun
        Member of the Bar of this Court

PAUL E. MANSUR
Texas Defender Service
Senior Staff Attorney
Texas Bar No. 00796078
P.O. Box 1300
Denver City, Texas 79323
(806) 215-1025 (telephone)
(806) 592-9136 (facsimile)
pmansur@midtech.net

By:  /s/ Paul E. Mansur
        Paul E. Mansur
        Member of the Bar of this Court

        Attorneys for Petitioner,
        Abel Revill Ochoa

*Certificate of Service*

I hereby certify that on July 31, 2013, I electronically filed the foregoing brief with the Clerk of the Court for the U.S. District Court, Northern District of Texas. The ECF system sent a "Notice of Electronic Filing" to counsel for Respondent:

Greg Abbott
attn:  Stephen Hoffman
Texas Attorney General
Postconviction Litigation Division
P.O. Box 12548
Austin, Texas 78711-2548


<u>/s/ Paul E. Mansur</u>
Paul E. Mansur