IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS,
DALLAS DIVISION

| | | |
|---|---|---|
| ABEL REVILL OCHOA, | § § § | |
| Petitioner, | § § § | |
| -v- | § § § § § | NO.  3:09-cv-02277 |
| WILLIAM STEPHENS, Director, Texas Department of Criminal Justice, Correctional Institutions Division | § § § § | CAPITAL CASE |
| Respondent. | § | |

**PETITIONER'S REPLY BRIEF TO RESPONDENT'S
SUPPLEMENTAL BRIEF CONCERNING THE EFFECT
OF *TREVINO* AND *MARTINEZ* TO THIS CASE**

TO THE HONORABLE JUDGE OF THIS COURT:

NOW COMES Petitioner, Abel Revill Ochoa (Mr. Ochoa), and files this reply to Respondent's supplemental brief concerning the effect of *Trevino v. Thaler*, 133 S. Ct. 3980 (2013), and *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), to this case.  In support, Mr. Ochoa would show the Court the following:

In accordance with a scheduling order entered by this Court, on July 31, 2013, the parties filed supplemental briefing on the effect of *Trevino* and *Martinez* to the issues in this case.[1]  Mr. Ochoa contended that further factual development was necessary in order to establish cause and prejudice in accordance with the standard set out in *Martinez*.[2]  *See Petitioner's Supplemental*

---

[1]   The Court ordered that no reply could be filed by either party without leave of court.  Mr. Ochoa is filing a motion for leave along with this reply and asks that the Court to consider the matters raised herein.

[2]   In order to show cause under *Martinez*, a petitioner must show (1) that state habeas counsel was ineffective under the standard set out in *Strickland v. Washington*, 466 U.S. 668 (1984), by showing both deficient performance

*Briefing on the Effect of* Martinez v. Ryan *and* Trevino v. Thaler *on the Issues in this Case*, at 16-26.  (Docket No. 44)  Respondent contended that further factual development would be futile and should not be allowed for two reasons:  (1) because Mr. Ochoa would not be entitled to an evidentiary hearing under 28 U.S.C. § 2254(e)(2), the Court should not permit him to develop and present evidence on the underlying IATC claims, and (2) because this Court can simply reject the *Martinez* issue on the record before it.[3]  *See Respondent Stephens' Supplemental Brief*, passim.  (Docket No. 43)  Respondent is wrong on both counts.

    I.    This Court should not summarily dismiss Mr. Ochoa's underlying claims without allowing him to develop his IATC claims and show cause for defaulting them.

The performance of two different lawyers is at issue in this case.  First, the Court will need to evaluate the effectiveness of Mr. Ochoa's trial counsel for the purposes of deciding the underlying IATC claims.  Second, the Court will need to evaluate the effectiveness of his state habeas attorney for the purpose of deciding whether Mr. Ochoa has cause to excuse the default of the IATC claim under *Martinez*.  Whether Mr. Ochoa should be afforded the opportunity to develop evidence in support of those positions is controlled by *McFarland v. Scott*, 512 U.S. 849 (1994), and 18 U.S.C. § 3599(f).  *McFarland* emphasized that "the right to counsel necessarily includes the right for that counsel meaningfully to research and present a defendant's habeas claims."  *Id*. at 858.  As such, the Court, construing 21 U.S.C. § 848(q)(9), which was the precursor to 18 U.S.C. § 3599(f), recognized that the services of investigators and experts may be critical in federal habeas corpus proceedings.  *Id*. at 855.  *McFarland* stands for the proposition that a claimant in federal habeas should at least be afforded a meaningful

---

and prejudice, and (2) that the underlying ineffective assistance of trial counsel ("IATC") claim is substantial in that it has some merit.  *Martinez v. Ryan*, 132 S. Ct. at 1318-19.

[3]    This Court also ordered the parties to brief whether the Court should stay and abey the case and return it to the state court to consider the unexhausted claims in the first instance.  The parties agree that the case should not be returned to state court, though for different reasons.

opportunity, through appointed counsel and necessary ancillary services, to develop and present claims for relief to the federal court.

