IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ABEL REVILL OCHOA, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | Civ. Action No. 3:09-CV-2277-K |
| | § | |
| LORIE DAVIS, Director, | § | (Death Penalty Case) |
| Texas Department of Criminal Justice | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM OPINION AND ORDER DENYING RELIEF

Petitioner Abel Revill Ochoa, sentenced to death for capital murder, petitions the Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, contending that his conviction and sentence are unconstitutional. For the reasons set out below, the Court **DENIES** the petition.

## I. PROCEDURAL BACKGROUND

In 2003, Ochoa was convicted and sentenced to death for the capital murder of his wife and seven-year-old daughter during a shooting spree in which he killed five family members and seriously injured another. *State v. Ochoa,* No. F02-53582-M (194th Jud. Dist. Ct., Dallas Cnty., Tex. Apr. 23, 2003). The Texas Court of Criminal Appeals ("CCA") unanimously affirmed the conviction and death sentence. *Ochoa v. State,* No. AP-74,663 (Tex. Crim. App. Jan. 26, 2005). Ochoa's appointed counsel filed an initial post-conviction application for a writ of habeas corpus in the state trial court on

February 11, 2005, and Ochoa filed a *pro se* a "Supplementation to the Initial Writ to be Filed for Post-Conviction Relief" on February 21, 2005.  *Ex parte Ochoa,* No. W02-53582-M(A) (194th Jud. Dist. Ct., Dallas Cnty., Tex.).  The trial court on habeas review made findings of fact and conclusions of law on May 7, 2009, recommending that relief be denied in W02-53582-M(A).  The CCA expressly adopted those findings and conclusions in its order denying relief.  *Ex parte Ochoa,* No. WR-67,495-02, 2009 WL 2525740 (Tex. Crim. App. Aug. 19, 2009).  Ochoa also filed a *pro se* application to supplement his writ of habeas corpus in cause number W02-53582-M(B) on March 19, 2007, which was construed as a subsequent habeas application.  *Ex parte Ochoa,* No. W02-53582-M(B) (194th Jud. Dist. Ct., Dallas Cnty., Tex. Apr. 9, 2007).  The CCA found that the claims presented in the subsequent writ application failed to meet the dictates of Article 11.071, § 5 of the Texas Code of Criminal Procedure, and dismissed his subsequent application as an abuse of the writ.  *Ex parte Ochoa,* No. WR-67,495-01, 2009 WL 2525740 (Tex. Crim. App. Aug. 19, 2009).

Ochoa then filed his original petition for a writ of habeas corpus in this Court on August 19, 2010 (Doc. No. 8).  On December 18, 2012, Ochoa filed a motion to stay these proceedings pending the United States Supreme Court's decision in *Trevino v. Thaler,* which was granted.  (Motion, Doc. No. 33; Order, Doc. No. 38.)  Following the decision in *Trevino,* this Court reopened these proceedings and ordered supplemental briefing on the impact of *Trevino* on this case.  (Order, doc. 40.)

2

## II. FACTUAL BACKGROUND

The state court described the facts of the offense as follows:

1.  The Court finds that the thirty-year-old Ochoa shot several family members after smoking crack cocaine on Sunday, August 4, 2002. (RR38: 112).  The record reflects that, twenty minutes after smoking a ten-dollar rock of crack, Ochoa entered his living room and systematically shot his wife Cecilia, their nine-month-old daughter (Anahi), Cecilia's father (Bartolo), and Cecilia's sisters (Alma and Jackie). (RR33: 32-36).  Ochoa reloaded his .9 mm Ruger and chased his 7-year-old daughter, Crystal, into the kitchen where he shot her four times.   (State's Exhibit 2A; RR-Examining Trial: 14).  Of the six victims, only Alma survived. (RR33: 40-41).

2.  The record reflects that, minutes after the shooting, the police stopped Ochoa while driving his wife's Toyota 4Runner. (RR33: 97-98).  Ochoa told the arresting officer that the gun he used was at his house on the table, that he could not handle the stress anymore, and that he had gotten tired of his life. (RR33: 105-06).  In a search conducted after arrest, the police found a crack pipe, steel wool, and an empty clear baggie on Ochoa's person. (RR33: 109-110).  Ochoa gave the police a detailed written statement recounting his actions in the shootings. (RR34: 35-46; State's Exhibit 2A).

(State Habeas Record ("SHR") at 349.)  These findings are entitled to deference. *See* 28 U.S.C. § 2254(e)(1).

## III. CLAIMS

Ochoa presents twenty-one claims for relief in ten groups, arguing:

### *Effective Assistance of Counsel at Punishment*

1.     His trial counsel was ineffective in failing to investigate and to present significant mitigation evidence in the punishment phase of his trial;

3

*Jury Selection*

2.      His trial counsel was ineffective in failing to conduct an adequate voir dire of his capital murder trial;

3.      His trial counsel were rendered ineffective during the voir dire of his capital murder trial by the trial court's rulings;

4.      He was denied the right to be tried by a fair and impartial jury by the lack of an adequate voir dire;

5.      His appellate counsel was ineffective in failing to raise the voir dire issues in his direct appeal;

*Confrontation Clause*

6.      His right to confront and cross-examine witnesses as guaranteed by the Confrontation Clause of the Sixth Amendment was violated when the trial court allowed testimonial evidence before the jury;

7.      His trial counsel was ineffective in failing to object to the State's use of testimonial statements on the basis that it violated the Confrontation Clause;

*Full and Fair Defense*

8.      His right to present a fair defense under the Sixth and Fourteenth Amendments was violated by the trial court's exclusion of important rebuttal evidence;

9.      His trial counsel was ineffective in failing to properly object to the exclusion of important rebuttal evidence at the punishment stage of his trial;

*State's Expert Evidence*

10.     He was deprived of his right to due process by the State's presentation of unreliable psychiatric rebuttal testimony by Dr. Richard Coons;

4

11.   His appellate counsel was ineffective in failing to present the trial court's erroneous admission of Dr. Coons' testimony on direct appeal;

### Shacking at Trial

12.   His right to due process was violated when he was shackled during the punishment phase of his capital murder trial;

13.   His trial counsel was ineffective in failing to object to the trial court's decision to place Ochoa in shackles;

### Sufficiency of Evidence of Future Dangerousness

14.   The evidence is legally insufficient to support the jury's answer to the first special issue finding that Mr. Ochoa would constitute a continuing threat to society;

### Destruction of Evidence

15.   He was deprived of rights to due process and to a fair trial when the State destroyed material and exculpatory evidence;

16.   His trial counsel was ineffective in failing to preserve evidence in the State's possession or make a timely objection or motion to preserve it;

17.   His appellate counsel was ineffective in failing to raise the State's unconstitutional destruction of evidence on direct appeal;

### Mitigation Special Issue

18.   He was denied due process and the right to be free from arbitrary and capricious punishment by the absence of a burden of proof for the mitigation special issue;

19.   He was denied due process and the right to be free from arbitrary and capricious punishment by the absence of a definition of mitigating evidence in the court's charge to the jury;

20.     His trial and appellate counsel were ineffective in failing object at trial and present on direct appeal the complaints raised in his eighteenth and nineteenth claims;

### Fair Cross Section

21.     His Sixth Amendment rights were violated by the empaneling of a jury that was not selected from a fair cross section of the community.

*See* Pet. at 51-153.  Ochoa also requests an evidentiary hearing (Pet. at 129-41, 163).

Respondent asserts that Ochoa's first, second, third, fourth, fifth, eighth, ninth, tenth, eleventh, twelfth, thirteenth and twentieth claims are unexhausted and procedurally barred and in the alternative that they lack merit (Ans. at 22-59, 75-97, 122-23), that Ochoa's sixth, fifteenth, eighteenth, nineteenth and twenty-first claims were denied by the state court as procedurally barred and in the alternative that they lack merit (Ans. at 59-70, 100-108, 113-21, 124-34), and that the state court properly adjudicated the merits of Ochoa's seventh, fourteenth, sixteenth and seventeenth claims (Ans. at 70-75, 97-99, 108-13).  (The Court applies Ochoa's numbering of claims, which differs from that of Respondent, who combined Ochoa's second and third claim.)

## IV. STANDARD OF REVIEW

Federal habeas review of these claims is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  This statute sets forth the preliminary requirements that must be satisfied before reaching the merits of a claim made in a federal habeas proceeding.

## A. Exhaustion

Under this statute, a federal court may not grant habeas relief on any claim that the state prisoner has not first exhausted in the state courts. *See* 28 U.S.C. § 2254(b)(1)(A); *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 787 (2011). However, the federal court may deny relief on the merits notwithstanding any failure to exhaust. *See* 28 U.S.C. § 2254(b)(2); *Miller v. Dretke*, 431 F.3d 241, 245 (5th Cir. 2005).

## B. State-Court Procedural Determinations

If the state court denies the claim on state procedural grounds, a federal court will not reach the merits of those claims if it determines that the state-law grounds are independent of the federal claim and adequate to bar federal review. *See Sawyer v. Whitley*, 505 U.S. 333, 338 (1992); *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). If the state procedural determination is based on state grounds that were inadequate to bar federal habeas review, or if the habeas petitioner shows that an exception to the bar applies, the federal court must normally resolve the claim without the deference to the adjudication that 28 U.S.C. § 2254(d) otherwise requires. *See Miller v. Johnson*, 200 F.3d 274, 281 n.4 (5th Cir. 2000) ("Review is *de novo* when there has been no clear adjudication on the merits." (citing *Nobles v. Johnson*, 127 F.3d 409, 416 (5th Cir.1997))); *Mercadel v. Cain*, 179 F.3d 271, 275 (5th Cir.1999) ("the AEDPA deference scheme outlined in 28 U.S.C. § 2254(d) does not apply" to claims not adjudicated on

the merits by the state court); *Woodfox v. Cain*, 609 F.3d 774, 794 (5th Cir. 2010) (the AEDPA deferential standard of review would not apply to a procedural decision of the state court).

When the state court included an alternative analysis of the merits of the claim, however, AEDPA deference is applied to the state court alternative merits findings. *See Busby v. Dretke,* 359 F.3d 708, 721 n.14 (5th Cir. 2004) (affording deference to merits finding when state court "invoked a procedural bar as an alternative basis to deny relief"); *accord Rolan v. Coleman,* 680 F.3d 311, 319 (3rd Cir. 2012) (holding that "AEDPA deference applies when a state court decides a claim on procedural grounds and, alternatively, on the merits"); *Stephens v. Branker,* 570 F.3d 198, 208 (4th Cir. 2009) ("we agree with our sister circuits that an alternative merits determination to a procedural bar ruling is entitled to AEDPA deference"); *Brooks v. Bagley,* 513 F.3d 618, 624-25 (6th Cir. 2008) (holding that the state "court's alternative merits ruling receives AEDPA deference"); *Zarvela v. Artuz,* 364 F.3d 415, 417 (2d Cir. 2004) (affording deference when state court found "claim to be unpreserved, and, in any event, without merit"); *Johnson v. McKune,* 288 F.3d 1187, 1192 (10th Cir. 2002) (affording deference when "the state court relied on the merits as an alternative basis for its holding"); *Bigby v. Thaler,* No. 4:08-CV-765-Y, 2013 WL 1386667, at *19-*20 (N.D.Tex. Apr.5, 2013) (affording deference to state court's "alternative analysis" of claim on the merits"); *Battaglia v. Stephens,* No. 3:09-CV-1904-B, 2013 WL 5570216, at *24 (N.D. Tex. Oct.

8

9, 2013), *certificate of appealability denied,* 621 F. App'x 781 (5th Cir. 2015), *cert. denied,*

136 S. Ct. 803 (2016).

### C. State-Court Merits Determinations

If the state court denies the claim on the merits, a federal court may not grant

relief unless it first determines that the claim was unreasonably adjudicated by the state

court, as defined in § 2254(d).