Respondent asks this Court to short-circuit this process, arguing that the record, as it stands now before the Court, conclusively establishes that there is no way forward, through any conceivable evidentiary development, in which Mr. Ochoa could establish the entitlement to relief on any of his underlying claims. *See Respondent Stephens' Supplemental Brief*, at 5-6 (citing *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007), for proposition that AEDPA's deferential standards apply in decision to hold evidentiary hearing); *see also id*. at 10-11, 13 (asking for summary disposition of the IATC and cause questions).

Respondent ignores that Mr. Ochoa is entitled to a plenary consideration of his claims in the event that he is able to show cause and prejudice under *Martinez* and *Trevino*. "Petitioners in habeas corpus proceedings . . . are entitled to careful consideration and plenary processing of their claims including full opportunity for presentation of the relevant facts." *See Harris v. Nelson*, 394 U.S. 286, 298 (1969). *See also Blackledge v. Allison*, 431 U.S. 63, 82-83 (1977) (same) (quoting *Harris*). As a result, "where specific allegations before the court show *reason to believe* that the petitioner may, if the facts are fully developed, be able to demonstrate that he is confined illegally and is therefore entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry." *Harris*, 394 U.S. at 300 (emphasis added). Furthermore, the issue of cause is a federal question that this Court must consider *de novo* without respect to any of the restrictions in § 2254. *See Holloway v. Horn*, 355 F.3d 707, 716 (3$^\text{d}$ Cir. 2004) (holding that "it is within a District Court's authority to grant a hearing on a petitioner's ability to establish cause to excuse a procedural default" and that § 2254(e)(2) does not restrict this ability). At this point in the litigation, Mr. Ochoa is entitled to time and

resources in order to fully investigate and develop his position on both the IATC claims and cause under *Martinez*. It is premature to reach the merits of any of these issues.

> A. Respondent incorrectly argues that this Court may, at this juncture and without fact development, decide whether there was cause for defaulting the IATC claims as a matter of law.

This Court should not prematurely reach the question of state habeas counsel's effectiveness because the court must compare what state habeas counsel filed with what could have been filed. *See, e.g.*, *Draughon v. Dretke*, 427 F.3d 286, 296 (5th Cir. 2005) ("In these observations we look at what might have been, not to judge the performance of trial counsel by failures of strategic decisions reasonable when made, but to meaningfully examine whether counsels' failure to investigate was based on a 'reasonable decision' that made such an investigation 'unnecessary.'"). Respondent limits his analysis to only the first component of this inquiry and concludes (effectively begging the question this Court must decide) that "it is clear that state habeas counsel performed sufficient extra-record investigation and manufactured a competent writ application." *Respondent Stephens' Supplemental Brief*, at 11. Respondent ignores significant evidence in the record that counsel abdicated his duty to perform a comprehensive investigation into all aspects of this case. The state habeas petition reflects no scrutiny of trial counsels' investigation into guilt and punishment phase issues, it contained numerous non-cognizable record-based issues, and the few cognizable issues there were included lacked any meaningful support. *See Petitioner's Response to Respondent's Answer*, at 63-75 (setting forth evidence demonstrating state habeas counsel's woefully inept representation). Respondent does not even mention the standard of care applicable to state habeas counsel, but Respondent apparently assumes counsel must have met that standard based on nothing more than the length of the petition, the number of claims presented, and the number of hours for which he

4

sought compensation. Respondent's assertions are an inadequate basis to justify summary dismissal of the issues raised under *Martinez* and *Trevino*.