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim——
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  In the context of § 2254(d) analysis, "adjudicated on the merits"

is a term of art referring to a state court's disposition of a case on substantive rather than

procedural grounds.  *Green v. Johnson*, 116 F.3d 1115, 1121 (5th Cir. 1997).  This

provision does not authorize habeas relief, but restricts this Court's power to grant relief

to state prisoners by barring claims in federal court that were not first unreasonably

denied by the state courts.  The AEDPA limits rather than expands the availability of

habeas relief.  *See Fry v. Pliler*, 551 U.S. 112, 119 (2007); *Williams v. Taylor*, 529 U.S.

362, 412 (2000).  "By its terms § 2254(d) bars relitigation of any claim 'adjudicated on

the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)."

*Richter*, 562 U.S. at 98. "This is a 'difficult to meet,' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court rulings be given the benefit of the doubt.'" *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal citations omitted) (quoting *Richter*, 562 U.S. at 102, and *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)).

Under the "contrary to" clause, a federal court is not prohibited from granting federal habeas relief if the state court either arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law or decides a case differently from the United States Supreme Court on a set of materially indistinguishable facts. *See Williams*, 529 U.S. at 412-13; *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). Under the "unreasonable application" clause, a federal court may also reach the merits of a claim on federal habeas review "if the state court identifies the correct governing legal rule . . . but unreasonably applies it to the facts of the particular state prisoner's case." *White v. Woodall,* — U.S. —, 134 S. Ct. 1697, 1705 (2014) (quoting *Williams*, 529 U.S. at 407-408). "'[C]learly established Federal law' for purposes of § 2254(d)(1) includes only 'the holdings, as opposed to the dicta, of [the United States Supreme] Court's decisions.'" *Woodall,* — U.S. —, 34 S. Ct. at 1702 (quoting *Howes v. Fields,* — U.S. —, 132 S. Ct. 1181, 1187 (2012)). The standard for determining whether a state court's application was unreasonable is an objective one and

applies to federal habeas corpus petitions that, like the instant case, were filed after April 24, 1996. *See Lindh v. Murphy*, 521 U.S. 320, 327 (1997).

Federal habeas relief is not available on a claim adjudicated on the merits by the state court unless the record before that state court first satisfies § 2254(d). "[E]vidence introduced in federal court has no bearing on § 2254(d)(1) review. If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court." *Pinholster*, 563 U.S. at 185. The evidence required under § 2254(d)(2) must show that the state-court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

## V. ANALYSIS

### A. Ineffective Assistance of Counsel

Throughout his petition, Ochoa contends that he was deprived of the effective assistance of counsel in various ways. Respondent asserts that most of these claims are procedurally barred and that all of them lack merit, frequently making that argument in the alternative. Because the same standard applies to each of these claims, they are reviewed together.

1.  **Claims**

Ochoa claims that trial counsel were ineffective in: (1) failing to investigate and present significant mitigation evidence at the punishment phase of his trial (Pet. at 51-88); (2) failing to question potential jurors about their ability to give meaningful consideration to defense mitigation evidence and on their ability to be fair in a case involving five victims (Pet. at 89-102); (3) failing to make proper and timely objections to the State's use of testimonial statements under the Confrontation Clause (Pet. at 104-14); (4) failing to make proper and timely objections to the trial court's ruling excluding important rebuttal evidence (Pet. at 114-17); (5) failing to object to the trial court's decision to place Ochoa in shackles (Pet. at 144-46); (6) failing to preserve evidence in the State's possession or make a timely objection or motion to preserve it (Pet. at 151-53); and (7) failing to object to the failure of the jury charge to define mitigating evidence and to include a burden of proof on the mitigation special issue (Pet. at 154-61).  Ochoa claims that his counsel on direct appeal was ineffective in: (1) failing to present the inadequate voir dire complaints on direct appeal (Pet. at 102-103); (2) failing to present the issue concerning the trial court's erroneous admission of Dr. Coons' unconstitutionally unreliable testimony on direct appeal (Pet. at 135-41); (3) failing to raise the issue concerning the State's unconstitutional destruction of evidence on direct appeal (Pet. at 153); and (4) failing to raise the issue concerning the lack of a burden of proof for the mitigation special issue and definition of mitigating evidence in the jury

instructions (Pet. at 154-61).

Respondent contends that all of these claims are procedurally barred except for Ochoa's seventh claim (failure to make Confrontation Clause objection at trial), sixteenth claim (failure to preserve evidence or object at trial), seventeenth claim (failure to raise issue of destroyed evidence on appeal), and that portion of the twentieth claim complaining about appellate counsel (failure to define mitigating evidence and assign a burden of proof to the mitigation special issue), which Respondent asserts were reasonably denied on the merits by the state habeas court. (Ans. at 70-75, 108-13, 123.)

2. **Legal Standard**

Claims of ineffective assistance of counsel are measured by the two-pronged standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). The first prong of *Strickland* requires the defendant to show that counsel's performance was deficient. *Id.* at 687. The second prong of this test requires the defendant to show prejudice resulting from counsel's deficient performance. *Id.* at 694. The court need not address both prongs of the *Strickland* standard if the complainant has made an insufficient showing on one. *Id.* at 697.

In measuring whether counsel's representation was deficient, a petitioner must show that counsel's representation fell below an objective standard of reasonableness. *Id.* at 687-88; *Lackey v. Johnson*, 116 F.3d 149, 152 (5th Cir. 1997). "It is well settled that effective assistance is not equivalent to errorless counsel or counsel judged

13

ineffectively by hindsight." *Tijerina v. Estelle*, 692 F.2d 3, 7 (5th Cir. 1982). A court reviewing an ineffectiveness claim must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional competence or that, under the circumstances, the challenged action might be considered sound trial strategy. *Gray v. Lynn*, 6 F.3d 265, 268 (5th Cir. 1993); *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). There are "countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Richter,* 562 U.S. at 106. In *Richter,* the Supreme Court noted the "wide latitude counsel must have in making tactical decisions" and the need to avoid judicial second-guessing. *Id.* (quoting *Strickland,* 466 U.S. at 689). "Just as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *Id.* at 110.

To satisfy the second prong of the *Strickland* test, the petitioner must show that counsel's errors were so egregious "as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The test to establish prejudice under this prong is whether "there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability under this test is "a probability sufficient to undermine confidence in the outcome." *Id.*

3. <u>Analysis</u>

   *a. Exhausted Claims*

Ochoa presented his seventh, sixteenth, seventeenth and a portion of his twentieth claims to the state court in his post-conviction habeas proceeding. These claims are reviewed under the deferential standard set out in 28 U.S.C. § 2254(d).

   1. <u>Confrontation Clause</u>

In his seventh claim, Ochoa claims that trial counsel were ineffective in failing to make proper and timely objections under the Confrontation Clause to the State's use of testimonial statements. (Pet. at 104-14.) Respondent argues that the state court reasonably denied this claim for lack of merit. (Ans. at 70-75.)

This claim was presented to the state court in Ochoa's fourth ground for relief in his state habeas application. In that ground, Ochoa argued that his trial counsel was ineffective for failing to raise a Confrontation Clause objection to the admission of (1) a tape recording of a 1997 telephone conversation between Ochoa and his wife, and (2) testimony by Alma Alvizo that Cecilia reported that Ochoa put a gun to Cecilia's head three weeks before the capital offense. (SHR at 368.)

The state habeas court found that trial counsel obtained a hearing outside of the presence of the jury in which they objected to the admissibility of this evidence and did not perform deficiently based on the law as it existed at the time. (SHR at 368-71, 377-80.) The state habeas court further found that, even if trial counsel was deficient, Ochoa

15

had not shown prejudice under *Strickland.* (SHR at 371-77, 380-82.) These findings were expressly adopted by the CCA in its order denying relief. *Ex parte Ochoa,* 2009 WL 2525740 at *1.

Ochoa has not shown the state court's adjudication to be contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court, or based on an unreasonable determination of facts on the record that was before the state court. As set out in the analysis of Ochoa's sixth claim in subsection (B)(2)(a)(1) below, the Confrontation Clause does not apply to the punishment phase of a capital murder trial, as when this evidence was admitted. *See United States v. Fields,* 483 F.3d 313, 326 (5th Cir. 2007). Ochoa acknowledges that the Supreme Court has not applied the Confrontation Clause to capital sentencing. (Reply at 51.) Counsel could not have been ineffective for failing to make a meritless objection. "Failure to raise meritless objections is not ineffective lawyering; it is the very opposite." *Clark v. Collins,* 19 F.3d 959, 966 (5th Cir. 1994); *Wood v. Quarterman,* 503 F.3d 408, 413 (5th Cir. 2007).

Further, the evidence was largely cumulative of evidence admitted from other sources. Ochoa admitted on cross examination that on the same recording he threatened to shoot Cecilia. *Ochoa,* slip op. at 17. Ochoa's father and his expert on future dangerousness also admitted that Cecilia had reported Ochoa putting a gun to her head. *Id.* at 20-23. The state court found that this rendered any error in admitting Cecilia's

16

similar statements harmless and not reversible, and that a Confrontation Clause objection would not have changed the outcome of the trial. *Id.* at 17, 23; (SHR at 369, 376-77, 382.) Before this Court, Ochoa has not satisfied either prong of *Strickland,* and has not shown that the state court's adjudication was incorrect, much less unreasonable. Therefore, Ochoa's seventh claim is DENIED for lack of merit.

## 2. <u>Destruction of Evidence</u>

In his sixteenth claim, Ochoa claims that his trial counsel was ineffective in failing to preserve evidence in the State's possession or make a timely objection or motion to preserve it (Pet. at 146-53). In his seventeenth claim, Ochoa claims that his counsel on direct appeal was ineffective in failing to raise the issue concerning the State's unconstitutional destruction of evidence (Pet. at 153). Respondent argues that the state court reasonably denied these claims for lack of merit. (Ans. at 108-13.)

These claims were presented to the state habeas court as Ochoa's fifth and seventh claims in his application for state post-conviction habeas relief. The state court found that Ochoa had not shown that the evidence in question, drug paraphernalia, was the same that was used in connection with the murders or had any residue to test. (SHR at 383.) The state court also found that trial counsel moved in the trial court to preserve all such evidence and that, even though it was not made soon enough to preserve this evidence, counsel's conduct was reasonably based on his past experience and normal circumstances in accordance with prevailing professional norms. (SHR at 385-86.) The

17

state court also found based on the record that the evidence was destroyed pursuant to administrative protocol and did not demonstrate what would have been necessary to win such a claim on appeal, specifically including the bad faith of the police. The state court concluded that Ochoa had not satisfied either prong of *Strickland* with respect to either trial or appellate counsel's assistance. (SHR at 386-87, 392-94.) These findings were expressly adopted by the CCA in its order denying relief. *Ex parte Ochoa,* 2009 WL 2525740 at *1.

Ochoa has not shown the state court's adjudication to be contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court, or based on an unreasonable determination of facts on the record that was before the state court. Ochoa acknowledges that he "must show that the officer or governmental agent who destroyed the evidence was acting in bad faith." (Pet. at 147 (citing *Arizona v. Youngblood,* 488 U.S. 51, 57-58 (1988) and *California v. Trombetta,* 467 U.S. 479, 488-89 (1984)).)

The record indicates that the trial court conducted a hearing on Ochoa's motion to dismiss the indictment for failure to preserve exculpatory evidence in which Officer Jason Cox testified that he obtained a crack pipe, some brillo and a small clear plastic baggie incident to Ochoa's arrest. (32 State Reporter's Record ("RR") at 7.) Officer Cox informed the detectives about the seized items and the detectives told him to "do what you want to with it," which Officer Cox took to mean to put it in the evidence property

18

room.  (32 RR at 10.)  Officer Cox explained how he designated the property on the

form.