Respondent would have the Court believe that state habeas counsel was effective because he filed a somewhat lengthy brief with multiple claims. Respondent only posits numbers (53 page petition, nine issues, and 244 hours of work); conspicuously absent from his discussion is any mention of the underlying content of the evidence before the Court. In fact, there is considerable evidence in the record that indicates that state habeas counsel's representation was woefully inadequate. *Id*. Though counsel presented nine claims, a close analysis of them reveals that three are record-based, direct-appeal type claims that are not cognizable in state habeas, *see Ex parte Gardner*, 959 S.W.2d 189, 191 (Tex.Crim.App. 1996) (op. on rehearing); two are record-based claims of ineffective assistance of trial counsel; one is a multifarious claim of ineffective assistance of appellate counsel, of which none of the five subparts contains any meaningful legal analysis or factual development; and one is an assertion of cumulative prejudice. *Petitioner's Response to Respondent's Answer*, at 63-68. Of the two non-record based claims, one was an assertion that trial counsel failed to prepare Mr. Ochoa adequately for cross-examination, which was supported by Mr. Ochoa's affidavit, and the second was one alleging the systematic exclusion of Hispanics and young people from Dallas County jury pools; however, as evidenced by Respondent's answer to this claim, this claim was lacking in meaningful factual support. *Id*. In effect, state habeas counsel filed a petition containing mostly non-cognizable record-based claims or claims that lacked any meaningful factual support or legal analysis. Importantly, the state habeas petition left Mr. Ochoa with few viable options once he entered federal court.

Though state habeas counsel spent a considerable number of hours on the writ application, a review of the time reported reveals that he conducted very little extra-record investigation, which is the heart of post-conviction practice. He reported only 12.5 hours interviewing witnesses and attorneys. Furthermore, the record reveals that state habeas counsel sought no funding for investigative assistance, and he received none. He reported an additional 18.5 hours in traveling (apparently between Boerne and Livingston) and interviewing Mr. Ochoa. Assuming state habeas counsel visited with Mr. Ochoa a mere two times, it is apparent that, once his travel time is taken into account, he only had perfunctory discussions with Mr. Ochoa about this case. At the very least, the amount of time state habeas counsel spent investigating this case presents a fact issue that requires proper and full development and resolution by this Court. Nevertheless, the paucity of investigation time raises serious concerns about state habeas counsel's performance. The bulk of the 244.6 hours reported related to record review, legal research, drafting, and document preparation. *Petitioner's Response to Respondent's Answer*, Exhibit C (revealing state habeas counsel spent 213.6 hours on these activities). Contrary to Respondent's assertions, the numbers simply do not conclusively dispel concerns about state habeas counsel's performance in this case.

Respondent also argues that this Court should evaluate state habeas counsel's performance using the same standards used to review performance of appellate counsel during direct review. *Respondent Stephen's Supplemental Brief*, at 12. To establish that direct appeal counsel was ineffective, a petitioner must satisfy the same *Strickland* test; however, with respect to deficient performance, "appellate counsel . . . need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 287 (2000) (citing *Jones v. Barnes*, 463

U.S. 745 (1983)). Respondent attempts to incorporate this gloss on the *Strickland* standard into *Martinez* and *Trevino*. However, this analogy does not work. One of the basic differences between the lawyers in the two postures is the duty of the state habeas lawyer to investigate IAC claims not evidenced from the face of the record to which appellate counsel is necessarily limited. Without a thorough and meaningful investigation into the available claims, state habeas counsel is simply in no position to assess the relative strength of the available claims, much less to pick and choose which ones to present and which to omit.

Finally, other than trying to link state habeas counsel's performance to that of direct appeal counsel, Respondent does not address what professional norms would apply under *Martinez* and *Trevino*. It is axiomatic that attorney performance must be measured against prevailing professional norms. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Though Respondent's brief is silent on this issue, Mr. Ochoa previously has provided a detailed discussion of the prevailing professional norms. *Petitioner's Response to Respondent's Answer*, at 69-72. At least two principles emerge: First, state post-conviction proceedings are not just another direct appeal. Second, proper representation in state post-conviction proceedings requires that counsel conduct a thorough and searching investigation into every aspect of the trial, from *voir dire* to sentencing. *Id*. These principles find support not only in the ABA material and the statute controlling capital post-conviction litigation, which were set out in Mr. Ochoa's response, but also in other contemporary material that would have been available to state habeas counsel at the time he represented Mr. Ochoa.[4] At the very least, this Court's