> A.    They told me that -- do what I wanted to with the property, so I
>        had to do like a offense page so you can locate the property.  And
>        on the offense page I did a found property, because it was found on
>        his person, but they weren't charging him with possession of crack
>        pipe, so I just put it in found property.  And I was unaware in 61
>        days they were going to destroy it.
>
> Q.    Okay.  You certainly would not have done that if you had known that they
>        were going to destroy it?
>
> A.    No, sir.

(32 RR at 18.)

    The officer also testified that there did not appear to be any drug residue on the

items.

> Q.    Officer, you said you -- you took a -- what looked like a brand new
>        shiny crack pipe off the defendant when you arrested him?
>
> A.    Yes, sir.
>
> Q.    Did it look like it had any residue on it?
>
> A.    No.  If it would have had residue on it, I would have to put it in the
>        -- in the actual drug room instead of just found property.
>
> Q.    Same with the baggie and the brillo?
>
> A.    Correct. If it looks like it has drug residue, the property room won't
>        take it as like found property -- or they'll take it as found property,
>        but you have to put it in a drug baggie and get it sealed and all that.
>        I just put it in like a paper sack.

(32 RR at 20.)

Dallas Police Sergeant Judy Katz testified at the hearing that the evidence was destroyed in accordance with the standard procedures for the Dallas Police Department in retaining and destroying found property.  (32 RR at 30.)  The trial court denied the motion and later on habeas review found that, "but for Officer Cox's good-faith decision to designate the paraphernalia as found property rather than evidence, the paraphernalia would not have been destroyed."  (SHR at 385.)

The evidence before the state court and this court indicates no bad faith in the destruction of the evidence.  Therefore, its conclusion that trial and appellate counsel were not shown ineffective in failing to do more to preserve this evidence or raise it on appeal appears correct.  Trial counsel moved to protect the evidence and later to dismiss the indictment based on the destruction.  Ochoa has not overcome the state court's findings that trial counsel's conduct was not ineffective or that a claim on appeal would not have prevailed.  "When the petitioner challenges the performance of his appellate counsel, he must show that with effective counsel, there was a reasonable probability that he would have won on appeal." *Moreno v. Dretke,* 450 F.3d 158, 168 (5th Cir. 2006) (citing *Smith v. Robbins,* 528 U.S. 259, 285 (2000)).  Ochoa has not shown that he would have prevailed on appeal or that the state court findings that counsel were not ineffective were incorrect, much less unreasonable.  Accordingly, Ochoa's sixteenth and seventeenth claims are DENIED for lack of merit.

### 3. <u>Mitigation Special Issue</u>

Ochoa asserts as a part of his twentieth claim that appellate counsel was ineffective for failing to object to the charge to the jury regarding the lack of a burden of proof to the mitigation special issue. This issue was referenced in his statement of the claim (Pet. at 154), but not in his briefing on the claim. (Pet. at 161.) Respondent argues that this claim should be considered waived because it was inadequately briefed. (Ans. at 123.) This position is well taken, but it is unnecessary to find that this claim is waived because, even reading the allegations to include this claim, Ochoa has not made the showing required by 28 U.S.C. § 2254(d) to obtain relief.

This claim was presented to the state court in Ochoa's seventh ground for state habeas relief and was denied for lack of merit. (SHR at 392-94.) This finding was expressly adopted by the CCA in its order denying relief. *Ex parte Ochoa,* 2009 WL 2525740 at *1.

Appellate counsel's conduct is measured by the same *Strickland* standard, requiring a habeas petitioner to show constitutionally deficient performance and prejudice. *See United States v. Reinhert,* 357 F.3d 521, 525 (5th Cir. 2004). Where the allegation of ineffective assistance of appellate counsel is based on counsel's failure to advance certain issues on appeal, courts have refused to find counsel ineffective when the proposed issues are without merit. *See Williams v. Collins,* 16 F.3d 626, 635 (5th Cir. 1994); *Mendiola v. Estelle,* 635 F.2d 487, 491 (5th Cir. 1981).

21

As set out in subsection (c)(6) below, this claim has been rejected in this circuit. *See Rowell v. Dretke,* 398 F.3d 370, 378 (5th Cir. 2005). Ochoa has not shown that the state court's finding was incorrect, much less that its adjudication was an unreasonable one. In fact, the state court's finding and adjudication are supported by the record and binding precedent.

That part of Ochoa's twentieth claim complaining that appellate counsel was ineffective for failing to object to the charge to the jury regarding the lack of a burden of proof to the mitigation special issue is DENIED for lack of merit.

### b. Procedural Bar

Respondent asserts that Ochoa's first, second, third, fifth, ninth, eleventh and thirteenth claims, and that portion of his twentieth claim complaining about trial counsel, are all unexhausted and now procedurally defaulted. (Ans. at 24-28, 46, 57, 78, 87, 95, 122-23.) Of those allegedly defaulted claims, Ochoa does not dispute that they were not presented to the state court in the original state habeas proceeding. In fact, he lists all but the twentieth claim in his request for a stay to return to the state court to exhaust these claims. (Reply at 54-55.) Because only that portion of his twentieth claim asserting a complaint against trial counsel regarding the burden of proof for the mitigation special issue was presented to the state court, the Court finds that the remainder of Ochoa's twentieth claim along with his first, second, third, fifth, ninth, eleventh and thirteenth claims were not presented to the state courts.

As mentioned above, federal habeas petitioners are required to exhaust their claims by fairly presenting them to the highest state court before asserting them in federal court. *See Richter,* 562 U.S. at 103; *Picard v. Connor,* 404 U.S. 270, 275 (1971); *Deters v. Collins,* 985 F.2d 789, 795 (5th Cir. 1993). This Court cannot grant relief on an unexhausted claim. *See* 28 U.S.C. § 2254(b)(1)(A). Generally, a petition containing both exhausted and unexhausted claims must be dismissed or stayed so that the petitioner may return to state court to exhaust state remedies. *See Rhines v. Weber,* 544 U.S. 269, 277-78 (2005); *Rose v. Lundy,* 455 U.S. 509, 519-20 (1982). Such action would be futile and the federal court should find claims to be procedurally barred if "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Coleman,* 501 U.S. at 735 n.1; *see also Neville v. Dretke,* 423 F.3d 474, 480 (5th Cir. 2005) (holding unexhausted claims ineligible for stay when state court would find them procedurally barred). However, a habeas petitioner may avoid the imposition of this bar by demonstrating a recognized exception. *Coleman,* 501 U.S. at 750.

Texas law precludes successive habeas claims except in narrow circumstances. *See* TEX. CODE CRIM. PROC. ANN. art. 11.071, § 5 (West 2015). This is a codification of the judicially created Texas abuse-of-the-writ doctrine. *See Barrientes v. Johnson,* 221 F.3d 741, 759 n.10 (5th Cir. 2000). Under this state law, a habeas petitioner is procedurally barred from returning to the Texas courts to exhaust his claims unless the petitioner

23

presents a factual or legal basis for a claim that was previously unavailable or shows that, but for a violation of the United States Constitution, no rational juror would have found for the State. *See id.* at 758 n.9. This is an independent and adequate state law ground to bar federal habeas review. *Hughes v. Quarterman,* 530 F.3d 336, 342 (5th Cir. 2008); *Canales,* 765 F.3d at 566. Therefore, unexhausted claims that could not make the showing required by this state law would be considered procedurally barred from review on the merits in this Court unless an exception is shown. *See Beazley v. Johnson,* 242 F.3d 248, 264 (5th Cir. 2001). Ochoa asserts that each of these allegedly defaulted claims come within the exception to procedural bar created in *Martinez v. Ryan,* — U.S. —, 132 S. Ct. 1309 (2012). (P's Supp. Br., doc. 44.)

## 1. <u>Appellate Counsel</u>

The *Martinez* exception does not apply to claims of ineffective assistance of appellate counsel. *Reed v. Stephens,* 739 F.3d 753, 778 n.16 (5th Cir.), *cert. denied,* 135 S. Ct. 435 (2014). Therefore, this exception would not apply to three of Ochoa's unexhausted and now procedurally barred claims: (1) Ochoa's fifth claim, that his counsel on direct appeal was ineffective in failing to raise on direct appeal the complaints in his second, third and fourth claims before this Court (Pet at 102-103); (2) Ochoa's eleventh claim, that his counsel on direct appeal was ineffective in failing to present the issue concerning the trial court's erroneous admission of Dr. Coons' unconstitutionally unreliable testimony on direct appeal (Pet. at 135-41); and (3) that portion of Ochoa's

twentieth claim complaining that his counsel on direct appeal did not raise the issue

concerning the lack of a definition of mitigating evidence in the jury charge (Pet. at

161).  These claims were not presented to the state court, and would now be barred by

the Texas abuse-of-the-writ rule.  Because the *Martinez* exception does not apply to these

claims, these three claims are DENIED as procedurally barred.

Further, as shown in the alternative analysis in subsection (c) below, each of these

claims lacks merit.  Therefore, if these claims were not procedurally barred, they would

each be denied for lack of merit.

## 2.  **Trial Counsel**

Ochoa's first, second, third, ninth, thirteenth and a portion of his twentieth claim

each assert ineffective assistance of trial counsel claims that were presented to the state

court.  If these claims were presented to the state court in a subsequent state habeas

application, they would be barred by the Texas abuse-of-the-writ rule.  To show that any

of these claims come within the exception to procedural bar created in *Martinez,* Ochoa

must show that it is a substantial claim that was not presented to the state court in the

initial-review collateral proceeding because counsel in that proceeding was ineffective.

*Martinez*, 132 S. Ct. at 1320.  The habeas petitioner must "demonstrate that the

underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to

say that the prisoner must demonstrate that the claim has some merit."  *Id.* at 1318-19

(citing *Miller-El v. Cockrell,* 537 U.S. 322 (2003) (describing standards for certificates of

appealability)).  To determine whether a claim has some merit, this Court applies the familiar standard set forth in *Strickland*.

As set out in the alternate merits analysis in subsection (c) below, none of these claims have any merit.  Ochoa has not shown a lack of diligence by his original state habeas counsel in those proceedings, but even if he had, such counsel could not be found ineffective for the purpose of the *Martinez* exception for failing to present a meritless claim.  *See Garza v. Stephens,* 738 F.3d 669, 676 (5th Cir. 2013) (agreeing with the district court that "habeas counsel was not ineffective in failing to raise [a] claim at the first state proceeding" because "there was no merit to [the petitioner's] claim"), *cert. denied,* 134 S. Ct. 2876 (2014); *Beatty v. Stephens,* 759 F.3d 455, 466 (5th Cir. 2014); *Braziel v. Stephens,* No. 3:09-CV-1591-M, 2015 WL 3454115, at *10 (N.D. Tex. May 28, 2015), *certificate of appealability denied,* 631 F. Appx. 225 (5th Cir. 2015), *cert. denied,* 136 S. Ct. 1825 (May 2, 2016).  Therefore, these claims are all DENIED as barred.

### c.  Alternative Merits Analysis

In the alternative, Ochoa has not shown that any of his procedurally barred claims of ineffective assistance of counsel have any merit.

### 1.  Mitigation Evidence

In his first claim, Ochoa complains that trial counsel were ineffective in failing to investigate and to present significant mitigation evidence at the punishment phase of his trial (Pet. at 51-88).  At his trial, Ochoa's attorneys presented evidence that he was

raised in a poor, disadvantaged family that emigrated from rural Mexico, that he had a good school record, that he was a kind and quiet person with strong moral and religious beliefs who did not normally hurt people, threaten people, or even have a criminal record.  Instead, he had a good employment record and had been attentive to the needs of his family before the offense.  His attorneys also presented lay and expert testimony that Ochoa had a severe drug addiction that resulted in the serious mental health problems that triggered these tragic murders.