---

[4] It has been a well-settled rule in Texas that habeas corpus is not simply another direct appeal, and issues that were raised on direct appeal may not be relitigated in habeas corpus, *see Ex parte Torres*, 943 S.W.2d 469, 475 (Tex.Crim.App. 1997), and issues that were not raised on direct appeal but could have been are procedurally barred in habeas corpus. *Ex parte Gardner*, 959 S.W.2d at 199. Instead, habeas corpus is the forum in which claims that require factual development beyond the appellate record are raised, *Ex parte Torres*, 943 S.W.2d at 475 (holding that IATC claims may be raised in habeas though not raised previously on direct appeal because the record on direct appeal is not adequate for proper consideration), and this rule was incorporated into the statute governing capital

assessment of state habeas counsel's performance will require a more detailed consideration of the prevailing professional norms than Respondent provides.

        B.      Mr. Ochoa's underlying IATC claims are substantial under *Martinez* and *Trevino*.

Under *Martinez* and *Trevino*, federal courts do not need to consider the merits of "insubstantial" IATC claims. Showing substantiality does not require Mr. Ochoa to prove his underlying claims; instead, he only has to show that they have "some merit." *See Martinez v. Ryan*, 132 S. Ct. at 1318-19. Each of the claims meets this low threshold standard and is deserving of encouragement to proceed further through meaningful factual development. Mr. Ochoa's petition clearly states numerous claims alleging constitutional violations, and those that are not IATC claims are tied in some way to ineffective assistance of trial counsel. The

---

habeas proceedings. *See* TEX. CRIM. P. CODE Art. 11.071, § 3(a) ("On appointment, counsel shall investigate expeditiously, before and after the appellate record is filed in the court of criminal appeals, the factual and legal grounds for the filing of an application for a writ of habeas corpus."). Contemporary training materials clearly reflected the inescapable fact that habeas corpus practice required a thorough investigation into every possible cognizable issue that could be raised in habeas, both at guilt-innocence and at sentencing. *See* GARY A. TAYLOR, TEXAS CAPITAL HABEAS CORPUS MANUEL, at 83-105 (Texas Criminal Defense Lawyers Association 2005) (extensively discussing the undeniable neceesity for and the extenstive scope of investigation required in capital post-conviction proceedings in Texas); MAURIE LEVIN ET AL., TEXAS CAPITAL POST-CONVICTION MANUAL: REPRESENTING TEXAS DEATH ROW PRISONERS, at 28-39 (Aug. 2000) (same); LYNN LAMBERTY, STATE CAPITAL WRITS: A VIEW FROM THE APPLICANT'S PERSPECTIVE, at K-31–K-39 *in* 1 TEXAS CRIMINAL APPELLATE MANUAL (State Bar of Texas, Criminal Justice Section 1996) (same). The Lamberty material was republished in September 1999 and presented at a training for capital post-conviction practitioners in Dallas, Texas, "Basic Capital Habeas Litigation in Texas" on February 13, 2000.

    Though the State Bar of Texas Guidelines and Standards for Texas Capital Counsel were enacted on April 21, 2006, after state habeas counsel in this case filed the original writ petition on February 11, 2005, these standards did not simply materialize in 2006 but instead reflected prevailing norms that had existed for years, particularly as reflected in the contemporary training materials set out above. These Guidelines extensively detail habeas counsel's duty to expeditiously and thoroughly investigate every aspect of the case. *See* 2006 State Bar of Texas, Guidelines and Standards for Texas Capital Counsel, Guidelines 12.2(B). Specifically, they provide:

> Because habeas corpus counsel must review what are, in essence, two different trials, providing quality representation in capital cases requires counsel to conduct a thorough and independent investigation of both the conviction and sentence. Habeas corpus counsel must promptly obtain the investigative resources necessary to examine both phases, including the assistance of a fact investigator and a mitigation specialist, as well as any appropriate experts.