Ochoa acknowledges that trial counsel obtained and presented an extensive mitigation case before the jury, but argues that his background and early life were presented in a truncated form that did not properly make the link with the drug-addiction and brain-damage evidence presented to the jury due to counsel's poor preparation and failure to obtain the needed investigative assistance sooner.  (Pet. at 82-85, 87-88.)

> Mr. Ochoa's defense counsel presented considerable mitigation evidence of Mr. Ochoa's drug addiction and brain damage, and through expert testimony, linked these factors to his behavior to explain what went wrong with an otherwise peaceable and humble man.  But what was lacking in the case was the background that may have explained Mr. Ochoa's fateful choice to try cocaine or placed it in the overall context of Mr. Ochoa's life.  There was little evidence presented, other than a few lines of testimony from Abel, Sr., Gabriel, and Javier, as well was some testimony from Mr. Ochoa himself, about his father's alcoholism and abuse Mr. Ochoa and the rest of the family endured during his most important formative years.  These witnesses, as well as others in the family, could have presented much fuller and more compelling portraits of what life was like growing up in the Ochoa home.

(Pet. at 87.)  Ochoa argues that "the jury heard some of this evidence, it surely did not hear all of it" because the mitigation investigator was not obtained early enough, the witnesses were not prepared well enough, and counsel did not present it well enough. (Pet. at 88.)

In order to prevail on a claim that trial counsel was ineffective for failing to conduct a sufficient mitigation investigation and presentation, a habeas petition must do more than complain that the presentation at trial could have been better.  *See Strickland,* 466 U.S. at 689.  In order to avoid the "distorting effects of hindsight," the United States Court of Appeals for the Fifth Circuit has cautioned:  "We must be particularly wary of arguments that essentially come down to a matter of degrees.  Did counsel investigate enough?  Did counsel present enough mitigating evidence?  Those questions are even less susceptible to judicial second-guessing." *Carty v. Thaler,* 583 F.3d 244, 258 (5th Cir. 2009) (quoting *Dowthitt v. Johnson,* 230 F.3d 733, 743 (5th Cir. 2000)); *see also Ward v. Stephens,* 777 F.3d 250, 265 (5th Cir.), *cert. denied,* 136 S. Ct. 86, 193 L. Ed. 2d 76 (2015).  Ochoa's claim comes down to a matter of degrees, relying upon precisely the sort of judicial second-guessing that *Strickland* was intended to avoid.

Ochoa has not satisfied either prong of *Strickland.*  He has not shown that counsel did not know enough about this mitigating evidence to make a "reasonable strategic decision 'to balance limited resources' and to focus on expensive clinical psychologists and forensic experts rather than on investigators." *Ward,* 777 F.3d at 264 (citing *Richter,*

28

562 U.S. at 107 ("Counsel was entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies.")).  Further, Ochoa has not shown that presenting more evidence on these points or additional details would have changed the outcome of the trial.  "The likelihood of a different result must be substantial, not just conceivable." *Gates v. Davis,* — Fed. Appx. —, 2016 WL 4473230 at *1 (5th Cir. Aug. 24, 2016) (quoting *Richter,* 562 U.S. at 112).  Accordingly, if this claim were not procedurally barred, it would be denied for lack of merit.

## 2.  <u>Jury Selection</u>

In his second and third claims, Ochoa complains that trial counsel were ineffective in failing to conduct an adequate voir dire made the subject of his fourth claim, specifically that counsel did not question potential jurors about their ability to give meaningful consideration to defense mitigation evidence and to be fair in a case involving five victims and did not properly object to the trial court's ruling limiting questioning of the potential jurors.  (Pet. at 89-102.)  In his fifth claim, Ochoa asserts that his counsel on direct appeal was ineffective in failing to raise these jury selection issues.  (Pet. at 102-103.)  In addition to asserting the procedural bar, Respondent argues that these claims lack merit (Ans. at 46-55, 57-59), specifically pointing out that Ochoa has not demonstrated prejudice by showing that any juror was actually biased against him (Ans. at 47, 56).

In support of these claims, Ochoa asserts that prejudice is shown in that the prosecutor argued in the punishment stage that the death sentence should be imposed because there were five victims.  (Pet. at 100.)  He also argues that prejudice should be presumed.  (Pet. at 100-101.)

In *Neville,* 423 F.3d at 482, the United States Court of Appeals for the Fifth Circuit addressed the prejudice required to show that trial counsel was ineffective in failing to question potential jurors during voir dire about their position on an alleged "linchpin defense" that he suffered from lupus.  The Court of Appeals held that the habeas petitioner had not satisfied either prong of *Strickland.*  Regarding the prejudice prong, Neville had failed to show two things: "First, he failed to show that any particular juror was in fact prejudiced against the lupus defense.  Second, he failed to establish that, even if Neville's counsel had indeed questioned the jurors about lupus, the jurors would have found the lupus evidence persuasive enough to affect the outcome." *Id.* at 483.  Similarly, in *United States v. Fisher,* 480 F. Appx. 781, 782 (5th Cir. 2012), the Court of Appeals held that trial counsel was not ineffective in failing to question or challenge a potential juror because there was no credible evidence that the juror was biased.

More specifically, in holding that a claim was not shown to be substantial under *Martinez,* the Court of Appeals in *Garza,* 738 F.3d at 675-76, held that an allegation that

trial counsel was ineffective in failing to ask potential jurors about their views on the

death penalty failed to sufficiently allege prejudice.

> Garza utterly fails to satisfy *Strickland*'s second prong, relying solely on speculation. Indeed, Garza does not even argue that, without the alleged errors, there is a reasonable probability that the jury would not have answered the special issues in the state's favor. Instead, Garza argues that, because [trial counsel] did not ask what the jurors would do in a case exactly like this one, the jurors may not have been fair and impartial. Garza therefore fails to establish that he suffered prejudice as a result of trial counsel's alleged error.

*Id.* at 676.

Ochoa points out that a juror who had been seated was excused when she later

remembered the pretrial publicity on this case and told the court that she could not be

fair. (Pet. at 94.) This may have been a sufficient showing of prejudice if the juror had

not been excused. But to find based on this that other jurors were biased against Ochoa,

or would have remembered unfavorable pretrial publicity, because of the failure to ask

that question would be the kind of speculation that the Court of Appeals has

discouraged in opinions like *Garza*.

Because Ochoa has not alleged sufficient prejudice to satisfy the second prong of

*Strickland*, Ochoa's second and third claims have no merit. Accordingly, if they were not

procedurally barred, these claims would be denied for lack of merit.

In Ochoa's fifth claim, he complains that his counsel on direct appeal was

ineffective in failing to raise on direct appeal the complaints in his second, third and

fourth claims before this Court. (Pet. at 102-103.) As mentioned above, appellate

counsel's conduct is measured by the same two-prong *Strickland* standard. "[A]ppellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith,* 528 U.S. at 288 (citing *Jones v. Barnes,* 463 U.S. 745 (1983)). When appellate counsel filed a brief on appeal, a habeas petitioner must show "that a particular nonfrivolous issue was clearly stronger than issues that counsel did present. In both cases, however, the prejudice analysis will be the same." *Id.* at 288. Ochoa has not presented any comparison between the underlying due process claim (his fourth claim) and the ones that were presented on appeal.

The trial court has wide discretion in determining the scope and content of the voir dire. To show a violation of due process from the trial court's limits on a voir dire examination, a complaint must show the deprivation of a question that was constitutionally compelled. To make this showing "it is not enough that requested voir dire questions might be helpful. Rather, the trial court's failure to ask (or permit counsel to ask) the questions must render the defendant's trial fundamentally unfair." *Sells v. Thaler,* Civ. No. SA-08-CA-465-OG, 2012 WL 2562666, at *18 (W.D. Tex. June 28, 2012) (citing *Morgan v. Illinois,* 504 U.S. 719, 730 n.5 (1992); *Mu'Min v. Virginia,* 500 U.S. 415, 425-26 (1991)). Only two specific inquiries of voir dire have been found by the Supreme Court to be constitutionally compelled: inquiries into a juror's racial prejudice, *Mu'Min,* 500 U.S. at 424, and whether a juror in a capital case had "general

objections to the death penalty or expressed conscientious or religious scruples against its infliction." *Morgan,* 504 U.S. at 732 (quoting *Witherspoon v. Illinois*, 391 U.S. 510, 522 (1968)); *see Perez v. Prunty,* 139 F.3d 907, at *1 (9th Cir. 1998). Ochoa has not shown that the questions he sought were constitutionally compelled. Therefore, he has not shown that his underlying fourth claim for relief would have merit.

Ochoa has not shown that any of the claims that were not raised on appeal would have prevailed and has not satisfied either prong of *Strickland* regarding his fifth claim. Accordingly, if this claim were not procedurally barred, it would also be denied for lack of merit.

### 3.  Rebuttal Evidence

In his ninth claim, Ochoa complains that trial counsel were ineffective in failing to make proper and timely objections to the trial court's ruling excluding important rebuttal evidence of Bessie McClendon and Victor Faz from the punishment phase of his trial. (Pet. at 114-17.) Respondent argues that Ochoa has not proven trial counsel's conduct to be deficient and has not proven the content of the excluded testimony. (Ans. at 78-79.)

"The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations." *Chambers v. Mississippi,* 410 U.S. 284, 294 (1973). This constitutional right of criminal defendants to present evidence in their defense is important, but not absolute. It does not include evidence

that is cumulative, confusing, harassing, prejudicial, or only marginally relevant. *See Kittelson v. Dretke,* 426 F.3d 306, 319 (5th Cir. 2005); *Miller v. United States,* No. A-06-CR-125 LY, 2012 WL 727897, at *4 (W.D. Tex. Mar. 5, 2012). "[S]tate and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials." *United States v. Scheffer,* 523 U.S. 303, 308 (1998). Such rules "do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve'" and their application does not infringe "upon a weighty interest of the accused." *Id.* (quoting *Rock v. Arkansas,* 483 U.S. 44, 56 (1987)). "The constitutional right to present a defense is not abridged unless the evidence was so material that it deprived the defendant of a fair trial." *Miller,* 2012 WL 727897, at *5 (citing *Allen v. Howes,* 599 F.Supp.2d 857, 872 (E.D. Mich. 2009)).

The evidence that Ochoa complains was omitted appears to be either cumulative of other evidence that was before the jury or of limited mitigating value. Ochoa complains that trial counsel was not able to get the following testimony admitted through McClendon and Faz: (1) what Cecilia told them about a secret between Cecilia and her mother regarding her first child, Jonathan, that hurt Ochoa when he learned about it and caused their separation; (2) about the close and loving relationship between Cecilia and Ochoa and their children; (3) that Ochoa had not abused Cecilia; and (4) that Cecilia was not afraid of Ochoa. (Pet. at 114-15.) Respondent points out that no

affidavits have been produced to show the missing content of the witnesses' testimony and, therefore, the content of their testimony is completely speculative and insufficient to show a violation of *Strickland*.  (Ans. at 79.)

Ochoa's complaint focuses on counsel's examination of witnesses and responses to objections and evidentiary rulings during the trial.   Because counsel has wide discretion, "decisions as to whether or not to call certain witnesses to the stand, whether to ask or refrain from asking certain questions, and the like, are tactical determinations. Errors, even egregious ones, in this respect do not provide a basis for post-conviction relief." *United States v. Rubin,* 433 F.2d 442, 445 (5th Cir. 1970).  As in complaints regarding counsel's failure to call witnesses, Ochoa's complaint about the failure to get specific testimony from those witnesses before the jury calls the missing testimony into question.  Therefore, he should submit the same type of proof required to support those complaints as it pertains to the content of the witness testimony.