*Id*. at Guideline 12.2(B)(3)(a). The Guidelines also warn that habeas proceedings may not be considered a second direct appeal and that raising "[d]irect appeal-like, record-based claims . . . can be fatal to a capital client." *Id*. at Guideline 12.2(B)(1)(a).

8

contentions in the petition are far from vague or conclusory; instead, the petition clearly sets forth factual allegations that are supported by affidavits and other evidentiary proffers. Thus, the petition simply is not a "notice pleading" that would be subject to summary dismissal. Rather, Mr. Ochoa states in great detail "facts that point to a 'real possibility of constitutional error.'" *See* RULES GOVERNING SECTION 2254 CASES IN THE UNITED STATES DISTRICT COURTS, Rule 4, Advisory Committee Note (quoting *Aubut v. Maine*, 431 F.2d 688, 689 (1st Cir. 1970)) [hereinafter Habeas Rules]. *See also Blackledge v. Allison*, 431 U.S. at 76 n.7. At this point, Mr. Ochoa is entitled to develop facts in support of his significant claims, which include investigative and expert assistance under 18 U.S.C. § 3599(f) and other fact development tools permitted by Habeas Rules. *See* Habeas Rule 6 (governing discovery); Habeas Rule 7 (governing expansion of the record). *See also Harris v. Nelson*, 394 U.S. at 291 ("The very nature of the writ demands that it be administered with the initiative and flexibility essential to insure that miscarriages of justice within its reach are surfaced and corrected."). The pleadings and factual support thereof are sufficient to establish the substantiality criterion for the purposes of the gatekeeping inquiry.

Respondent also asserts that Mr. Ochoa cannot establish prejudice under *Strickland*, apparently because of the facts of the crime standing alone. The Fifth Circuit has rejected this argument, *see Walbey v. Quarterman*, 309 Fed. App'x 795, 804 (5th Cir. 2009) (quoting *Gardner v. Johnson*, 247 F.3d 551 (5th Cir. 2001), in rejecting this stereotypical State fall-back position), and this Court should do the same. Though it is possible that Mr. Ochoa may ultimately prove unsuccessful in establishing prejudice, the Court should not undertake the "totality of the evidence" balancing Respondent refers to, *see Wiggins v. Smith*, 539 U.S. 510, 536 (2003); *Williams v. Taylor*, 529 U.S. 362, 397-98 (2000), until all of the evidence is before the Court.

In sum, this Court should refuse to summarily dismiss Mr. Ochoa's claims and allow him to proceed with proper factual development.

    II.    Section 2254(e)(2) is inapplicable to this case and does not bar this Court from considering new evidence in an evidentiary hearing.

Notwithstanding the fact that it is premature to make a determination concerning whether a hearing ultimately will be necessary, Respondent argues that this Court will be prohibited in any event from holding a hearing under 28 U.S.C. § 2254(e)(2)[5] and that, for this reason, further factual development would be futile. *Respondent Stephen's Supplemental Brief*, at 6-7 (arguing that because Mr. Ochoa cannot satisfy the requirements under § 2254(e)(2)(A)-(2)(B), "there is no basis for further fact-finding by this Court"). Respondent is clearly wrong.

Section 2254(e) specifies the conditions under which a federal court may conduct a hearing to consider whether a state factual finding was in error. Subsection 2254(e)(1) sets forth the presumption of correctness that attaches to the state findings, and subsection 2254(e)(2) sets forth a limit on a corresponding evidentiary hearing. Specifically, 28 U.S.C. § 2254(e)(2) provides:

> (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
>
> (A) the claim relies on—(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

---

[5] Specifically, Respondent contends that § 2254(e)(2) restricts this Court's ability to hold a hearing on any of the issues under *Martinez* and *Trevino*: "Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination. 28 U.S.C. § 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable juror would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B)." *Respondent Stephen's Supplemental Brief*, at 3-4.

> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).  This provision does not bar evidentiary hearing in this case.  To begin, as a practical matter, it would never apply to claims that were not adjudicated on the merits by a state court.  But more importantly, an IATC claim that is defaulted-but-excused under *Martinez* and *Trevino* is not a claim with a factual basis that the claimant "failed to develop" within the meaning of the opening clause.  Under no circumstances does the inquiry reach the limitations supplied by § 2254(e)(2)(A)-(2)(B).  The Fifth Circuit has expressly rejected the proposition that § 2254(e)(2) poses an obstacle to developing a defaulted-but-excused claim:

> Any question regarding the "failed to develop" standard was put to rest by the Supreme Court in *Williams v. Taylor*, 529 U.S. 420 (2000). . . .  In this case, [the habeas petitioner] establishes cause for overcoming his procedural default, he has certainly shown that he did not "fail to develop" the record under § 2254(e)(2). Accordingly, if the district court determines that [the habeas petitioner] has established cause and prejudice for his procedural default, it should proceed to conduct an evidentiary hearing on any claim for which cause and prejudice exists. It should then revisit the merits of any such claim anew.

*Barrientes v. Johnson*, 221 F.3d 741, 771 (5th Cir. 2000).  Respondent's position is not just an inferior interpretation of the statute's text; it would require this Court to abrogate *Barrientes* and to reduce *Martinez* and *Trevino* to meaningless platitudes.

        A.    Subsection (e)(2) does not apply to claims that were not presented to the state court.

In *Williams v. Taylor*, the Court rejected an argument that the "failed to develop" language in the opening clause of § 2254(e)(2) applied any time the facts concerning a claim were undeveloped in state court, regardless of fault.  529 U.S. at 431-32.  Rather, the Court construed "failed" as used in (e)(2) in its customary and preferred sense as connoting "some

11

omission, fault, or negligence on the part of the person who has failed to do something." *Id*. at 431. The Court explained:

> To say a person has failed in a duty implies he did not take the necessary steps to fulfill it. He is, as a consequence, at fault and bears responsibility for the failure. In this sense, a person is not at fault when his diligent efforts to perform an act are thwarted, for example, by the conduct of another or by happenstance. Fault lies, in those circumstances, either with the person who interfered with the accomplishment of the act or with no one at all.

*Id*. at 432. Accordingly, under *Williams*, whether (e)(2) applies depends on how fault for the failure to develop the factual basis of a claim is assigned. If it is assigned to the claimant, then (e)(2) applies; if it is assigned elsewhere, (e)(2) does not apply, and the court's decision to hold a hearing is largely discretionary under Habeas Rule 8.[6]

If a claimant did not present a claim in state court and it is deemed procedurally defaulted,[7] *see Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (2001), then the claimant can only obtain a merits adjudication by showing cause for the default. *See Martinez v. Ryan*, 132 S. Ct. at 1316; *Coleman*, 501 U.S. at 750; *Murray v. Carrier*, 477 U.S. 478, 485 (1986) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)). The cause requirement, in turn, will require the claimant to show some impediment "external to the defense" prevented the presentation of the claim to the state court. *Murray*, 477 U.S. at 488.

> [T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule. Without attempting an exhaustive catalog of such objective impediments to compliance with a procedural rule, we note that a showing that the factual or legal basis for a claim was not reasonably available to counsel, *see Reed v. Ross*, 468 U.S. [1, 16 (1984)], or that "some interference by officials," *Brown v. Allen*, 344 U.S. 443,

---

[6] From this standpoint and contrary to Respondent's position, (e)(2) does not control "when" a federal court may hold a hearing and does not undermine a court's discretion whether to hold one. Instead, it only defines certain conditions under which a federal court "may not" hold a hearing.

[7] If the claim were not deemed procedurally defaulted, then presumably the claimant would be allowed to return to state court to exhaust it, *see Rhines v. Weber*, 544 U.S. 269, 274-77 (2005), and depending on how the state court addressed the claim, different rules may apply upon return to federal court.