"To prevail on an ineffective assistance claim based upon uncalled witnesses, an applicant must name the witness, demonstrate that the witness would have testified, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable." *Gregory v. Thaler,* 601 F.3d 347, 352 (5th Cir. 2010) (citing *Alexander v. McCotter,* 775 F.2d 595, 602 (5th Cir. 1985)).   In construing this requirement, federal courts require habeas petitioners "to provide affidavits or other probative proof to establish the content of the proposed witnesses' testimony." *Sandifer*

*v. Stephens,* Civ. Action No. H-14-0688, 2015 WL 4207200, at *7 (S.D. Tex. July 2, 2015); *Gregory,* 601 F.3d at 353 ("conclusory statements regarding the content of the uncalled witnesses testimony are insufficient to demonstrate ineffective assistance"); *Gamble v. Stephens,* Civ. Action No. H-14-1492, 2014 WL 5305860, at *5 (S.D. Tex. Oct. 15, 2014) (conclusory allegations that are not supported in the record are insufficient to establish ineffective assistance of counsel); *Koch v. Puckett,* 907 F.2d 524, 530 (5th Cir.1990) ("mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue" in federal habeas review).

Ochoa presents no affidavits or other proof from these witnesses, and offers only his own conclusory allegations regarding what those witnesses would have said. The Court of Appeals has explained that "[w]here the only evidence of a missing witnesses' testimony is from the defendant, this Court views claims of ineffective assistance with great caution." *Sayre v. Anderson,* 238 F.3d 631, 636 (5th Cir. 2001) (quoting *Lockhart v. McCotter,* 782 F.2d 1275, 1282 (5th Cir. 1986)); *see also Evans v. Cockrell,* 285 F.3d 370, 377 (5th Cir. 2002) (reversing district court for assuming that witnesses, from whom no affidavits were presented, would have testified favorably for the defense). Since these witnesses were called by Ochoa's attorney it would appear to have been easy for him to obtain the necessary affidavits. Because Ochoa has not submitted any proof of the content of the proposed testimony, he has not satisfied either prong of *Strickland,* and this claim may be denied on that basis.

36

Even if Ochoa had submitted supporting proof, however, his allegations do not show that the underlying due process claim would have any merit.  The substance of the allegedly excluded evidence was almost entirely cumulative of other evidence admitted at trial.  Trial counsel was able to show how Cecilia and her mother kept the secret about Jonathan.  Ochoa's father, Abel Ochoa Sr. testified that he did not know the truth about Jonathan either, and when Ochoa found out, he was deeply upset and hurt.  (35 RR at 117-118, 120.)  Gabriel, Ochoa's brother, testified that he did not know much about the situation with Jonathan, but he knew that Ochoa was hurt by it.  (35 RR 137-138.)  Javier, another brother of Ochoa, also testified that the only problem Ochoa told him that he had with his marriage to Cecilia was when Ochoa found out the truth about Jonathan, but they didn't talk about it much.  (36 RR at 180.)  And trial counsel was able to indicate trouble in the relationship between Cecilia and her mother through Faz, who testified that Cecilia confided in him about a recording that she had made of a conversation with her mother and played a portion of it for him.  (37 RR at 171-72.)  Ochoa himself also testified about this secret, about the argument between Cecilia and her mother that led to him finding out the truth, and how that made him feel.  (38 RR at 48-50.)

Regarding the close and loving relationship between Cecilia and Ochoa and their children, trial counsel was able to establish this through many sources.  McClendon was able to express her belief that Ochoa and Cecilia had a close, loving relationship (37 RR

at 133), that Ochoa loved her dearly (37 RR at 148), and that they were a normal, caring couple and outwardly appeared affectionate towards one another.  (37 RR 134). McClendon saw Ochoa playing with his children in the yard, and he was very proud when Anahi was born.  (37 RR at 134, 141.)  He carried her around and showed her affection.  (37 RR an 141.)  He played with Crystal and taught her how to ride a bicycle. (37 RR at 141-42.)  McClendon also saw Ochoa playing with Jonathan and treating him like he was Ochoa's own son.  (37 RR at 142-43.)

Faz also testified that Ochoa and Cecilia had a loving relationship and loved their children.  He believed that Cecilia and Ochoa loved one another and were happy.  (37 RR at 159-60.)  Faz testified that Ochoa and Cecilia loved their children and took good care of them.  (37 RR at 160-61.)  They took in Cecilia's father, who had half of his leg amputated, to take care of him.  (37 RR at 162-64.)  Faz also observed Ochoa treating Jonathan as well as he treated his own daughter.  (37 RR at 165-66.)  Ochoa's brother Gabriel also testified that Ochoa loved Cecilia and their daughters and would take them to church on Sundays.  (35 RR at 138, 143-44.)  Gabriel saw them frequently, including every day after Ochoa's daughter was born.  (35 RR at 138-39.)  Ochoa's brother Javier also testified that Ochoa loved his wife and children.  (36 RR at 174.)  Ochoa's father, Abel Sr. also testified that he could tell Ochoa and Cecilia were in love and how happy they all were when they married and had a daughter.  (35 RR at 116-17.)  And, of

course, Ochoa himself testified about his love for Cecilia and the children, and how happy they were together.  (38 RR at 29-36, 45-47.)

Regarding the purported missing testimony that Cecilia told others that Ochoa had not abused her and that she was not afraid of him, even if proof of such statements were made, it would add little to the evidence admitted.  McClendon also testified that she never noticed any bruises on Cecilia, and she never saw Ochoa abuse his wife in any way.  (37 RR at 136.)  In the six years she had known Ochoa, she had never seen him do anything violent.  (37 RR at 145.)  McClendon did not believe that Ochoa was jealous of Cecilia and knew of nothing to suggest that.  (37 RR at 147.)  In fact, Cecilia had never told McClendon anything in confidence that gave her any reason to believe Cecilia was afraid of Ochoa.  (38 RR at 149.)  Likewise, Faz testified before the jury that he never saw any evidence of abuse of Cecilia and he believed that Cecilia would have told him if Ochoa were abusing her. (37 RR at 172-73.)

In addition, Gabriel testified that he was constantly around Cecilia and Ochoa and their family, and never saw Ochoa abuse, hit, or slap Cecilia.  (35 RR at 138-39.) Gabriel recalled an incident when Ochoa showed restraint after Cecilia slapped a drink from his hand; Ochoa did not get angry but just laughed it off.  (35 RR at 148-49.) Javier also testified that he never saw Ochoa react in a violent manner towards Cecilia and confirmed the incident where Ochoa showed unusual restraint when she slapped the drink from his hand.  (36 RR at 172-73.)  Ochoa's friend Mike Barrera also testified that

he worked with Ochoa for three years, socialized with him and Cecilia, and he never saw Ochoa get violent or even talk inappropriately with anyone, including Cecilia, in the three years he worked with Ochoa.  (36 RR at 122-24.)

Ochoa's argument exceeds the limits of an accused's right to the effective assistance of counsel.  He does not contend that trial counsel failed to adequately investigate, find witnesses, prepare them to testify and present them at the punishment phase of his trial.  Indeed, trial counsel did precisely that, but were thwarted in their attempt to get the precise evidence before the jury because of the prosecutor's hearsay objections that were sustained by the trial court.  Further, trial counsel pressed the issue with the trial court and argued for leniency in the enforcement of the hearsay rule in light of the testimony of Alma regarding other statements made by Cecilia.  (37 RR at 156-57.)  And trial counsel worked around the trial court's refusal to allow hearsay evidence by getting the substance of the evidence sought before the jury in other ways and getting the balance of any evidence with mitigating value in through other sources.

Ochoa contends that "trial counsel were deficient for not making the proper and timely objections and securing a proper ruling from the trial court" (Pet. at 117), but he does not specify what further objections counsel could have made.  To the extent that Ochoa complains that trial counsel did not make an adequate "proffer of the evidence" to the trial court regarding the content of the excluded testimony (Pet. at 116), his presentation to this Court contains the same deficiency, the lack of an affidavit from the

40

witnesses showing the omitted testimony, which is "fatal to his claim." *Gregory,* 601 F.3d at 353.  Further, Ochoa has not shown that the statements Cecilia allegedly made to these witnesses were not hearsay, or that some other method of getting this evidence admitted would have been more successful.  He merely complains about the trial court's mechanistic enforcement of the rules of evidence.  (Pet. at 116.)

Ochoa has not shown that his due process rights were violated by the exclusion of hearsay testimony of McClendon or Faz, much less that his trial counsel were in any way ineffective regarding this evidence.  Ochoa has not shown that trial counsel performed deficiently or that any omitted testimony would have changed the outcome of the trial.  Therefore, if this claim was not denied as procedurally barred, it would be denied for lack of merit.

## 4. <u>Unreliable Expert Testimony</u>

In Ochoa's eleventh claim, he complains in the alternative that his appellate counsel was ineffective in failing to present on direct appeal the substance of Ochoa's tenth claim complaining about the trial court's erroneous admission of Dr. Coons' testimony as unconstitutionally unreliable.  (Pet. at 124, 135-41.)  In addition to asserting that both of those claims are procedurally barred, Respondent argues that they lack merit.  (Ans. at 79-91.)

Respondent also incorrectly asserts that Ochoa complains that his trial counsel was ineffective in failing to make a proper motion to exclude this testimony.  (Ans. at

86-91.)  In fact, it is the trial court's denial of trial counsel's motions that forms the basis for Ochoa's tenth claim.  In his eleventh claim, Ochoa points out that trial counsel "sought to exclude Dr. Coons' prospective rebuttal evidence through a Motion to Exclude and Memorandum in Opposition to the Testimony of Dr. Richard E. Coons, and which relied on both due process and state evidentiary grounds as a basis for exclusion." (Pet. at 136 (citing 1 State Clerk's Record ("CR") at 124-38).)  This motion was taken under advisement before trial and presented in a hearing under Rule 705 of the Texas Rules of Evidence during the punishment stage that was outside of the presence of the jury.  (31 RR 8; 38 RR 189-213.)  Ochoa argued that "trial counsel submitted a well-researched, thoroughly cited motion and memorandum of law.  Review of the memo within the appellate record indicates the memo is legally sound, and certainly not implausible on its face." (Pet. at 137-38.)  Ochoa castigates appellate counsel for failing to raise the trial court's denial of this motion in his brief on direct appeal. (Pet. at 136.)  "At a minimum, appellate counsel could have simply 'cut and pasted' the contents of the motion into the appellate brief with minor revisions." (Pet. at 138.)

As set out above, appellate counsel's conduct is measured by the same *Strickland* standard.  *See Reinhert,* 357 F.3d at 525 (habeas petitioner must show constitutionally deficient performance and prejudice); *Williams,* 16 F.3d at 635 (appellate counsel not ineffective in failing to raise meritless issues); *Mendiola,* 635 F.2d at 491.  Further,

appellate counsel's performance is "viewed as of the time of counsel's conduct." *Schaetzle v. Cockrell,* 343 F.3d 440, 448 (5th Cir. 2003) (quoting *Strickland,* 466 U.S. at 690).

State and federal courts have upheld the use of Dr. Coons' testimony over similar challenges. Expert psychiatric testimony has been held admissible in capital murder trials over the argument that expert testimony predicting future dangerousness too unreliable. *Fields,* 483 F.3d at 341-45. In that case, the United States Court of Appeals for the Fifth Circuit upheld the admission of Dr. Coons' testimony of future dangerousness in a federal death penalty trial, rejecting "the claim that Dr. Coons's testimony was so unreliable that the district court abused its discretion by admitting it" under the Constitution and the Federal Rules of Evidence. *Id.* at 345.