>486 (1953), made compliance impracticable, would constitute cause under this standard.

*Id*.  As the Fifth Circuit recognized in *Barrientes*, a claimant's showing of cause likewise establishes that the claimant did not "fail to develop" the underlying factual basis for the claim for the purposes of § 2254(e)(2).  *Barrientes v. Johnson*, 221 F.3d at 771.  In other words, demonstration of an external impediment under one test satisfies the requirements of the other.  Thus, as a practical matter, (e)(2) never comes into play with respect to claims not presented in state court.

>B. Establishment of cause and prejudice under *Martinez* and *Trevino* suffices to show that the claimant did not fail to develop the factual basis of the underlying IATC claims; thus, the restrictions of (e)(2) would not be triggered.

At the time that the Court decided *Williams*, it was well established that attorney negligence in general and ineffective assistance of state habeas counsel in particular[8] could not constitute cause for defaulting a claim in state court.  *See Coleman v. Thompson*, 501 U.S. at 752-54 (holding that ineffective assistance of state habeas counsel as a general rule cannot serve as cause); *Murray v. Carrier*, 477 U.S. at 488-89 (holding that attorney negligence that did not rise to the level of ineffective assistance of counsel under *Strickland* cannot serve as cause).  This was because attorney failings were attributed to the defendant, rather than to the State.  Similarly, *Williams* held that such attorney failings are attributable to the defendant and trigger the restrictions of (e)(2): "Under the opening clause of § 2254(e)(2), a failure to develop the factual basis of a claim is not established *unless* there is a lack of diligence, or some greater fault, attributable to the prisoner *or the prisoner's counsel*."  *Williams v. Taylor*, 529 U.S. at 432

---

[8]   However, ineffective assistance of trial or appellate counsel could constitute cause.  The Court reasoned that because the right to effective assistance of counsel at trial and on appeal was constitutionally guaranteed, a violation of these rights that resulted in the default of a claim was attributable to the State.  *Murray*, 477 U.S. at 488-89 (citing *Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980)).  However, to plead cause in federal court, a claimant must exhaust the independent Sixth Amendment claim in state habeas proceedings.  *Id*.

13

(emphasis added). *Williams* did not break any new ground. Instead, this was the law prior to the adoption of (e)(2) as part of AEDPA. In *Keeney v. Tamayo-Reyes*, the Court modified *Townsend v. Sain*, which formerly controlled when a federal court may, or must, hold a hearing, to forbid a hearing when counsel in state court failed to develop the factual basis supporting it unless the claimant could show cause and prejudice for the failure. 504 U.S. at 7-11. *See also Williams*, 529 U.S. at 432-33 (discussing *Keeney*).

The idea that ineffective state habeas representation cannot excuse a failure to factually develop a claim is a fact-bound expression of legal principle. The general legal principle is that only legal obstacles "external" to the claimant can excuse procedural defects in federal petitions. *Martinez* maintained the general principle that only external impediments are excuses but explained that ineffective state habeas representation is now to be treated as an external impediment. *Martinez v. Ryan*, 132 S. Ct. at 1316-18.

> By deliberately choosing to move trial-ineffectiveness claims outside of the direct-appeal process, where counsel is constitutionally guaranteed, the State significantly diminishes prisoners' ability to file such claims. It is within the context of *this state procedural framework* that counsel's ineffectiveness in an initial-review collateral proceeding qualifies as cause for a procedural default.