The CCA also upheld the use of Dr. Coons' testimony in 2008 in *Espada v. State,* No. AP-75,219, 2008 WL 4809235, at *9 (Tex. Crim. App. Nov. 5, 2008). In 2010, the CCA held that the admission of Dr. Coons' testimony violated state evidentiary rules but that such violation of state law was harmless. *See Coble v. State,* 330 S.W.3d 253, 277-86 (Tex. Crim. App. 2010). In federal court, that error in admitting Dr. Coons' testimony at Coble's trial was found to be a matter of state law that did not rise to a "constitutionally cognizable claim for which federal habeas relief may be granted." *Coble v. Stephens,* Civ. Action No. W-12-CV-039, 2015 WL 5737707, at *19 (W.D. Tex. Sept. 30, 2015), *application for certificate of appealability pending,* No. 15-70037 (5th Cir.). This Court has found no state or federal court holding that Dr. Coons' testimony violated the

due process right asserted in Ochoa's tenth claim, and the record before this Court does not make the required showing.

The record indicates that the state called Dr. Coons to rebut the testimony of Ochoa's experts, Dr. Theodore Simon and Dr. Edgar Nace, regarding Ochoa's brain damage from cocaine abuse, that Ochoa committed the offense in a cocaine-induced delirium, and that he did not pose a future danger.  (36 RR at 40-105.)  The record also indicates that trial counsel filed a motion before trial to exclude this evidence and the trial court conducted a hearing during the trial outside of the presence of the jury under Rule 705 of the Texas Rules of Evidence before allowing this expert to testify before the jury.  (38 RR 189-213.)  Trial counsel extensively examined Dr. Coons regarding his methods and the existence of studies or literature to support his methods and conclusions.   (38 RR 196-213.) The trial court denied the motion to exclude the testimony and allowed trial counsel to cross examine Dr. Coons before the jury regarding all of these asserted deficiencies in his expert opinions and even the fact that Dr. Coons did not comply with a subpoena duces tecum.  (38 RR at 243-62, 263-64.)

Federal courts on habeas review do "not sit to review the mere admissibility of evidence under state law."  *Little v. Johnson,* 162 F.3d 855, 862 (5th Cir. 1998).  "A federal court may grant habeas relief based on an erroneous state court evidentiary ruling only if the ruling violates a specific federal constitutional right or is so egregious that it renders the petitioner's trial fundamentally unfair."  *Kittelson,* 426 F.3d at 320 (quoting

*Brown v. Dretke,* 419 F.3d 365, 376 (5th Cir.2005)).  Ochoa asserts a broad due process right to the exclusion of this testimony.  He has not supported his argument with authority to show that he has a specific constitutional right to exclude unreliable expert testimony and what the constitutional standard to test such reliability would be. Instead, he argues principles from Rule 702 of the Federal Rules of Evidence and the standard of evidentiary reliability applied in that and subsequent cases construing evidentiary rules.  (Pet. at 125-29 (citing *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1993)).)  This does not provide a sufficient basis to grant federal habeas relief from a state conviction and death sentence.  Ochoa's due process claims lacks merit, and appellate counsel could not have been ineffective in failing to raise it.

Because he has not shown that the complaint raised in his tenth claim would have prevailed in his direct appeal, he has failed to show either prong of *Strickland* with respect to his eleventh claim.  Appellate counsel does not perform deficiently by failing to make a meritless claim, and failing to raise it would not have any impact on the outcome of his appeal.  *See Williams,* 16 F.3d at 635; *Mendiola,* 635 F.2d at 491.  Therefore, if Ochoa's eleventh claim was not procedurally barred, it would be denied for lack of merit.

### 5.  <u>Shackles</u>

In his thirteenth claim, Ochoa complains that trial counsel were ineffective in failing to object to the trial court's decision to place Ochoa in shackles.   (Pet. at 144-46.) Respondent argues that this claim lacks merit and that Ochoa has not proven that he

was placed in shackles or that, if he was, his attorneys failed to object.  (Ans. at 96-97.)

Ochoa's reply did not respond to this argument or provide any additional information

on this claim.

> The Supreme Court stated the rule that,
>
> [C]ourts cannot routinely place defendants in shackles or other physical
> restraints visible to the jury during the penalty phase of a capital
> proceeding.  The constitutional requirement, however, is not absolute.  It
> permits a judge, in the exercise of his or her discretion, to take account of
> special circumstances, including security concerns, that may call for
> shackling.  In so doing, it accommodates the important need to protect the
> courtroom and its occupants.  But any such determination must be case
> specific; that is to say, it should reflect particular concerns, say, special
> security needs or escape risks, related to the defendant on trial.

*Deck v. Missouri,* 544 U.S. 622, 633 (2005).

In conducting this inquiry, a Texas trial court would consider the circumstances

of the specific case and an appellate court would evaluate the claim by looking to the

record.  "[S]hackling error may rise to the level of constitutional error when the record

reflects a reasonable probability that the jury was aware of the defendant's shackles."

*Bell v. State,* 415 S.W.3d 278, 283 (Tex. Crim. App. 2013).  Once a Texas appellate

court makes that determination, it must determine whether the shackling was justified.

A federal habeas petitioner carries the burden of proof to show ineffective

assistance of counsel, which includes the burden to show both deficient performance and

prejudice.

> With respect to prejudice, a challenger must demonstrate "a reasonable
> probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." [*Strickland,* 466 U.S.] at 694, 104 S.Ct. 2052.  It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding."  *Id.,* at 693, 104 S.Ct. 2052.  Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  *Id.,* at 687, 104 S.Ct. 2052.

*Richter,* 562 U.S. at 104.

The record does not reflect that Ochoa was even shackled, much less a reasonable probability that the jury was aware of it.  In fact, both parties point to the lack of any mention of this in the record.  (Pet. at 143-44; Ans. at 93-94, 96-97.)

To show that he had been shackled before the jury at the punishment phase of his trial, Ochoa relies upon a second affidavit from his trial mitigation investigator, Tena Francis.  This affidavit could be read to assert merely her conclusion that Ochoa must have been shackled because of the way he was walking.  (Francis Aff., doc. 8-1, at 12.) Assuming that this affidavit is capable of showing that Ochoa was shackled, however, it does not provide any indication of the reasons for placing him in shackles or whether it was part of any routine.

Ochoa has not attempted to negate any of the justifications that may have existed to place him in restraints.  Instead, he relies upon a prior state appellate standard expressed in a CCA opinion that has since been overturned.  (Pet. at 142-43 (citing *Long v. State,* 823 S.W.2d 259, 282 (Tex. Crim. App. 1991)).)  While counsel's conduct is to be judged under the law existing at the time of the conduct, *Strickland* prejudice "is

47

measured by current law and not by the law as it existed at the time of the alleged error." *Westley v. Johnson,* 83 F.3d 714, 723 (5th Cir. 1996) (citing *Lockhart v. Fretwell,* 506 U.S. 364, 372-73 (1993)).

Ochoa has not provided the information needed on federal habeas review to show that any shackling, if it indeed occurred, would have been unjustified under *Deck,* that an objection at trial would have prevailed, or that a point of error on appeal would have been sustained. Ochoa has not established that the due process complaint made the basis of his twelfth claim has merit, much less that his counsel was ineffective for failing to assert it in an objection. "Unsupported allegations and pleas for presumptive prejudice are not the stuff that *Strickland* is made of." *Sawyer v. Butler,* 848 F.2d 582, 589 (5th Cir. 1988), *on reh'g,* 881 F.2d 1273 (5th Cir. 1989), *aff'd sub nom. Sawyer v. Smith,* 497 U.S. 227 (1990). Accordingly, if this claim were not procedurally barred, it would be denied for lack of merit.

### 6. Mitigation Special Issue

In his twentieth claim, Ochoa complains that his trial counsel were ineffective in failing to object to the lack of a burden of proof on the mitigation special issue and to the lack of a definition of mitigating evidence made the basis of his eighteenth and nineteenth claims, and that his appellate counsel was ineffective for failing to raise these complaints in his brief on direct appeal. (Pet. at 161.) In addition to asserting a

procedural bar, Respondent claims in the alternative that this claim lacks merit and that any complaints against his appellate counsel are inadequately briefed.  (Ans. at 123.)

Respondent is correct that only the title to this section mentions any complaint against appellate counsel.  (Pet. at 154.)  Ochoa's briefing does not assert how his appellate counsel may have been ineffective.  (Pet. at 161.)  Therefore, Ochoa has waived his complaint against appellate counsel, but these claims are all procedurally barred and may be denied for lack of merit as well.

Ochoa's argument relies on broad legal principles and does not include authority that would support these specific claims.  In fact, the arguments asserted in his eighteenth and nineteenth claims have been previously raised and rejected in this circuit. In *Rowell,* 398 F.3d at 378, the Court of Appeals held that no Supreme Court or Circuit precedent constitutionally requires that Texas' mitigation special issue be assigned a burden of proof.  Since then, the Supreme Court has reaffirmed that no particular standard is required to be expressed in the jury instructions regarding the burden to prove mitigating circumstances.  *See Kansas v. Carr,* 136 S. Ct. 633, 643 (2016).  The Court of Appeals has also repeatedly found that the mitigation special issue sufficiently defines mitigating evidence and allows the jury to give full consideration to it.  *See Sprouse v. Stephens,* 748 F.3d 609, 622 (5th Cir.), *cert. denied,* 135 S. Ct. 477 (2014); *Blue v. Thaler,* 665 F.3d 647, 665 (5th Cir. 2011); *Scheanette v. Quarterman,* 482 F.3d 815, 824, 826-27 (5th Cir. 2007); *Beazley,* 242 F.3d at 260.

49

Because Ochoa's eighteenth and nineteenth claims lack merit, counsel could not have been ineffective for failing to assert them in objections at trial or raise them in claims on direct appeal. *Clark,* 19 F.3d at 966; *Wood,* 503 F.3d at 413; *Williams,* 16 F.3d at 635; *Mendiola,* 635 F.2d at 491. If Ochoa's twentieth claim was not procedurally barred, it would be denied for lack of merit.

## B. *Other Claims Subject to Procedural Bar*

Ochoa presents other claims that were either not presented to the state court or found to be procedurally barred by the state court. Respondent asserts a procedural bar to each of these claims. Because the state procedural grounds appear sufficient to bar federal habeas review and Ochoa has not shown that any of these claims come within an exception to procedural bar, they are all denied as barred.

### 1. <u>Unexhausted Claims</u>

In addition to claims listed in subsection (A) above, Ochoa presents the following related claims to this Court that were not presented to the state court: (1) his third and fourth claims in which Ochoa complains that he was deprived of his right to be tried by a fair and impartial jury when the trial court did not allow his counsel to ask potential jurors about their ability to be fair in a case involving five victims (Pet. at 89-102); (2) his eighth claim in which Ochoa complains that the trial court's exclusion of important rebuttal evidence denied him the right to present a fair defense (Pet. at 114-17); (3) his tenth claim in which Ochoa complains that he was deprived of his right to due process

of law by the State's presentation of unreliable psychiatric rebuttal testimony (Pet. at 117-35); and (4) his twelfth claim in which Ochoa complains that his right to due process was denied when he was shackled during the punishment phase of his capital murder trial (Pet. at 141-44). To each of these claims, Respondent asserts that they are unexhausted, would be barred by the Texas abuse-of-the-writ rule if they were raised in a subsequent state habeas petition, and therefore are procedurally barred in this Court as well. (Ans. at 46, 55-56, 76, 80-81, 91-92.)

As set out above, this Court cannot grant relief on an unexhausted claim under 28 U.S.C. § 2254(b)(1)(A), and when a stay to exhaust a claim would be futile because the state court would now find the claims procedurally barred, this Court may find the claims procedurally barred as well. *Coleman,* 501 U.S. at 735 n.1; *Neville,* 423 F.3d at 480. The Texas abuse-of-the-writ doctrine would bar these claims in a subsequent state habeas proceeding, and has been recognized as an independent and adequate state ground for imposing a procedural bar in federal court. *See Canales,* 765 F.3d at 566; *Hughes,* 530 F.3d at 342. Because none of these claims were exhausted in the state court, they are all subject to this procedural bar.