*Id*. at 1318 (emphasis added). As a matter of black-letter law, *Trevino* specifically held that Texas' procedural framework for adjudicating IATC claims—in which the Court of Criminal Appeals actively discouraged raising these claims on direct appeal and in which the procedural rules made it virtually impossible to litigate them there in any event—was likewise a sufficient external impediment to justify applying the *Martinez* rule in Texas. *Trevino v. Thaler*, 133 S. Ct. at 1917-21. Similarly, under a straightforward reading of *Williams* and (e)(2), ineffective assistance of state habeas counsel, as contemplated in *Martinez* and *Trevino*, is an external impediment to the factual development of the underlying IATC claim. The idea, as advanced by

14

Respondent, that ineffective state habeas representation would be an *external* impediment under a procedural default inquiry but an *internal* impediment under § 2254(e) is not logically sustainable. As such, under *Williams*, a claimant does not "fail to develop" the factual basis of his IATC claims if he can show cause under *Martinez* and *Trevino*; and, if the claimant does not "fail to develop" the claim, then subsections (e)(2)(A) and (e)(2)(B) are never in play.

      C.      Respondent's construction of 2254(e)(2) would give rise to absurd results that can be easily avoided through a straightforward application of *Williams*, *Martinez*, and *Trevino*.

This Court should reject Respondent's favored statutory construction if others are preferable and do not do violence to the statute's text and overall design. Respondent's construction ultimately would require the Court to abrogate *Barrientes*, which is a straightforward holding that a showing of cause sufficient to excuse default is also sufficient to permit factual development of the claim. But Respondent's construction would lead to a more fundamental absurdity—it would require that this Court presume that the Supreme Court of the United States granted certiorari in two cases, carefully crafted a remedy to a specific narrowly-defined problem, and ultimately returned these and numerous other cases to the lower appellate courts for reconsideration under this new rule when Congress had already rendered federal district courts impotent to implement the new remedy. If the Court believed that (e)(2) operated as Respondent urges, it would have not bothered with this at all. Fortunately, there is a better construction of (e)(2)—one that is faithful to the text, avoids absurd complications, does not place this Court in tension with Fifth Circuit precedent, and allows the Court to adjudicate these claims in a familiar manner—(e)(2) simply is not triggered when a claimant demonstrates cause and prejudice under *Martinez* and *Trevino*.

15

WHEREFORE, PREMISES CONSIDERED, Petitioner, Abel Revill Ochoa, respectfully requests that this Court reject Respondent's argument relating to 28 U.S.C. § 2254(e)(2), refrain from prematurely reaching the merits of the issues raised in this case until proper factual development is allowed, and grant the relief previously requested in *Petitioner's Supplemental Briefing on the Effect of* Martinez v. Ryan *and* Trevino v. Thaler *on the Issues in this Case*.  Mr. Ochoa also requests that the Court grant him any and all other relief to which he may be entitled.

        Respectfully submitted,

        ALEXANDER L. CALHOUN
        Attorney at Law
        Texas Bar No. 00787187
        4301 W. William Cannon Dr.  Ste. B-150
           # 260
        Austin, Texas 78749
        (512) 420-8850 (telephone)
        (512) 233-5946 (facsimile)
        (512) 731-731-3159 (cell)
        alcalhoun@earthlink.net

        By: /s/ Alexander L. Calhoun
            Alexander L. Calhoun
            Member of the Bar of this Court

        PAUL E. MANSUR
        Texas Defender Service
        Senior Staff Attorney
        Texas Bar No. 00796078
        P.O. Box 1300
        Denver City, Texas 79323
        (806) 215-1025 (telephone)
        (806) 592-9136 (facsimile)
        pmansur@midtech.net

        By: /s/ Paul E. Mansur
            Paul E. Mansur
            Member of the Bar of this Court

        Attorneys for Petitioner,
        Abel Revill Ochoa

*Certificate of Service*

  I hereby certify that on September 3, 2013, I electronically filed the foregoing reply brief with the Clerk of the Court for the U.S. District Court, Northern District of Texas. The ECF system sent a "Notice of Electronic Filing" to counsel for Respondent:

Greg Abbott
attn: Stephen Hoffman
Texas Attorney General
Postconviction Litigation Division
P.O. Box 12548
Austin, Texas 78711-2548

                <u>/s/ Paul E. Mansur</u>
                Paul E. Mansur