Ochoa acknowledges that these claims were not exhausted and expressly did not assert cause and prejudice to excuse the procedural bar of any of these claims. (Reply at 55). He relies upon the exception to procedural bar created in *Martinez* to assert that his prior counsel was ineffective in failing to present these claims to the state courts. (P's

Supp. Br. at 1-26.)  He initially argued that this Court should stay these proceedings to allow him to present these claims to the state courts (Reply at 55-76), but withdrew that request as futile.  (P's Supp. Br. at 3-15.)  Because each of these claims would be barred by the Texas abuse-of-the-writ rule, and no adequate cause and prejudice is shown to excuse the procedural bar, each of these claims is DENIED as procedurally barred.

In the alternative, each of these claims lacks merit.  As shown in subsection (A)(3)(c) above,  in which this Court conducted an alternative analysis of the merits of each of the related claims of ineffective assistance of counsel for failing to assert these claims at trial and on appeal, the Court found none of these claims have merit. Therefore, if they were not procedurally barred, they would be denied for lack of merit.

### 2.  <u>Claims Denied on State Grounds</u>

Respondent asserts that the following claims were denied by the state court on state procedural grounds: (1) Ochoa's sixth claim that his rights guaranteed by the Confrontation Clause were violated when the trial court allowed testimonial evidence before the jury (Pet. at 104-13); (2) Ochoa's fifteenth claim that he was deprived of rights to due process and to a fair trial when the State destroyed material and exculpatory evidence (Pet. at 146-51); (3) Ochoa's eighteenth claim that the Texas mitigation special issue given in his case failed to assign a burden of proof in violation of his rights (Pet. at 153-57); (4) Ochoa's nineteenth claim that the Texas mitigation special issue given in his case failed to adequately define what is meant by mitigation or

mitigating evidence (Pet. at 157-61); and (5) Ochoa's twenty-first claim that his right to be tried by a jury selected from a fair cross-section of the community was violated (Pet. at 161-62).  Respondent asserts that each of these claims were denied by the state court on independent and adequate state grounds to bar federal habeas review and they are now procedurally barred in this Court.   (Ans. at 65-69 (no contemporaneous objection), 103-105 (failure to raise on direct appeal), 113-14 (failure to raise on direct appeal), 120 (abuse of the writ), 124-25 (no contemporaneous objection and failure to raise on direct appeal).)

### a. Contemporaneous Objection

Respondent asserts that Ochoa's sixth (Confrontation Clause) and twenty-first (Fair Cross-Section) claims are barred by his failure to make a contemporaneous objection at trial.  (Ans. at 65-68, 124-25.)  "[T]he Texas contemporaneous objection rule constitutes an adequate and independent state ground that procedurally bars federal habeas review of a petitioner's claims."  *Rowell,* 398 F.3d at 375 (quoting *Fisher v. Texas,* 169 F.3d 295, 300 (5th Cir. 1999)); *see also Cotton v. Cockrell,* 343 F.3d 746, 754 (5th Cir. 2003).

### 1. Confrontation Clause

In his sixth claim, Ochoa complains of the admission of: (1) a recording of a telephone conversation between Ochoa and Cecilia in which she asks him why he wants to kill them; and (2) the testimony of Cecilia's sister, Alma Alviso, regarding the reason

Cecilia made those recordings and Cecilia's statement that Ochoa had held a gun to her head.  (Pet. at 104-105.)

On direct appeal, Ochoa complained that the admission of the recording violated his rights under the Confrontation Clause of the Sixth Amendment.  (Appellant's Brief at 35-43.)  The Court first notes that only the complaint against the recording was presented on direct appeal.  The complaint regarding Cecilia's statements to Alma does not appear to have been presented to the state court outside of a complaint that trial counsel was ineffective for failing to make a Confrontation Clause objection. Respondent does not assert any failure to exhaust regarding this portion of the claim, but both parties clearly allege that trial counsel failed to make an objection to this based on the Confrontation Clause.  Since the unexhausted portion of this claim would now be procedurally barred by the Texas abuse-of-the-writ rule if brought in a subsequent state habeas proceeding, this Court may treat this entire claim as subject to a state procedural bar.  This Court may also deny this claim on the merits regardless of any failure to exhaust.

The CCA found that trial counsel's objections to this evidence did not assert a violation of the Confrontation Clause, and therefore the error was not preserved for appeal. *Ochoa,* slip op. at 17.  Ochoa acknowledges that a contemporary objection was not made at trial on the basis of the Confrontation Clause, but asserts that the ineffective assistance of trial counsel constitutes sufficient cause and prejudice to excuse

the procedural default of this claim.   (Reply at 46-49.)   As set out in subsection (A)(3)(a)(1) above, however, the state court on habeas review reasonably denied the claim that trial counsel were ineffective for failing to make a Confrontation Clause objection, finding that neither prong of the *Strickland* test had been satisfied.   (SHR at 368-82.)   Therefore, Ochoa has not shown cause and prejudice to excuse the procedural bar of this claim.   Ochoa's sixth claim is DENIED as procedurally barred.

In the alternative, Ochoa has not shown that this claim has merit.  As Respondent points out, binding circuit precedent holds that "the Confrontation Clause does not operate to bar the admission of testimony relevant only to a capital sentencing authority's selection decision." *Fields,* 483 F.3d at 326.  Because the eligibility decision is resolved in the guilt/innocence phase of a Texas capital murder trial, the punishment phase of Ochoa's trial only concerned the selection decision.   Since this evidence was admitted in the punishment phase of his trial, the Confrontation Clause was not violated by its admission.

Ochoa acknowledges that "the Supreme Court has not specifically held at this point that the Confrontation Clause applies to capital sentencing," but argues that the language of the clause and developing case law in other circuits supports his argument. (Reply at 51-53.)  Ochoa's argument appears sufficient to preserve the issue for appeal, but not to overcome the circuit precedent that binds this Court.  Accordingly, if this claim were not procedurally barred, it would be denied for lack of merit.

## 2.  Fair Cross Section

In his twenty-first claim, Ochoa complains that he was deprived of his right to a fair and impartial jury because the venire did not reflect a fair cross-section of the community as required by the Sixth Amendment.  (Pet. at 161-62.)

Ochoa raised this as the eighth claim in his post-conviction application for a writ of habeas corpus, which was found by the state habeas court to be procedurally barred for failing to raise it in a contemporaneous objection at trial.  (SHR at 394-95.)  This finding was expressly adopted by the CCA in its order denying relief.  *Ex parte Ochoa,* 2009 WL 2525740 at *1.  This was a reasonable finding and sufficient to bar federal habeas review.  *See Turner v. Quarterman,* 481 F.3d 292, 301 (5th Cir. 2007).  Because Ochoa does not show an exception to procedural bar, this claim is DENIED as procedurally barred.

In the alternative, this claim lacks merit.  The state habeas court found in the alternative that Ochoa had not shown: (1) that young adults and persons with low income are a distinctive group; (2) that Hispanics, young adults, and persons with low income are consistently under represented in the venire relative to their members in the community who are qualified to serve; or (3) an operational defect in the County's juror selection process.  Instead, Ochoa simply complained that Hispanics, young adults, and persons with·low income do not participate in that process.  (SHR at 396-404.)  This asserts the same claim that has been rejected repeatedly in this Circuit.  *See Rivas v.*

*Thaler,* 432 F. Appx. 395, 402-403 (5th Cir. 2011); *Edwards v. Stephens,* Civ. Action No. 3:10-CV-6-M, 2014 WL 3880437, at *13-14 (N.D. Tex. Aug. 6, 2014), *certificate of appealability denied,* 612 F. App'x 719 (5th Cir.), *cert. denied,* 136 S. Ct. 403 (2015); *Battaglia,* 2013 WL 5570216, at *4; *Doyle v. Thaler,* No. 3:08-CV-138-B, 2012 WL 2376642, at *10-11 (N.D. Tex. June 25, 2012), *certificate of appealability denied sub nom. Doyle v. Stephens,* 535 F. App'x 391 (5th Cir. 2013), *cert. denied,* 134 S. Ct. 1294 (2014); *Escamilla v. Thaler,* Civ. Action No. 3:06-CV-2248-O, 2012 WL 1019605, at *14 (N.D. Tex. Mar. 26, 2012), *aff'd sub nom. Escamilla v. Stephens,* 602 F. App'x 939 (5th Cir.), *cert. denied,* 136 S. Ct. 66 (2015); *see also Berghuis v. Smith,* 559 U.S. 314, 333 n.6 (2010) ("We have also never 'clearly' decided, and have no need to consider here, whether the impact of social and economic factors can support a fair-cross-section claim.").

The state habeas court's alternative findings are entitled to deference. Ochoa has not overcome the presumption of correctness to these alternative findings, much less that the alternative denial of this claim on the merits was unreasonable. Therefore, if this claim were not procedurally barred, it would be denied for lack of merit.

### b. Failure to Raise on Direct Appeal

Respondent asserts that Ochoa's fifteenth, eighteenth and twenty-first claims were found procedurally barred by the state habeas court on the state law ground that they could have been presented on direct appeal but were not. (Ans. at 100, 103-105, 113-14, 124-25.)

## 1.  **Destruction of Evidence**

In his fifteenth claim, Ochoa asserts that he was deprived of his right to due process when the police destroyed certain evidence that was seized upon his arrest.  (Pet. at 146-53.)  This claim was not presented on direct appeal, but in Ochoa's first claim for relief presented in his post-conviction application for a writ of habeas corpus filed in the state court.  The state court found that this claim was procedurally barred in state habeas review because it relied upon the record developed at trial and should have been brought in the direct appeal to the CCA.  (SHR at 353-54)  These findings were expressly adopted by the CCA in its order denying relief.  *Ex parte Ochoa,* 2009 WL 2525740 at *1.

The state court relied upon the state procedural rule that "that habeas corpus cannot be used as a substitute for appeal, and that it may not be used to bring claims that could have been brought on appeal." *Ex parte Nelson,* 137 S.W.3d 666, 667 (Tex. Crim. App. 2004); *see also Ex parte Gardner,* 959 S.W.2d 189, 199 (Tex. Crim. App. 1996) (finding that failure to raise an issue on direct appeal bars consideration of that issue under habeas corpus proceedings).  This Texas rule has been recognized as an independent and adequate state ground to bar federal habeas review.  *See Brewer v. Quarterman*, 466 F.3d 344, 347 (5th Cir.), *adhered to on denial of reh'g,* 475 F.3d 253 (5th Cir. 2006).  This rule was firmly established by the state courts by February of 1998,

well before Ochoa's conviction and direct appeal.  *See Busby,* 359 F.3d at 719.

Therefore, it is a sufficient independent and adequate state ground to bar this claim.

Ochoa asserts that his trial and appeal counsel were ineffective for failing to

preserve this evidence and present this complaint on appeal.  The state court denied this

on independent and adequate state grounds and Ochoa has not shown cause and

prejudice to excuse the procedural bar of this claim.  Therefore, Ochoa's fifteenth claim

is DENIED as procedurally barred.

In the alternative, this claim lacks merit.  As set out in subsection (A)(3)(a)(2)

above, Ochoa has not shown that the destruction resulted from any bad faith on the part

of law enforcement.  The state habeas court, in the alternative, made findings that this

claim lacks merit.  (SHR at 355-60.)  These findings have not been shown to be

incorrect.  Therefore, if this claim was not procedurally barred, it would be denied for

lack of merit.

## 2.  <u>Mitigation Special Issue</u>

In his eighteenth claim, Ochoa asserts that his rights to due process and to be free

from arbitrary and capricious punishment were violated when the state failed to assign

a burden of proof to the mitigation special issue.  (Pet. at 153-61.)  This claim was not

presented on direct appeal.

In his second claim for relief presented in his state post-conviction application for

a writ of habeas corpus, Ochoa complained that the failure of the state law to require

that the state prove the absence of mitigating evidence beyond a reasonable doubt violated his rights under the Fifth, Sixth, Eighth and Fourteenth Amendments.  (SHR at 25-30 (citing *Apprendi v. New Jersey,* 530 U.S. 466 (2000), *Ring v. Arizona,* 536 U.S. 584 (2002), and *Blakely v. Washington,* 542 U.S. 296 (2004)).  The state court found that this claim was procedurally barred in state habeas review because it relied upon the record developed at trial and should have been brought in the direct appeal to the CCA.  (SHR at 362.)  These findings were expressly adopted by the CCA in its order denying relief.  *Ex parte Ochoa,* 2009 WL 2525740 at *1.

As set out above, this rule was well established before Ochoa's direct appeal and has been recognized as an independent and adequate state ground to bar federal habeas review.  *See Brewer*, 466 F.3d at 347; *Busby,* 359 F.3d at 719.  Ochoa also complains that his trial counsel were ineffective for failing to raise this issue at trial, but it is not clear whether this is being asserted as cause and prejudice to excuse the procedural default.  (Pet. at 161.)  Even so, this Court found in subsection (A)(3)(c)(6), above, that trial counsel were not ineffective in failing to raise this claim and, in the alternative, that this claim lacks merit.

Ochoa has not shown cause and prejudice to excuse the procedural bar applied by the state court to deny this claim, or that the claim has merit.  Therefore, this claim is DENIED as procedurally barred and, in the alternative, for lack of merit.

3.  **Fair Cross Section**

As set forth in subsection (a)(2) above, Ochoa's twenty-first claim asserts that his right to a jury drawn from a fair cross section of the community was denied because the venire did not reflect a fair cross-section of the community.  He relies upon evidence that was not in the record before the trial court and CCA on direct appeal.  This Court has already denied this claim as procedurally barred because it was not raised in a contemporaneous objection before the trial court and found, in the alternative, that it lacks merit.  Therefore, it is unnecessary to determine whether it may also be procedurally barred on this state ground as well.

### c. Abuse of the Writ

In Ochoa's nineteenth claim, he complains that the Texas mitigation special issue given in his case failed to adequately define what is meant by mitigation or mitigating evidence.  (Pet. at 153-61.)  Respondent asserts that his claim is procedurally barred and, in the alternative, lacks merit.  (Ans. at 119-21.)

This claim was found procedurally barred by the state habeas court because it was not brought in a timely state habeas application and was found to have been brought in subsequent state habeas proceedings that did not meet the requirements of TEX. CODE CRIM. PROC., art. 11.071 § 5.  *Ex parte Ochoa,* No. WR-67,495-01, 2009 WL 2525740 at *1.  The application of the Texas abuse-of-the-writ doctrine to bar these claims in a subsequent state habeas proceeding is an independent and adequate state ground for

imposing a procedural bar in federal court.  *See Canales,* 765 F.3d at 566; *Hughes,* 530 F.3d at 342.

Ochoa also complains that his trial counsel were ineffective for failing to raise this issue at trial, but it is not clear whether this is being asserted as cause and prejudice to excuse the procedural default.  (Pet. at 161.)  Even so, this Court found in subsection (A)(3)(c)(6), above, that trial counsel were not ineffective in failing to raise this claim and, in the alternative, that this claim lacks merit.  Ochoa has not shown an exception to procedural bar for this claim.  Therefore, it is DENIED as procedurally barred and, in the alternative, for lack of merit.

## C.  Claim Adjudicated on the Merits

In his fourteenth claim, Ochoa complains that the evidence is legally insufficient to support the jury's answer to the first special issue in finding that Ochoa would constitute a continuing threat to society.  (Pet. at 146.)  Respondent asserts that the state court's adjudication of this claim was reasonable.  (Ans. at 97-99.)

"Under § 2254(d), the limited question before this court is whether the CCA's decision to reject [the habeas petitioner's] sufficiency of the evidence claim in regard to future dangerousness was an objectively unreasonable application of the clearly established federal law set out in *Jackson [v. Virginia,* 443 U.S. 307, 323 (1979)]." *Martinez v. Johnson,* 255 F.3d 229, 244 (5th Cir. 2001).  In *Jackson,* the Supreme Court held that "the relevant question is whether, after viewing the evidence in the light most

favorable to the prosecution, any rational trier of fact could have found the essential

elements of the crime beyond a reasonable doubt."  443 U.S. at 319.

Ochoa raised this claim in his direct appeal.  After thorough review of the

evidence in support of the jury's finding, covering 13 of the 24 pages of its opinion, the

CCA denied the claim for lack of merit.  *Ochoa v. State,* No. AP-74,663, slip. op at 1-13.

The CCA explained,

> The evidence shows that on Sunday, August 4, 2002, appellant shot his
> wife, two of his sisters-in-law, his father-in-law, and his 18-month-old
> daughter. Appellant reloaded his gun and shot his seven-year-old daughter.
> This occurred in the home where appellant lived with his wife, his two
> daughters, and his father-in-law.  Everyone was killed except for one of the
> sisters-in-law (Alma) who testified at appellant's trial that appellant looked
> "[v]ery mean, very angry" when the shooting began.

*Ochoa,* slip op. at 2.  The state court recounted the testimony, the evidence regarding

Ochoa's marriage and family and how his relationship with his wife changed when he

found out that the child she told him was her nephew was actually her son.  "This

caused appellant and his wife to separate for about six months.  The prosecution

presented evidence that appellant threatened to shoot his wife during this separation.

Alma testified that appellant became 'more aggressive' and 'more mean' to his wife after

appellant found out about Jonathan."  Slip op. at 3.

The CCA also discussed the evidence that Ochoa gave up a good job and got

addicted to cocaine, which put additional stress on his marriage.  Following the shooing,

Ochoa explained to the officer the reason for the shooting was that he "couldn't handle

the stress anymore," and got tired of his life.  Slip op. at 3-4.  The CCA also recounted

his confession that related the events of that day, including his frustration with his wife

because she would probably not let him buy more cocaine, and how he got his gun and

shot them, returning to reload his gun and then chasing down his daughter to shoot her

as well.  Then, he took his wife's purse and drove her car to get more money when the

police arrested him.  Slip op. at 5.  Ochoa did not remember many details about the

shooting, but he did remember reloading the gun and shooting his daughter.  Ochoa

suggested on cross-examination that the police suggested some of those details.  Slip op.

at 6-8.

        The CCA also discussed the defense evidence of his good character, his mild brain

damage from cocaine use, and diagnosis of cocaine induced delirium.  Slip op. at 8-9.

One defense expert testified that he did not think Ochoa would be a future danger away

from cocaine, but that he "'would expect bad things could happen to' appellant if

appellant 'got back to a repetitive pattern of cocaine use.'"  Slip op. at 10.  The CCA

then explained that the prosecution's expert provided testimony from which a jury could

infer that Ochoa would be a continuing threat to society, in that he attributed the

murders to Ochoa's frustration and anger and not to a "cocaine-induced delirium."  Slip

op. at 10-11.  The state's expert explained,

> ... I don't think it's a delirium.  I think it's a matter of anger.  I think he
> was extremely frustrated with his situation.  He was married–he had a
> difficult relationship with his wife, partly because he was continuing to use

cocaine and not being a husband and father.  And partly because of this Jonathan problem that he had never gotten over.

And I think that–if you look at the scene, you know this is–the first thing that comes to your mind is anger. I mean, this was an angry slaughter of people.  And [appellant], I don't think, is in–I asked him something about his anger, and I don't think he's in good touch with his–with his angry and frustrated feelings about the situation he was in.  He didn't have a job.  His–he didn't have any money.  He had a cocaine problem.  He had made the wrong choice.  He didn't take his father's advice and go into this program and get himself detoxified and off of it.  Chose to stay on it.  And this is a result of it, a frustrated angry man.

Slip op. at 11-12.

The CCA applied the standard in *Jackson* and decided that "a rational jury could find beyond a reasonable doubt that there is a probability that 'a man capable of slaughtering five members of his immediate family' would commit criminal acts of violence that would constitute a continuing threat to society."  Slip op. at 12 (citing *Sonnier v. State,* 913 S.W.2d 511, 517-18 (Tex. Crim. App. 1995)).   The CCA's determination is supported by the record.  Ochoa has not shown that this was contrary to or an unreasonable application of *Jackson*, or based on an unreasonable determination of the facts.  Ochoa has not met the standard set it out in § 2254(d).  Therefore, this claim is DENIED.

### VI.  REQUEST FOR EVIDENTIARY HEARING

Ochoa requests an evidentiary hearing.  (Pet. at 163.)  This Court has discretion to grant an evidentiary hearing if one is not barred under 28 U.S.C. § 2254(e)(2).  *See Schriro v. Landrigan,* 550 U.S. 465, 468 (2007).  In exercising that discretion, the Court

considers whether a hearing could enable petitioner to prove the petition's factual allegations which, if true, would entitle him to relief. *Id.* at 474. The Court also must consider the deferential standards in § 2254(d), which limit the Court's ability to grant habeas relief. *Id.*

Ochoa argues that a hearing is required because these claims come within the exception to bar created in *Martinez,* and that this Court should review these claims *de novo*, requiring an evidentiary hearing to receive testimony on matters such as trial counsel's strategy. (P's Supp. Br. at 23-33.) The United States Court of Appeals for the Fifth Circuit has declined to hold that *Martinez* mandates an evidentiary hearing or opportunity for evidentiary development in federal court. *See Segundo v. Davis,* — F.3d —, 2016 WL 4056397 at *3-4 (5th Cir. July 28, 2016). Instead, the narrow exception created in *Martinez* "merely allows" federal merits review of a claim that otherwise would have been procedurally defaulted. "Reading *Martinez* to create an affirmative right to an evidentiary hearing would effectively guarantee a hearing for every petitioner who raises an unexhausted IATC claim and argues that *Martinez* applies." *Id.* at *3. And although the cause and prejudice inquiry is fact-specific, that does not entitle habeas petitioners to evidentiary development.

> But there "must be a viable constitutional claim, not a meritless one, and not simply a search for evidence that is supplemental to evidence already presented." *Ayestas,* 817 F.3d at 896. The decision to grant an evidentiary hearing "rests in the discretion of the district court." *See Schriro v. Landrigan,* 550 U.S. 465, 468, 474, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007) ("It follows that if the record refutes the applicant's factual

allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."); *see also McDonald v. Johnson,* 139 F.3d 1056, 1060 (5th Cir. 1998) ("The district court had sufficient facts before it to make an informed decision on the merits ... and, accordingly, did not abuse its discretion in refusing to hold an evidentiary hearing."). Here, the district court thoroughly reviewed the record of the state-court proceedings, and made specific findings of fact in denying relief.  Given the extent of the factual development during trial and during the state habeas proceedings, the district court did not abuse its discretion in determining it had sufficient evidence and declining to hold a hearing.

*Id.* at *4.  In light of the record and this Court's own review of the merits of these claims, the request for an evidentiary hearing is DENIED.

## VII.  CONCLUSION

The Court **denies** Ochoa's petition for a writ of habeas corpus.  In accordance with Federal Rule of Appellate Procedure 22(b) and 28 U.S.C. § 2253(c), and after considering the record in this case, the Court **denies** Ochoa a certificate of appealability because he has failed to make a substantial showing of the denial of a constitutional right.  *See Miller-El,* 537 U.S. at 338; *Slack v. McDaniel,* 529 U.S. 473, 483-84 (2000); 28 U.S.C. § 2253(c)(2).  If Ochoa files a notice of appeal, he may proceed *in forma pauperis* on appeal.

SO ORDERED.

Signed September 21st, 2016.

*Ed Kinkeade*

ED KINKEADE
UNITED STATES DISTRICT JUDGE

67